

**Jerome M. Selvers**
Partner
jselvers@pashmanstein.com
Direct: 732.852.4014

December 9, 2024

**By ECF**
Hon. Andrew L. Carter Jr.
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   SEC v. Zhabilov, et al., No. 1:24-cv-07362

Dear Judge Carter:

This firm represents Defendants Stephen E. Apolant ("Apolant") and Sky-Direct LLC ("Sky-Direct"), and Relief Defendants NY Farms Group, Inc. and Equity Markets ADV LLC ("Relief Defendants") (together, the "Apolant Defendants"). We write to request a pre-motion conference to seek leave to move to dismiss the claims against the Apolant Defendants.

## Allegations in the Complaint

The securities laws limit the right of "affiliates" of publicly traded companies (or issuers) to sell securities to the public. *See* Compl. ¶¶ 29-31. An affiliate is a person that controls or is under common control with an issuer. *Id.* ¶ 30. Control means the power to direct management and policies of the issuer. *Id.* The complaint alleges that some defendants, including Apolant, were members of an Enzolytics "control group," failed to register their transactions, and "avoided the stock sale limitations that limited affiliates from selling the stock." *Id.* ¶ 44.

Much of the complaint does not concern the Apolant Defendants; unlike other defendants, Apolant was not an Enzolytics officer or director. Instead, the SEC alleges that he, through entities he owns, loaned the company money, converted that debt to equity, and sold shares to the public without registering the sales. *Id.* ¶¶ 51-52, 117-118, 128-129. Apolant was allegedly part of the Enzolytics control group because: (1) an attorney for Apolant and others was consulted about an unidentified Form 8-K filing; (2) Apolant and defendant Diluvio together controlled more than 30% of the "float" (that is, unrestricted free-trading shares, which says nothing about the total issued and outstanding shares); (3) Enzolytics presented a merger to Apolant that it wanted him to fund; (4) Apolant and Diluvio discussed the purchase of debt that Enzolytics owed to another defendant's entity; and (5) Sky-Direct had a consulting agreement with Enzolytics. *Id.* ¶¶ 51, 54, 58-59, 67, 103. Apolant also allegedly paid a promoter to generate interest in Enzolytics. *Id.* ¶¶ 125-127.

The complaint asserts causes of action against Apolant and Sky-Direct under (1) § 10(b) of the 1934 Securities Exchange Act and Rule 10b-5, (2) § 17(a) of the 1933 Securities Act, and (3) §§ 5(a) and (c) of the 1933 Securities Act. The SEC seeks disgorgement, civil penalties, and injunctive relief against Apolant and Sky-Direct. It also seeks disgorgement against the Relief Defendants based on the allegation that they "received ill-gotten funds." Compl. ¶ 154.



Hon. Andrew Carter Jr.
Page 2

**Basis for the Motion**[1]

**I.    The complaint fails to state a claim for securities fraud.**

"To have violated Section 10(b) and Rule 10b-5, [a defendant] must have: (1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999). "Essentially the same elements are required under Section 17(a)(1)-(3) in connection with the offer or sale of a security, though no showing of scienter is required for the SEC to obtain an injunction under subsections (a)(2) or (a)(3)." *Id.* Negligence is required under those subsections. *SEC v. Grinder*, 752 F.3d 569, 574 (2d Cir. 2014). The complaint fails to plead those elements.

First, the complaint does not allege that Apolant or Sky-Direct made any material misrepresentations or omissions and certainly not with particularity under Rule 9(b). It also fails to plead a scheme to defraud in connection with the purchase or sale of securities. The SEC vaguely alleges that the defendants sold shares that either could not have been sold to the public or sold too many shares to the public. That does not allege a fraud on another person. "The sale of an unregistered security does not fall within Rule 10b-5(a) or (c) because, unlike market rigging or manipulative practices, the sale itself defrauds or deceives no one." *Rotstein v. Reynolds & Co.*, 359 F. Supp. 109, 112 (N.D. Ill. 1973); *see also SEC v. Lee*, 720 F. Supp. 2d 305, 338 (S.D.N.Y. 2010) (holding that SEC must plead "what effect the scheme had on investors in the securities at issue"). The SEC does not allege facts showing, for example, that the alleged scheme duped investors into purchasing shares at manipulated prices or that the purchasers will need to give back the shares or cannot sell them in the market. The purchasers paid the non-manipulated market price for the shares, which they are free to keep or sell.

Second, the complaint fails to plead scienter or even negligence. Scienter is "intent to deceive, manipulate or defraud," *United States v. Litvak*, 808 F.3d 160, 178 (2d Cir. 2015) (internal quotation marks omitted), and can be shown by intentional conduct or reckless disregard for the truth, *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016). "To plead scienter, the SEC must allege facts that give rise to a strong inference of fraudulent intent." *SEC v. Sayid*, 2018 WL 357320, at *5 (S.D.N.Y. Jan. 10, 2018). Here, the SEC must allege facts demonstrating a strong inference that Apolant knew or recklessly disregarded that his sales were restricted because he controlled Enzolytics, not merely that he incorrectly concluded that he was not an affiliate. *See, e.g.*, *United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 833 F.3d 874, 879 (8th Cir. 2016) (holding that "regulatory noncompliance" does not prove "knowing fraud" (internal quotation marks omitted)); *SEC v. Steadman*, 967 F.2d 636, 641 (D.C. Cir. 1992) (holding that "the SEC must prove that the [defendants] acted with an 'intent to deceive, manipulate, or defraud' when they failed to book liabilities for non-registration under state Blue Sky laws," not merely that they failed to comply with those laws).

---

[1] The Apolant Defendants reserve the right to join arguments made by other defendants in their motions to dismiss.



Hon. Andrew Carter Jr.
Page 3

    Although the complaint says in a conclusory fashion that Apolant was part of Enzolytics' control group, the complaint does not contain sufficient facts to show that Apolant met the legal standard for control, much less that he knowingly or recklessly sought to avoid the restrictions on affiliate sales. The standard for control is far from clear, particularly for a lay person like Apolant. "[T]here is no bright-line rule" for control. *SEC v. Cavanagh,* 445 F.3d 105, 113 n.19 (2d Cir. 2006). Courts and commentators have looked to guideposts like status as an officer, director, or holder of at least 10% of a corporation's shares, *see, e.g., id.* at 111 n.12, 113 n.19, none of which even allegedly applied to Apolant. And the SEC has refused for decades to provide guidance on control, thus contributing to the uncertainty. *See* Textron Fin. Corp., SEC Staff No-Action Letter, 1980 WL 15004, at *1 (Dec. 8, 1980) (stating that the staff "no longer makes determinations as to affiliate or control status in this context"). At most, the SEC has alleged that Apolant violated an ambiguous legal standard that the SEC has refused to clarify; that is not even recklessness. *See U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287-88 (D.C. Cir. 2015) ("[E]stablishing even the loosest standard of knowledge, i.e., acting in reckless disregard of the truth or falsity of the information is difficult when falsity turns on a disputed interpretive question." (internal quotation marks omitted)). The facts in the complaint also do not establish that Apolant was unreasonably wrong to conclude that he was not Enzolytics affiliate.

**II.**    **The complaint fails to state a claim for violation of Section 5(a) and (c).**

    To plead a violation of § 5 of the Securities Act, the SEC must allege "(1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale." *Cavanagh*, 445 F.3d at 111 n.13. The defendant may nevertheless succeed on a motion to dismiss by showing that a registration "exemption's applicability is clear on the face of the complaint." *SEC v. Sason*, 433 F. Supp. 3d 496, 514 (S.D.N.Y. 2020). The facts in the complaint—which are the best the SEC can allege after an extensive investigation—clearly show that Apolant did not control Enzolytics, and thus the transactions were exempt.

**III.**    **The Court should strike the SEC's request for disgorgement.**

    Congress authorized the SEC to seek "any equitable relief that may be appropriate or necessary for the benefit of investors," including disgorgement, in a case under the securities laws. 15 U.S.C. § 78u(d)(5), (7). Those provisions "authorize disgorgement that is 'equitable relief,'" which "requires that the relief be 'awarded for victims,' and that in turn requires a finding of pecuniary harm." *SEC v. Govil*, 86 F.4th 89, 106 (2d Cir. 2023) (citation omitted). The SEC does not—and cannot—allege that investors suffered pecuniary harm here.

**IV.**    **The claims against the Relief Defendants should be dismissed.**

    The claims against the Relief Defendants are derivative of those against Apolant and Sky-Direct and should also be dismissed.

*    *    *



Hon. Andrew Carter Jr.
Page 4

  We thank the Court for its attention to this matter.

                Respectfully,

                <u>s/ Jerome M. Selvers</u>
                  Jerome M. Selvers

cc: Counsel of record