

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
33 ARCH STREET, 24TH FLOOR
BOSTON, MA 02110-1424

BOSTON
REGIONAL OFFICE

December 12, 2024

**By ECF (courtesy copy to chambers and counsel)**

Honorable Andrew L. Carter, Jr., United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall Courthouse, 40 Foley Square
New York, NY 10007

**Re:**   *Securities and Exchange Commission v. Zhabilov et al.*, 1:24-cv-007362

Dear Judge Carter:

Several Defendants have requested a pre-motion conference about their intended motions to dismiss the Commission's Complaint and for change of venue.  [Dkt. 42 (Apolant, Sky-Direct, NY Farms Grp., and Equity Markets ADV, collectively the "Apolant Defendants"); Dkt. 43 (H. Zhabilov); Dkt. 45 (Dilluvio and Seacor, collectively the "Dilluvio Defendants"); and an undocketed letter to chambers from *pro se* Defendant Billy Ray ("Ray")].[1]  Based on these pre-motion letters, Defendants' motions to dismiss will fail to raise adequate grounds to obtain dismissal.  The Commission will oppose those motions to dismiss, as each ignores applicable legal standards and the full set of facts alleged in the Complaint.  Defendants also fail to articulate a credible basis for transferring venue from the Southern District of New York, where several Defendants live, work, and performed the acts and transactions alleged in the Complaint.

**The Complaint Alleges Facts Sufficient to Meet the Pleading Standard**

The Apolant and Dilluvio Defendants claim the Complaint must be dismissed because (1) there are insufficient facts to establish that they were affiliates of Enzolytics and (2) the legal standard for being an affiliate relies on the analysis of factors and not a bright line test (Dkt. 42, p. 3; Dkt. 45, p. 2).  An affiliate "directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with" an issuer.  17 C.F.R. § 230.405.  "Control" is the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Id.*  The concept of control "is not a narrow one.  It is a determination of fact which depends on the totality of circumstances including an appraisal of the influence on management and policies of a corporation by the person involved." *United States v. Corr*, 543 F.2d 1042, 1050 (2d Cir. 1976); *see also SEC v. Kern*, 425 F.3d 143, 149 (2d Cir. 2005).

---

[1] With the Court's permission, the Commission is filing one six-page Local Rule 37.2 letter in response.  Dkt. 48.

Hon. Andrew L. Carter, Jr.
*Securities and Exchange Commission v. Zhabilov et al.*, 1:24-cv-007362
December 12, 2024

With that legal backdrop, the Complaint more than adequately alleges that the Control Group (Dkt. 1, ¶1), of which Apolant and Dilluvio were members, exercised control over Enzolytics. The Apolant and Dilluvio Defendants' efforts on behalf of and in coordination with that Control Group invalidates any claim they were not Enzolytics affiliates. While the full measure of the allegations will be discussed in the Commission's oppositions to the motions to dismiss, even a cursory review shows the adequacy of the allegations. Per the Complaint: Apolant and Dilluvio (on their own and through their entities) worked together with Ray and Harry Zhabilov on Enzolytics business matters (¶50); performed business consulting and advisory services for Enzolytics (¶52); paid for and signed off on Enzolytics securities filings (¶54); provided funding to Enzolytics and made payments to other Control Group members (¶51); and approved a merger target and funded the merger (¶58). Together they controlled more than thirty percent of Enzolytics' unrestricted free-trading shares (¶59), and indirectly controlled more through the Control Group (*id.*). Dilluvio directed CEO Zhabilov to sign notes and a consulting agreement (¶55), edited and approved Enzolytics disclosures (¶¶57, 110, 115), instructed CEO Zhabilov to waive stock transfer requirements (*id.*), and was consulted on day-to-day management issues (¶53). Apolant, through Sky-Direct, also paid to promote Enzolytics stock at a time when the Control Group was trying to sell hundreds of millions of Enzolytics shares to the public (¶¶125-127).

Ray and Zhabilov's assertion that the Complaint contains insufficient allegations against them or improperly groups them with other defendants fares no better. On top of these Defendants' actions as part of the Control Group, the allegations against each Defendant individually meet the Commission's Rule 9(b) burden. For instance, Zhabilov and Ray misrepresented the specifics of a debt to Camelot from Enzolytics in a contract that appears to have been created much later (¶¶70-74). Zhabilov made misrepresentations in a settlement agreement (¶76); in an issuer representation to a securities placement agent (¶78); to transfer agents (¶¶ 90, 99, 113); and controlled misrepresentations Enzolytics made in a court proceeding (¶79). Ray orchestrated Camelot's actions in using extinguished debt as the basis to receive Enzolytics shares (¶¶83-85); using false invoices to establish debt that did not exist and receive shares as a result (¶¶79, 81-82); and using Dannie Zhabilov as a conduit for stock sale proceeds that would have been unsellable by Ray himself (¶¶86, 98, 102).

Finally, the Commission comfortably meets the pleading requirement for Defendants' scienter. Fraudulent intent may be alleged using facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). The Complaint sufficiently alleges that Defendants knew they were making misrepresentations with the intent "to avoid the stock sale limitations placed on insiders by federal securities laws." (*e.g.*, ¶¶4, 44, 86). It also clearly alleges Defendants' motive in taking the actions described in the Complaint: "to profit from accumulating Enzolytics stock while concealing their control of the company and the stock, then selling that stock to retail investors." (¶1; *see also, e.g.*, ¶¶25, 42-43, 86, 102, 116-24, 128).

**The Complaint Adequately Alleges a Securities Act Section 5 Violation**

The Commission's allegation of the offer and sale of unregistered securities (Securities Act Section 5) is similarly intact. The Apolant Defendants cannot show that an exemption from

2

Hon. Andrew L. Carter, Jr.
*Securities and Exchange Commission v. Zhabilov et al.*, 1:24-cv-007362
December 12, 2024

registration "is clear on the face of the Complaint." *SEC v. Sason*, 433 F. Supp. 3d 496, 514 (S.D.N.Y. 2020). For a Section 5 claim, the "defendant bears the burden of proving the applicability of an exemption." *SEC v. Cavanagh*, 445 F.3d 105, 111 n.13 (2d. Cir. 2006). The Complaint establishes no exemption. To the contrary, the Complaint alleges facts suggesting that Defendants acted as a control group, not non-affiliates. And the Apolant Defendants cannot carry their burden to establish that, or any other, exception, particularly on a motion to dismiss.

**Collateral Estoppel Does Not Apply as the Commission's Alleged Violations Were Not Adjudicated in the Maryland Action**

Defendant Zhabilov suggests that, based on the Rule 3(a)(10) settlement fairness hearing conducted in *Livingston Asset Mgmt. v. Enzolytics*, 18-cv-2088-SAG (D. Md.), collateral estoppel precludes the Commission from pursuing violative conduct between 2014 and August 2018. Not so. Under the equitable doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). As no party here was a party to the Maryland action, judicial estoppel could not apply even if that court had, in any way, addressed the allegations here—which it did not. Nor would res judicata apply, as neither of the requisites for that doctrine are present here: "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [res judicata/issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Hoblock v. Albany Co. Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005) (internal citation omitted).

**No Ground Supports Striking the Commission's Disgorgement Claim**

Defendants are wrong as a matter of law that the Commission cannot seek disgorgement because the Complaint does not sufficiently allege investor harm from Defendants' fraudulent conduct. While the Commission must prove that investors suffered pecuniary harm to obtain disgorgement (*see SEC v. Govil*, 86 F.4th 89, 104 n.16, 105 (2d Cir. 2023)), any motion to dismiss such relief is premature where the parties have not yet conducted discovery on investor harm. Further, in citing to *SEC v. Ripple Labs, Inc.*, 20 Civ. 10832 (AT), 2024 WL 3730403, at *5–6 (S.D.N.Y. Aug. 7, 2024), the Dilluvio Defendants (ECF No. 45, p. 4) misstate the relevant holdings. Neither *Ripple* nor *Govil* required that the SEC "*must allege* pecuniary harm in order to seek disgorgement"—rather, the Court in *Ripple* found at the summary judgment stage that the Commission had not proved investor harm and thus could not obtain disgorgement under *Govil*. *Id*. Here, the Commission intends to prove investor harm through fact and expert discovery, thus Defendants' motion to dismiss such potential relief would be, at best, premature.

**The Commission Does Not Seek Additional Penalties for Pre-Limitations Period Conduct**

The Dilluvio Defendants and Zhabilov argue that claims for civil monetary penalties for acts before September 30, 2019, are time-barred, citing 28 U.S.C. § 2462. (ECF 43, p. 4; ECF 45, p. 3). The Commission does not seek penalties for acts before the limitations period. On the

Hon. Andrew L. Carter, Jr.
*Securities and Exchange Commission v. Zhabilov et al.*, 1:24-cv-007362
December 12, 2024

other hand, the Commission does seek equitable relief and disgorgement for acts before that date, based on the ten-year limitations period for equitable relief and disgorgement for claims requiring scienter. Exchange Act Section 21(d)(8) [15 U.S.C. § 78u(d)(8)]. In addition, acts before the limitations period may be considered by a court when weighing penalty factors such as egregiousness and the repetitive nature of a defendant's conduct. *See SEC v. Laura*, __ F. Supp. 3d ___, 2024 WL 3360380, at *9 (E.D.N.Y. Jul. 9, 2024) ("over more than five years, Defendants repeatedly, intentionally, and egregiously lied" when considering penalty factors).

**No Other Court Currently Has Jurisdiction Over the Commission's Claims, the Commission Cannot be Forced to Bring Its Claims as Part of Another Action, and Venue is Appropriate in S.D.N.Y.**

Defendants plan to move to dismiss on various jurisdictional grounds: that the District of Maryland ("D. Md.") has retained jurisdiction over the SEC's claims, must exercise ancillary jurisdiction, or that venue is improper in the Southern District. These arguments are baseless.

In *Livingston Asset Mgmt. v. Enzolytics*, 18-cv-2088-SAG (D. Md.), the Maryland court reserved "jurisdiction over the parties to this action as well as the subject matter herein for the purposes of contempt and enforcement of the Settlement Agreement and Stipulation as well as for such other purposes as allowed by law." [Dkt. 8-2[2]]. No party here was a party there. And while the subject matter in the Maryland case was related to the Commission's allegations, this is not an action for "contempt and enforcement of the Settlement Agreement and Stipulation." Nor does this enforcement action fall into the "other such purposes allowed by law" clause. To the contrary, no Commission claim that relates to the Section 3(a)(10) transaction is subject to the Maryland court's retention of jurisdiction because Congress has specifically prohibited such consolidation. Section 21(g) of the Exchange Act states that:

> Notwithstanding … any other provision of law, no action for equitable relief instituted by the Commission … shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.

15 U.S.C. § 78u(g). "Congress enacted Section 21(g) to promote the effective enforcement of federal securities laws by ensuring that the SEC would not be required to litigate the separate issues of private parties during SEC litigation, even though the actions may involve common questions of fact." *SEC v. Prudential Secs. Inc.*, No. 93-2164, 1997 WL 35393453 (D.D.C. Mar. 26, 1997). By the statute's explicit language, the Commission need not consolidate or coordinate its securities-fraud enforcement action with the long-concluded 2018 fairness hearing action.

Defendant Zhabilov's ancillary jurisdiction claim fares no better. The Maryland case did not involve the same parties, so no ancillary jurisdiction could attach over *SEC v. Zhabilov* et al. In the only case cited by the defense, *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375

---

[2] The Commission has attached the Order Granting Approval of Settlement Agreement and Stipulation to this letter response as Exhibit A.

Hon. Andrew L. Carter, Jr.
*Securities and Exchange Commission v. Zhabilov et al.*, 1:24-cv-007362
December 12, 2024

(1994), where the Supreme Court found that the district court did not have ancillary jurisdiction to enforce the parties' settlement, the civil action at least involved the same plaintiff and defendant. *Id*. at 376, 381-82. "Ancillary jurisdiction does not extend … to an action to establish liability on the part of a third party." *Peterson v. Bank Markazi*, __ F.4th __, 2024 WL 4758719, at *9 (2d Cir. Nov. 13, 2024). In this case, neither Livingston Asset Management nor Enzolytics are parties, so while the Rule 3(a)(10) agreement may be relevant to the allegations in this lawsuit, it does not follow that the SEC is bound (via ancillary jurisdiction or otherwise) by a settlement reached by private actors in another judicial district, particularly given the SEC's unique role in enforcing the securities laws and protecting the investing public.

Second, Defendants fail to mention the applicable venue provisions in suggesting to the Court that the matter be transferred to Maryland.[3] For federal securities actions, the applicable venue provisions are Section 22 of the Securities Act of 1933 (15 U.S.C. § 77v) and Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. §78aa). Under these statutes, venue is proper in a district where any act or transaction in furtherance of the alleged violation occurred. *See* 15 U.S.C. §78aa. The Commission is entitled to substantial deference on venue. Exchange Act Section 27 "represents an affirmative congressional policy choice to allow plaintiffs in securities cases the widest possible choice of forums in which to sue." *SEC v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 74 (D. Conn. 1988).

Venue is proper in this District. To begin with, "several individuals residing in [SDNY] bought Enzolytics stock during the time when Defendants were selling their stock." ECF No. 1 at ¶15. Apolant and Farber resided in New York at all relevant times (Apolant in the Eastern District and Farber in the Southern District). *Id.* ¶¶19, 21. Defendant Seacor Capital is a New York corporation controlled by Dilluvio, and both Relief Defendants (controlled by Apolant) are also based in New York. *Id.* ¶23. So there is no colorable argument to transfer this action to another judicial district.

For these reasons, the Commission believes that Defendants do not have legally or factually sufficient grounds to obtain dismissal and will oppose their motions on that basis.

Sincerely,

*/s/ Marc J. Jones*

Marc Jones, Senior Trial Counsel
Nita Klunder, Senior Enforcement Counsel
Rua Kelly, Senior Trial Counsel
Securities and Exchange Commission

cc: All defense counsel (via ECF and email)

---

[3] While Defendant Zhabilov and others argue for this case to be transferred to the District of Maryland, no Defendant or Relief Defendant actually resides in the District of Maryland.