## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

               Plaintiffs,

     -against-

HARRY ZHABILOV,
BILLY V. RAY, JR.,
CHARLES DILLUVIO,
STEPHEN APOLANT,
DANNIE ZHABILOV,
JONATHAN FARBER,
CAMELOT NEVADA TRUST,
SEACOR CAPITAL, INC.,
SKY-DIRECT LLC, and
WEXFORD INDUSTRIES LTD.,
               Defendants,

          And

NY FARMS GROUP, INC. and
EQUITY MARKETS ADV LLC,
               Relief Defendants

Case No. 1:24-cv-07362-ALC

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS CAMELOT NEVADA TRUST**

By:  /s/ Patrick Ryan Morris
PATRICK RYAN MORRIS, ESQ.
SDNY Bar No. MO9929
NY: 5575501
305 Broadway, Suite 777
New York, New York 10007
+ 1 (917) 905 – 9804
+ 1 (917) 970 - 8446
prm@patrickmorrislaw.com

*Attorneys for Defendant Camelot Nevada Trust*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………...ii

PRELIMINARY STATEMENT………………………………………………………………… 1

ARGUMENT……………………………………………………………………………………...1

I.  LACK OF SPECIFIC PERSONAL JURISDICTION OVER CAMELOT (RULE
    12(B)(2))………………...………………………………………………...............1

II. VENUE IS IMPROPER UNDER 28 U.S.C.A. § 1391…. ……………..…………………4

III. RULE 9(B) AND RULE 8 FAILURES: ABSENCE OF CAMELOT-SPECIFIC
     MISSTATEMENTS……………………...………………………………………….…6

IV. COLLATERAL ATTACK AND RETAINED JURISDICTION: THE SEC'S IMPROPER
    ATTEMPT TO RE-ADJUDICATE § 3(A)(10) PROCEEDINGS……………………….8

V.  SECTION 17(A)(2) DEFICIENCY: NO ALLEGATION THAT CAMELOT OBTAINED
    INVESTOR MONEY "BY MEANS OF" MISSTATEMENTS…………………………10

VI. AIDING-AND-ABETTING, "SCHEME," AND AFFILIATE/CONTROL THEORIES
    FAIL AS A MATTER OF LAW; THE DISGORGEMENT DEMAND SHOULD BE
    STRICKEN……………………………………………………………………………11

CONCLUSION AND PRAYER FOR RELIEF……………………………………………….15

# TABLE OF AUTHORITIES

Page(s)

Cases

*AGCS Marine Ins. Co. v. Associated Gas & Oil Co.*,
 775 F. Supp. 2d 640 (S.D.N.Y. 2011) ................................................................... 6

*Ashcroft v. Iqbal*,
 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................... 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007) ..................................................................................... 8

*Atuahene v. City of Hartford*,
 10 F. App'x 33 (2d Cir. 2001) ........................................................................... 2, 6

*Auer v. Robbins*,
 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) ........................................ 13

*Banco Espanol de Credito v. Sec. Pac. Nat. Bank*,
 973 F.2d 51 (2d Cir. 1992) ..................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................................. 3, 7

*Blue Chip Stamps v. Manor Drug Stores*,
 421 U.S. 723, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975) ......................................... 5

*Bowles v. Seminole Rock & Sand Co.*,
 325 U.S. 410, 65 S. Ct. 1215, 89 L. Ed. 1700 (1945) .......................................... 13

*Calder v. Jones*,
 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) ....................................... 3

*Celotex Corp. v. Edwards*,
 514 U.S. 300, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) ..................................... 8

*Chloe v. Queen Bee of Beverly Hills, LLC*,
 616 F.3d 158 (2d Cir. 2010) ................................................................................... 3

*Daniel v. Am. Bd. of Emergency Med.*,
 428 F.3d 408 (2d Cir. 2005) ............................................................................... 5, 6

*DH Servs., LLC v. Positive Impact, Inc.*,
 2014 WL 496875 (S.D.N.Y. Feb. 5, 2014) ............................................................ 6

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
 822 F.2d 1242 (2d Cir. 1987) ................................................................................. 7

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
 592 U.S. 351, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021) ..................................... 2

*Grace v. Bank Leumi Tr. Co. of NY*,
 443 F.3d 180 (2d Cir. 2006) ................................................................................... 9

*Gulf Ins. Co. v. Glasbrenner*,
 417 F.3d 353 (2d Cir. 2005) ............................................................................... 5, 6

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
 322 U.S. 238, 64 S. Ct. 997, 88 L. Ed. 1250 (1944) ............................................. 9

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
 529 F. Supp. 3d 111 (S.D.N.Y. 2021) ................................................................ 3, 7

*In re Alstom SA*,

ii

406 F. Supp. 2d 433 (S.D.N.Y. 2005) .................................................................... 13, 14

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
650 F.3d 167 (2d Cir. 2011) ................................................................................ 13, 14

*In re Parmalat Sec. Litig.*,
375 F. Supp. 2d 278 (S.D.N.Y. 2005) ......................................................................... 8

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
351 F. Supp. 2d 334 (D. Md. 2004) ............................................................................. 3

*In re Terrorist Attacks on Sept. 11*,
741 F.3d 353 (2d Cir. 2013) ...................................................................................... 10

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135, 131 S. Ct. 2296, 180 L. Ed. 2d 166 (2011) ......................................... 7

*Kirschner v. JPMorgan Chase Bank, N.A.*,
79 F.4th 290 (2d Cir. 2023) .................................................................................. 5, 10

*Kisor v. Wilkie*,
 588 U.S. 558, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019) ...................................... 13

*Liu v. Sec. & Exch. Comm'n*,
591 U.S. 71, 140 S. Ct. 1936, 207 L. Ed. 2d 401 (2020)..................................... 13, 15

*Loper Bright Enters. v. Raimondo*,
 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)............... 10, 11, 13, 15, 16

*Lorenzo v. Sec. & Exch. Comm'n*,
587 U.S. 71, 139 S. Ct. 1094, 203 L. Ed. 2d 484 (2019) ........................................... 8

*McGowan v. Smith*,
52 N.Y.2d 268, 419 N.E.2d 321 (1981) ...................................................................... 3

*Meyer v. Holley*,
537 U.S. 280, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003) ........................................... 8

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010)......................................... 5

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,
484 U.S. 97, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987) ............................................... 2

*PRC Harris, Inc. v. Boeing Co.*,
700 F.2d 894 (2d Cir. 1983) ...................................................................................... 10

*Reves v. Ernst & Young*,
494 U.S. 56, 110 S. Ct. 945, 108 L. Ed. 2d 47 (1990) .................................. 2, 5, 6, 10

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ........................................................................................ 7

*S.E.C. v. Apuzzo*,
689 F.3d 204 (2d Cir. 2012) .................................................................................. 13, 14

*S.E.C. v. Espuelas*,
698 F. Supp. 2d 415 (S.D.N.Y. 2010) ......................................................................... 6

*S.E.C. v. Kern*,
425 F.3d 143 (2d Cir. 2005) ...................................................................................... 13

*S.E.C. v. Lee*,
720 F. Supp. 2d 305 (S.D.N.Y. 2010) ......................................................................... 7

*S.E.C. v. Syron*,
934 F. Supp. 2d 609 (S.D.N.Y. 2013)…………………………………………………...10

*S.E.C. v. W.J. Howey Co.*,

328 U.S. 293, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946) ............................................. 2, 5, 6
*Sec. & Exch. Comm'n v. Govil*,
   86 F.4th 89 (2d Cir. 2023) ........................................................................... 13, 15
*Sec. & Exch. Comm'n v. Mark A. Lefkowitz, Compass Cap. Grp., Inc., Mark A. Lopez, Unico,*
   *Inc., Steven R. Peacock, Shane H. Traveller, & Advanced Cell Tech., Inc.,*
   Litigation Release No. 22381 (May 30, 2012) .................................................. 9
*Sec. & Exch. Comm'n v. Rio Tinto plc*,
   41 F.4th 47 (2d Cir. 2022) ........................................................................... 13, 14
*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009) ................................ 8, 10
*Truskoski v. ESPN, Inc.*,
   60 F.3d 74 (2d Cir. 1995) ........................................................................... 10
*United States Sec. & Exch. Comm'n v. DiMaria*,
   207 F. Supp. 3d 343 (S.D.N.Y. 2016) ............................................................ 11
*United States v. Beggerly*,
   524 U.S. 38, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998) .................................... 9
*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010).......................... 8, 9, 10
*Walden v. Fiore*,
   571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) .................................. 2

## Statutes

15 U.S.C.A. § 77b(a)(1), 78c(a)(10) ............................................................ 10
15 U.S.C.A. § 77q(a)(2) .............................................................................. 10
15 U.S.C.A. § 77v(a), 78aa ...................................................................... 2, 5
28 U.S.C.A. § 1391 ..................................................................................... 4
§ 1391(b)(1)-(3) ......................................................................................... 4
§ 1391(b)(3) ........................................................................................... 4, 5
§ 1391(c)(2) ............................................................................................... 5
§ 1391(c)(2), (d) ........................................................................................ 4

## Rules

Fed. R. Civ. P. 4(k)(1)(A) ........................................................................... 3
Fed. R. Civ. P. 4(k)(1)(C) ........................................................................... 2
N.Y. C.P.L.R. 302(a)(1) (McKinney) ............................................................ 3

## Regulations

17 C.F.R. § 230.405 .................................................................................. 13

## PRELIMINARY STATEMENT

The SEC's Complaint against Camelot Nevada Trust ("Camelot") is fatally flawed and must be dismissed with prejudice. It sues the wrong entity, naming a "Georgia sole proprietorship" while the record shows a Nevada spendthrift trust administered in Texas—an error that defeats Rule 8's fair notice requirement and underscores the SEC's improper reliance on group pleading rather than defendant-specific facts. The SEC also lacks statutory authority because Camelot's sole alleged transaction—a $100,000 sale of a commercial receivable—is not a "security" under *Reves* or *Howey*; without a covered transaction, the Commission has no jurisdiction, standing, or cause of action. Jurisdiction and venue independently fail because Camelot has no New York contacts and no securities transaction exists to trigger nationwide service, making the case unconstitutional under due process. Finally, the action is an impermissible collateral attack on a 2018 federal judgment approving a § 3(a)(10) settlement in the District of Maryland, which only that court could revisit under Rule 60. Because the SEC sued the wrong party, invoked statutes that do not apply, pled no Camelot-specific fraud, and collaterally attacks a final judgment, amendment would be futile and the Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

### I.    LACK OF SPECIFIC PERSONAL JURISDICTION OVER CAMELOT (RULE 12(B)(2))

The SEC has failed to establish personal jurisdiction, a fatal defect that requires dismissal with prejudice: after years of investigation and at least two sworn appearances by the Camelot trustee ("Camelot Trustee"), the agency still sued the wrong entity. This failure is not accidental or incidental but intentional, and it cannot be cured by amendment or discovery. The Complaint names "Camelot, a Georgia sole proprietorship" (Compl. ¶ 22), yet the record confirms the entity involved was Camelot Nevada Trust—a Nevada spendthrift trust administered in Texas by a Texas

resident. Distinct legal entities with separate domiciles and capacities cannot be conflated for jurisdictional purposes. See *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).

The Exchange Act and Securities Act permit nationwide service only in actions "brought to enforce any liability or duty created by" those statutes. 15 U.S.C.A. § 77v(a), 78aa. But this presupposes proper identification of the defendant and a covered transaction. Fed. R. Civ. P. 4(k)(1)(C). Neither is present here. As stated above the SEC misidentifies the Defendant and Camelot's sole alleged act—the sale of a $100,000 commercial receivable—is not a "security" under *Reves v. Ernst & Young*, 494 U.S. 56, 65–67 (1990), or *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). The Second Circuit likewise holds that assignments of receivables and loan participations fall outside the securities laws. *Banco Espanol de Credito v. Sec. Pac. Nat. Bank*, 973 F.2d 51, 55–56 (2d Cir. 1992). Because no securities transaction is alleged, the nationwide service provisions never trigger.

Even if they did, statutory authorization cannot override constitutional due process. Jurisdiction demands defendant-specific minimum contacts with the forum that make the exercise of power fair and reasonable. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102–04 (1987); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 141 S. Ct. 1017, 1024–26, 209. Camelot's alleged conduct—a single bilateral receivable sale—bears no nexus to interstate securities markets or to New York. See *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014) (contacts must be "with the forum State itself, not ... with persons who reside there"); *Calder v. Jones*, 465 U.S. 783, 790 (1984).

Without valid nationwide service, Fed. R. Civ. P. 4(k)(1)(A) confines jurisdiction to what New York courts could exercise. But New York's long-arm statute, N.Y. C.P.L.R. 302(a)(1), reaches

only claims "arising from" business transacted in the state. The SEC alleges none: no New York counterparties, no communications or contracts directed into New York, and no payments through New York financial institutions. See Compl. ¶¶ 22, 64–85, 98, 102; *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171–72 (2d Cir. 2010).

Worse still, the SEC attempts to manufacture jurisdiction through group pleading. Courts consistently reject this tactic: each defendant's contacts must be assessed individually. *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 354 (D. Md. 2004). Here, the agency conflates a Nevada trust with a purported Georgia proprietorship despite years of sworn testimony from the Camelot Trustee clarifying the entity's identity. See Vol. 2, pp. 260, 275–76. This is not mistake but strategy—an effort to obscure critical distinctions and force jurisdiction through confusion. Rule 8 forbids such gamesmanship. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Because the SEC has (1) sued the wrong entity, (2) failed to allege any securities transaction, (3) shown no New York-directed conduct, and (4) relied on impermissible group pleading, this Court lacks personal jurisdiction under any theory. These defects are not technical or curable; they are fundamental. For years, the Camelot Trustee has borne the brunt of this misdirected investigation—enduring subpoenas that forced the closure of personal and trust bank accounts, more than 14 hours of sworn testimony, tens of thousands of pages of voluntary discovery, thousands of hours of lost time, significant legal fees, travel expenses, lost revenue, and reputational harm. After such extraordinary burdens, allowing the SEC to amend or replead now would serve no legitimate purpose; it would operate only as punitive damage for a party the agency

3

never had jurisdiction to sue in the first place. Rule 12(b)(2) requires dismissal, and because these defects are intentional, enduring, and incurable, dismissal must be with prejudice.

## II.    VENUE IS IMPROPER UNDER 28 U.S.C.A. § 1391

Even apart from jurisdictional and substantive defects, the SEC's claims against Camelot must be dismissed or transferred because venue in the Southern District of New York is improper under 28 U.S.C.A. § 1391.

Venue lies only in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought…, any judicial district in which any defendant is subject to the court's personal jurisdiction." § 1391(b)(1)-(3). The fallback in § 1391(b)(3) applies only if no district qualifies under (b)(1) or (b)(2). Id. For corporations and other entities with the capacity to sue or be sued, "residence" means any district where the entity is subject to personal jurisdiction with respect to the action; in multi-district states, residence is assessed district by district. § 1391(c)(2), (d).

The Second Circuit requires a "careful examination" of whether a "substantial part" of the operative events occurred in the chosen district; tangential or attenuated contacts do not suffice. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356–57 (2d Cir. 2005); see also *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (venue turns on events "significant to the claim").

Applied here, the Complaint alleges no defendant "residence" in this District, identifies no substantial events occurring here, and confirms that other districts plainly qualify (Maryland, Texas, Georgia, California)—foreclosing reliance on § 1391(b)(3). See Compl. ¶¶ 22, 64–85, 98, 102. Venue in the Southern District of New York is therefore improper. Here again, the SEC is attempting to extend nationwide service to a fact pattern that does not involve securities – the alleged act only includes the sale of ordinary commercial receivables.

The Complaint pleads none of the statutory bases for venue in this District. The Defendant does not "reside" here for venue purposes: Camelot is a Nevada trust administered in Texas; the SEC alleges no facts that would render the trust (or any consultant) subject to personal jurisdiction in the Southern District with respect to this action, as § 1391(c)(2) requires. See Compl. ¶¶ 22, 64–85, 98, 102. Nor did a "substantial part" of the operative events occur here. The challenged § 3(a)(10) fairness proceedings were centered in Maryland;[1] trust administration and banking occurred in Texas; consulting activity was in Georgia; and counterparties were in California and Georgia—not New York. Id. ¶¶ 64–85, 98, 102. Under *Glasbrenner* and *Daniel*, such out-of-district loci foreclose venue where the Southern District has, at most, tangential connections. See

---

[1] Camelot's Receivable Sale Is Not a Securities Transaction. The sole conduct attributed to Camelot is the sale of a commercial receivable to Party A for $100,000. Commercial receivables consistently fail to qualify as "securities" under controlling precedent: Commercial notes fall outside the securities laws under the "family resemblance" test. *Reves*, 494 U.S. at 65–67. The receivable sale lacks the essential elements of an investment contract: no common enterprise, no expectation of profits from others' efforts. *S.E.C.*, 328 U.S. at 298–99. The Second Circuit consistently holds that ordinary debt assignments and loan participations are not securities. *Kirschner v. JPMorgan Chase Bank, N.A.*, 79 F.4th 290, 305-6 (2d Cir. 2023). The SEC Lacks Statutory Authority to Regulate Non-Securities Transactions. The Securities Acts grant the SEC authority only over securities transactions. 15 U.S.C.A. § 77v(a), 78aa. Courts strictly enforce these jurisdictional limits: *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 253 (2010) ("[W]hen a statute gives no clear indication of an extraterritorial application, it has none— regardless of whether the conduct in question has effects within the United States"). *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (limiting private securities actions to actual purchasers or sellers of securities).

*Gulf Ins. Co.*, 417 F.3d at 356–57; *Daniel*, 428 F.3d at 432. SDNY courts applying these principles likewise decline venue where the "center of gravity" of the dispute lies elsewhere. See *AGCS Marine Ins. Co. v. Associated Gas & Oil Co.*, 775 F. Supp. 2d 640, 647–48 (S.D.N.Y. 2011) (finding venue lacking where operative facts occurred primarily outside SDNY); *DH Servs., LLC v. Positive Impact, Inc.*, No. 12 CIV. 6153 RA, 2014 WL 496875, at *10 (S.D.N.Y. Feb. 5, 2014) (rejecting incidental or attenuated New York contacts).

Where both venue and standing are absent, dismissal with prejudice—not transfer—is the appropriate remedy. See *Gulf Ins. Co.*, 417 F.3d at 357; *Daniel*, 428 F.3d at 432. The SEC's failure to allege a securities transaction deprives it of statutory standing to invoke the Securities Acts at all. See *Reves*, 494 U.S. at 65–67; *S.E.C.*, 328 U.S. at 298–99. The only appropriate remedy is dismissal with prejudice.

## III.    RULE 9(B) AND RULE 8 FAILURES: ABSENCE OF CAMELOT-SPECIFIC MISSTATEMENTS

Notwithstanding the prior arguments, the Complaint must also be dismissed under Rules 8(a) and 9(b) because it alleges no Camelot-specific misrepresentation, omission, or deceptive act, and instead relies on impermissible group pleading. See *Atuahene*, 10 F. App'x at 34; *S.E.C. v. Espuelas*, 698 F. Supp. 2d 415, 424 (S.D.N.Y. 2010); *In re Aegean Marine Petroleum Network, Inc. Securities Litigation*, 529 F. Supp. 3d at 135.

Rule 8 requires defendant-specific factual allegations sufficient to make each claim plausible, not merely conceivable. *Bell Atlantic Corp.*, 550 U.S. at 555–56, 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Where fraud is alleged, Rule 9(b) demands particularized facts—the "who, what, when, where, and how"—as to each defendant. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Rombach v. Chang*, 355 F.3d 164, 170–71 (2d

Cir. 2004). Courts apply this standard equally to SEC claims under § 17(a) and Rule 10b-5. *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 325 (S.D.N.Y. 2010).

Here, the SEC pleads no misstatement by Camelot itself. The Complaint alleges an amorphous "Control Group" but does not include Camelot in that group (Compl. ¶ 1) and fails to attribute any statement, omission, or act to Camelot. References to "consulting" or "tax refund" payments (Compl. ¶¶ 98, 102) lack particularity, are not tied to investor funds, and cannot satisfy Rule 9(b). The documentary record further severs Camelot from the alleged scheme: Camelot sold a receivable in May 2018 and exited before the Maryland § 3(a)(10) fairness proceedings in August 2018. Compl. ¶¶ 64–68, 79–80, 83. Enzolytics thereafter issued shares directly to a third party ("Party A"), which sold them through a registered broker-dealer. No investor funds or securities proceeds ever passed through Camelot.

Nor can liability be imputed to Camelot through statements of a Georgia consultant. Misstatement liability attaches only to the "maker" with "ultimate authority" over the content and dissemination of a statement. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011). Dissemination liability requires particularized allegations of scienter. *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 139 S. Ct. 1094, 1101–03 (2019). And attribution of another's statements requires well-pleaded agency—actual authority, apparent authority traceable to the principal's manifestations, or ratification—which is absent here. *Meyer v. Holley*, 537 U.S. 280, 285–86 (2003); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 290 (S.D.N.Y. 2005). Testimony confirms that the Camelot Trustee's role was purely clerical—limited to formatting and accounting support—while "Billy [Ray] did the actual work." Vol. 2, 326–27, 344. Ministerial support cannot satisfy Rule 9(b).

In sum, the Complaint weaves a years-long narrative but never alleges the "who, what, when, where, and how" of fraud as to Camelot. Because the SEC fails to plead Camelot-specific conduct with the particularity Rule 9(b) demands—or even plausibility under Rule 8—the Complaint must be dismissed as to Camelot under Rules 9(b) and 12(b)(6). *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

### IV.    COLLATERAL ATTACK AND RETAINED JURISDICTION: THE SEC'S IMPROPER ATTEMPT TO RE-ADJUDICATE § 3(A)(10) PROCEEDINGS

The Commission's claims against Camelot must also be dismissed with prejudice because they constitute a collateral attack on final judgments entered by the District of Maryland in § 3(a)(10) proceedings. Federal judgments "once entered" may be challenged only in the issuing court via Rule 60—not through new enforcement actions elsewhere. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152–54 (2009); *Celotex Corp. v. Edwards*, 514 U.S. 300, 313–14 (1995); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269–71 (2010).

The Complaint itself confirms that the Maryland court held fairness hearings, reviewed the Claims Purchase Agreement and invoices, and approved the settlement before Enzolytics issued shares directly to Party A. Compl. ¶¶ 66, 68, 79–80. Camelot was not a participant in those proceedings; its only role was selling a receivable in May 2018—months before the August 2018 approval—at which point the debt was extinguished. Compl. ¶¶ 68, 80, 83. By asking this Court to recharacterize that court-approved process as fraud, the SEC seeks to undermine a final federal judgment, which Rule 60 squarely forbids outside the issuing court.

The contrast with the SEC's own § 3(a)(10) enforcement history is stark. In *Lefkowitz* and similar cases, the Commission identified—and pled—classic hallmarks of abuse: sham lawsuits,

contrived debts, prearranged settlements, concealed kickbacks, and grossly inflated share issuances. See *Sec. & Exch. Comm'n v. Mark A. Lefkowitz, Compass Cap. Grp., Inc., Mark A. Lopez, Unico, Inc., Steven R. Peacock, Shane H. Traveller, & Advanced Cell Tech., Inc.*, Litigation Release No. 22381 (May 30, 2012). None of those features is present here. Camelot sold a legitimate receivable at fair value, did not participate in the Maryland hearing, and had no role in the subsequent share issuances.

Nor can the SEC evade finality by invoking "fraud on the court." Even if that theory were available (and it is not here), the exclusive remedy is a Rule 60 motion in the District of Maryland. *United Student Aid Funds, Inc.*, 559 U.S. at 269–71; *United States v. Beggerly*, 524 U.S. 38, 45–46 (1998). The six-year delay makes such relief unavailable in any event. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944). Courts in this Circuit likewise hold that Rule 60 cannot be used as an end-run around finality where years have passed without timely challenge. See *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 190–91 (2d Cir. 2006) (Rule 60(b)(6) relief requires "extraordinary circumstances" and cannot revive stale claims); *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983) (motion untimely where filed after several years); *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77–78 (2d Cir. 1995) (Rule 60(b)(3) fraud claims must be brought within one year); *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 357–58 (2d Cir. 2013) (SDNY properly denied Rule 60 motion as "egregiously out of time"). Finally, under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), this Court owes no deference to the SEC's post hoc view of what § 3(a)(10) "fairness" requires. The statute's text controls, and the Maryland court's approval satisfied it under any reasonable interpretation.[2]

---

[2] As stated previously, the SEC has failed to establish Article III standing or statutory authority over the underlying receivable sale. A plain reading of both the Securities Act and the Exchange

Because every allegation against Camelot is "inextricably intertwined" with re-litigating the Maryland judgment, this action is barred as a matter of law. *Travelers Indem. Co.*, 557 U.S. at 152–54; *United Student Aid Funds, Inc.*, 559 U.S. at 269–71. The defects are jurisdictional (Rules 12(b)(1), 12(b)(7)) and merits-based (Rule 12(b)(6)), and amendment would be futile: identifying Party A would only confirm that the SEC seeks to undo a final judgment in the wrong forum. The claims against Camelot should therefore be dismissed with prejudice.

## V.    SECTION 17(A)(2) DEFICIENCY: NO ALLEGATION THAT CAMELOT OBTAINED INVESTOR MONEY "BY MEANS OF" MISSTATEMENTS

Section 17(a)(2) imposes liability only where the defendant itself "obtain[s] money or property by means of" a misrepresentation or omission. 15 U.S.C.A. § 77q(a)(2). Courts in this Circuit strictly enforce that requirement: "the final step, whereby the defendant personally gains money or property from the fraud, is essential." *SEC v. Syron*, 934 F. Supp. 2d 609, 640 (S.D.N.Y. 2013); *United States Sec. & Exch. Comm'n v. DiMaria*, 207 F. Supp. 3d 343, 358–59 (S.D.N.Y. 2016). And under *Loper Bright Enterprises*, 603 U.S. at 385–88, courts—not agencies—construe statutory terms; the SEC's litigation gloss cannot expand "obtain" or "by means of" beyond their text.

The Complaint fails this threshold test. It does not allege that Camelot—not a counterparty, downstream transferee, or consultant—ever obtained investor funds or property by means of a misstatement. The "transfers table" (Compl. ¶ 85) does not trace funds to investors or tie any transfer to a Camelot misrepresentation; the "consulting" and "tax refund" references (id. ¶¶ 98,

---

Act confirms that ordinary commercial receivables are not "securities." *See* 15 U.S.C.A. § 77b(a)(1), 78c(a)(10); *Reves*, 494 U.S. at 65–67 (commercial receivables excluded under "family resemblance" test); *Kirschner*, 79 F.4th at 305-6. Absent a covered transaction, the SEC lacks both statutory standing and enforcement jurisdiction.

102) are disconnected from investor proceeds or deception. Testimony further severs Camelot from any investor nexus: the Camelot Trustee objected to "pay as you sell" arrangements, believed counterparties were required to prepay, and learned of downstream liquidations only "pretty late in the game after the whole SEC thing." Vol. 2, 326–27.

Critically, Camelot sold its receivable in May 2018—months before the Maryland § 3(a)(10) proceeding—exiting the transaction entirely. Compl. ¶¶ 68, 79–80. It was Party A, not Camelot, that obtained unrestricted shares directly from Enzolytics under a federal court order and then deposited and sold them in the market. Id. ¶¶ 64–83. On the SEC's own allegations, Party A alone realized any proceeds.

This gap is not incidental; it reflects the broader defects pervading the Complaint—entity misidentification, group pleading, and collateral attack on another court's judgment. Because § 17(a)(2) liability attaches only where the defendant itself "obtain[s] money or property by means of" fraud, and because the SEC alleges no such Camelot-specific nexus, the claim fails as a matter of law and must be dismissed with prejudice under Rule 12(b)(6).

## VI.    AIDING-AND-ABETTING, "SCHEME," AND AFFILIATE/CONTROL THEORIES FAIL AS A MATTER OF LAW; THE DISGORGEMENT DEMAND SHOULD BE STRICKEN

The SEC's Complaint attempts to hold Camelot liable under a patchwork of theories—aiding-and-abetting, "scheme" liability, and affiliate/control status—but none is pled with the factual specificity or legal grounding that the securities laws demand. Each theory requires elements that are absent here: aiding-and-abetting liability requires actual knowledge and substantial assistance in a primary violation; "scheme" liability requires deceptive conduct independent of

11

misstatements; and affiliate/control status requires power to direct the issuer's management or policies. The Complaint pleads none of these as to Camelot.

Equally fatal, the SEC's disgorgement demand cannot survive unless it is tethered to Camelot's own net profits and awarded for the benefit of victims—requirements made explicit by the Supreme Court in *Liu v. SEC* and reinforced by the Second Circuit in *SEC v. Govil*. Because the SEC has not alleged that Camelot obtained or retained investor funds at all, its request for disgorgement is legally defective.

At bottom, the SEC's theories reflect an expansive enforcement gloss on the statutes and rules it invokes. But after *Loper Bright* and *Kisor*, courts owe no deference to agency litigating positions that attempt to broaden statutory terms like "obtain," "scheme," or "control." Interpretation is for the judiciary. When the correct standards are applied, each of the SEC's theories fails on the pleadings, and its disgorgement demand must be stricken at the threshold.

To state aiding-and-abetting, the SEC must allege: "(1) the existence of a primary violation; (2) actual knowledge of the primary violation by the aider and abettor; and (3) substantial assistance by the aider and abettor in achieving the primary violation." *S.E.C. v. Apuzzo*, 689 F.3d 204, 211–13 (2d Cir. 2012) (emphases added). "Scheme" liability requires deceptive acts beyond misstatements; plaintiffs may not repackage a deficient misstatement theory as a "scheme." *Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 53–55 (2d Cir. 2022). "Control" (and thus "affiliate") turns on the practical power "to direct or cause the direction of the management and policies" of the issuer. 17 C.F.R. § 230.405; *S.E.C. v. Kern*, 425 F.3d 143, 148–49 (2d Cir. 2005). Influence, titles, or transaction-specific involvement do not suffice. *In re Lehman Bros. Mortg.- Backed Sec. Litig.*, 650 F.3d 167, 185–87 (2d Cir. 2011); *In re Alstom SA*, 406 F. Supp. 2d 433,

12

487 (S.D.N.Y. 2005). Disgorgement is available only if limited to the defendant's net profits and awarded for the benefit of victims, with pecuniary loss to identifiable victims required. *Liu* at 140 S. Ct. 1936, 1940, 1946 (2020); *Govil*, 86 F.4th 89 at 95–96 (2d Cir. 2023). And under *Loper Bright*, courts owe no Chevron deference to agency efforts to expand statutory terms (e.g., §§ 10(b), 17(a), 5, or § 78u(d)(5)); interpretation is for the judiciary, not agency litigating positions. *Loper Bright Enterprises*, 603 U.S. at 385–88; see also *Kisor v. Wilkie*, 588 U.S. 558, 139 S. Ct. 2400, 2415–18 (2019) (no Auer deference to bare litigation views; regulation must genuinely be ambiguous and the agency interpretation "reasonable" and "authoritative"). [3]

The Complaint alleges no Camelot-specific facts showing actual knowledge of any primary violation or substantial assistance through Camelot's own actions. *S.E.C.*, 689 F.3d at 212–13. To the contrary, testimony establishes the Camelot Trustee learned of downstream sales "pretty late in the game after the whole SEC thing." Vol. 2, 326–27. The only Camelot tasks identified were ministerial—"PDF/formatting support"—with "Billy [Ray] [doing] the actual work." Vol. 2, 344. Ministerial, clerical assistance does not constitute the "substantial assistance" *Apuzzo* demands.

---

[3] Auer deference comes from the Supreme Court's decision in *Auer v. Robbins*, 519 U.S. 452 (1997). In *Auer*, the Court held that when a regulation is ambiguous, courts should generally defer to the agency's own interpretation of that regulation—even if the interpretation comes from sources like an agency's legal brief—so long as the interpretation is not "plainly erroneous or inconsistent with the regulation." This principle built on an earlier case, *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945), which first articulated the idea that courts should give "controlling weight" to an agency's interpretation of its own regulations unless it is plainly wrong. Because *Auer* reaffirmed and extended *Seminole Rock*, the doctrine is sometimes called "Seminole Rock/Auer deference." Here is a direct excerpt from *Kisor*, 588 U.S. 558, confirming that mere litigation positions do not warrant Auer deference—it must be a genuine, authoritative, and reasoned agency judgment: "The regulatory interpretation must represent its authoritative, official position, reflecting its substantive expertise and fair and considered judgment, rather than an ad hoc litigating position or post hoc rationalization." This captures the core limitation on Auer deference.

See *id.*; Compl. ¶¶ 85, 98, 102 (citing "consulting" and "tax refund" entries without defendant-specific deceptive conduct). For "scheme" liability, the SEC identifies no deceptive act by Camelot; Rule 9(b) particularity is absent, and the theory cannot be salvaged by relabeling group allegations as a "scheme." *Rio Tinto* at 41 F.4th at 53–55.

The "affiliate/control" theory likewise fails. The SEC pleads no facts showing Camelot had the power to direct Enzolytics' management or policies: no officer/director role, no voting control, no board-appointment power, no veto/consent rights, and no management or shareholder agreement conferring control. See Compl. ¶¶ 22, 64–83, 98 (describing Camelot as an outside "consultant"); Vol. 1, 80–81 (distinguishing Enzolytics employees from outside consultants). Influence or participation in discrete transactions "≠ control." *In re Lehman Bros. Mortgage-Backed Securities Litigation*, 650 F.3d at 185–87; *In re Alstom SA*, 406 F. Supp. 2d at 487. To the extent the SEC urges a more elastic, enforcement-driven definition of "affiliate" or "control," *Loper Bright* forecloses deference to that expansion; the Rule 405 text and *Kern* govern.

Finally, the disgorgement demand cannot survive *Liu*/*Govil*. The SEC pleads neither Camelot-specific net profits nor victim pecuniary loss traceable to Camelot. See Compl. ¶¶ 85, 98, 102 (no allegation that funds were investor proceeds or retained profits). The record shows modest balances—often ~$1,500—and payments mapped to ordinary personal expenses during a period when Ray lacked a bank account, tracked for tax purposes. Vol. 2, 321, 375–76. That is the opposite of ill-gotten "net profits" kept at investors' expense. *Liu*, 140 S. Ct. at 1940, 1946; *Securities and Exchange Commission*, 86 F.4th at 95–96.

Because the SEC has not pled Camelot's actual knowledge or substantial assistance, has identified no Camelot-specific deceptive act to support a "scheme," has not alleged control within

Rule 405, and has failed to satisfy *Liu/Govil*'s disgorgement prerequisites—under standards the Court must apply without deference to expansive agency theories, *Loper Bright Enterprises*, 603 U.S. at 385–88—the aiding-and-abetting, scheme, and affiliate/control theories should be dismissed, and the disgorgement demand stricken at the pleading stage.

## CONCLUSION AND PRAYER FOR RELIEF

For all these reasons, Defendant Camelot Nevada Trust respectfully requests dismissal of the Complaint in its entirety under Rules 12(b)(2), 12(b)(3), 12(b)(6), 8, and 9(b). The SEC's case is fatally defective: it sued the wrong entity, alleges no securities transaction, pleads no Camelot-specific fraud, and seeks to re-litigate matters already adjudicated by another federal court.

Leave to amend and conduct continued discovery would be punitive given the years of testimony, thousands of hours, and tens of thousands of documents already produced by the Camelot Trustee. Nor can the agency salvage standing by litigation gloss: under *Loper Bright Enterprises*, 603 U.S. at 385–88, statutory terms must be applied as written, not as the SEC wishes them to be. These jurisdictional, venue, and statutory defects are incurable. Dismissal with prejudice is therefore required. Accordingly, Camelot prays that the Court enter an Order:

1. Dismissing the Complaint with prejudice as to Camelot Nevada Trust;
2. Awarding Camelot such other and further relief as the Court deems just and proper.

Dated: August 25, 2025

New York, New York

Respectfully submitted,

By: /s/ Patrick Ryan Morris
PATRICK RYAN MORRIS, ESQ.
SDNY Bar No. MO9929
NY: 5575501
305 Broadway, Suite 777
New York, New York 10007
+ 1 (917) 905 – 9804
+ 1 (917) 970 - 8446
prm@patrickmorrislaw.com

*Attorneys for Defendant Camelot Nevada Trust*