# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,
                              Plaintiff,

    v.

HARRY ZHABILOV,
BILLY V. RAY, JR.,
CHARLES DILLUVIO,
STEPHEN APOLANT,
DANNIE ZHABILOV,
JONATHAN FARBER,
CAMELOT NEVADA TRUST,
SEACOR CAPITAL, INC.,
SKY-DIRECT LLC, and
WEXFORD INDUSTRIES LTD.,
                              Defendants,

    and

NY FARMS GROUP, INC. and
EQUITY MARKETS ADV LLC,
                              Relief Defendants.

Civil Action No. 1:24-cv-7362 (ALC)

---

## PLAINTIFF'S OPPOSITION TO
## MOTION TO DISMISS BY DEFENDANTS APOLANT,
## DILLUVIO, SEACOR CAPITAL, AND SKY-DIRECT, AND
## RELIEF DEFENDANTS NY FARMS GROUP AND EQUITY MARKETS ADV

---

**SECURITIES AND EXCHANGE COMMISSION**
Rua M. Kelly
Marc J. Jones

*Attorneys for Plaintiff Securities
and Exchange Commission*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

STANDARD OF REVIEW ......................................................................................................... 2

SUMMARY OF COMMISSION'S COMPLAINT ..................................................................... 2

FACTUAL BACKGROUND ...................................................................................................... 3

ARGUMENT ................................................................................................................................ 6

    I.    SCHEME LIABILITY ..................................................................................................... 7

    II.    MISREPRESENTATION LIABILITY ......................................................................... 15

    III.    REGISTRATION VIOLATIONS .................................................................................. 18

    IV.    RELIEF DEFENDANTS ............................................................................................... 20

    V.    DISORGEMENT .......................................................................................................... 21

CONCLUSION ........................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Acito v. IMCERA Grp., Inc.,* 47 F.3d 47 (2d Cir. 1995) ............................................................ 7, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 2, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................ 6

*CFTC v. Walsh*, 618 F.3d 218 (2d Cir. 2010) ................................................................................. 20

*Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229 (S.D.N.Y. 2011) ........................................... 3

*ECA v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) ........................................................ 14

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168 (2d Cir. 2004) 16

*Janus Cap. Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) .................................. 17

*Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229 (2d Cir. 2007) ............................................ 2

*Loreley Financing (Jersey) No. 3 Limited v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2017) ................................................................................................................................................ 16

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ........................................................................ 19

*Novak v. Kasaks,* 216 F.3d 300 (2d Cir. 2000) ............................................................................... 7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) ... 17

*Pennaluna & Co. v. SEC*, 410 F.2d 861 (9th Cir. 1969) ......................................................... 11, 13

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ........................................................................... 2

*Roth v. LAL Fam. Corp.*, 748 F. Supp. 3d 180 (S.D.N.Y.) (Sept. 10, 2024) .................................. 3

*SEC v. Alpert*, 2018 WL 1156012 (S.D.N.Y. Mar. 2, 2018) ........................................................ 18

*SEC v. Am. Beryllium & Oil Corp.*, 303 F. Supp. 912 (S.D.N.Y. 1969) ...................................... 11

*SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012) .................................................................................. 6

*SEC v. Bronson*, 14 F. Supp. 3d 402 (S.D.N.Y. 2014) ................................................................. 19

*SEC v. Caledonian Bank Ltd.*, 145 F. Supp. 3d 290 (2015) ........................................................ 22

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998) ........................................................................... 20

*SEC v. Cavanagh*, 445 F.3d 105 (2d Cir. 2006) ..................................................................... 18, 19

*SEC v. Collector's Coffee, Inc.*, 697 F. Supp. 3d 138 (S.D.N.Y. 2023) ........................................ 8

*SEC v. DeFrancesco*, 699 F. Supp. 3d 228 (S.D.N.Y. 2023) ........................................................ 17

*SEC v. Garber*, 959 F. Supp. 2d 374 (S.D.N.Y. 2013) ................................................................... 17

*SEC v. Ginder*, 752 F.3d 569 (2d Cir. 2014) ................................................................................ 15

*SEC v. Govil*, 86 F.4th 89 (2d Cir. 2023) ............................................................................... 21, 23

*SEC v. Honig*, 2023 WL 6386918 (S.D.N.Y., Sept. 29, 2023)……………………………….16

*SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005) ................................................................................... 11

*SEC v. Levin*, 232 F.R.D. 619 (C.D. Cal. 2005) ......................................................................... 22

*SEC v. Longfin*, 316 F. Supp. 3d 743 (S.D.N.Y. 2018) ........................................................ 10, 11

*SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 2014 WL 5026153
   (S.D.N.Y. Sept. 29, 2014) ......................................................................................................... 7

*SEC v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072 (9th Cir. 2010) .................................. 11

*SEC v. Rio Tinto plc*, 41 F.4th 47 (2d Cir. 2022) ........................................................................... 8

*SEC v. Sason*, 433 F. Supp. 3d 496 (S.D.N.Y. 2020) .................................................................... 8

*SEC v. Sourlis*, 851 F.3d 139 (2d Cir. 2016) ............................................................................... 15

*SEC v. Treadway*, 430 F. Supp. 2d 293 (S.D.N.Y. 2006) ........................................................... 14

*SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412 (S.D.N.Y. 2007) ............................................ 18

*SEC v. Verdiramo*, 890 F. Supp. 2d 257 (S.D.N.Y. 2011) ..................................................... 10, 11

*SEC v. Wall St. Communications, Inc.*, 2009 WL 2579310 (M.D. Fla. Aug. 19, 2009) ............. 22

*SEC v. Wey*, 246 F. Supp. 3d 894 (S.D.N.Y. 2017) ..................................................................... 15

*SEC v. Wyly*, 788 F. Supp. 2d 92 (S.D.N.Y. 2011) ....................................................................... 6

*SEC v. Yin*, 2023 WL 2753094 (S.D.N.Y. Mar. 31, 2023) .......................................................... 21

*Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124 (2d Cir. 1994) .................................................... 7

*Tabak v. Canadian Solar Inc.*, 549 F. App'x 24 (2d Cir. 2013) ................................................... 14

*Teamsters Loc. 445 Freight v. Dynex Cap., Inc.*, 531 F.3d 190 (2d Cir. 2008) ........................... 14

*United States v. Corr*, 543 F.2d 1042 (2d Cir. 1976)............................................................ 11, 13

*United States v. Space Hunters, Inc.*, 429 F.3d 416 (2d Cir. 2005)................................. 19

*Wellman v. Dickinson*, 682 F.2d 355 (2d Cir. 1982) ..................................................... 12

*Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011)......................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................................ 6

Fed. R. Civ. P. 8(a) ............................................................................................................. 18

Fed. R. Civ. P. 9(b) ....................................................................................................... 2, 6, 7, 15

**Regulations**

17 C.F.R. § 230.144 ........................................................................................................... 11

17 C.F.R. § 230.405 ........................................................................................................... 1, 10

17 C.F.R. §240.10b-5 ......................................................................................................... 2, 8

## PRELIMINARY STATEMENT

Defendants Stephen Apolant and Charles Dilluvio seek to dismiss the Commission's claims against them and the entities that they controlled, Defendants Sky-Direct LLC ("Sky-Direct") and Seacor Capital, Inc. ("Seacor," together "the Apolant-Dilluvio Entities") and Relief Defendants NY Farms Group, Inc. ("NY Farms") and Equity Markets ADV LLC ("Equity Markets," together "the Relief Defendants").  In advancing their myriad – and meritless – arguments to dismiss the Complaint, Apolant and Dilluvio present a counterfactual narrative of their relationship to Enzolytics, Inc., claiming that they were "at most" arm's-length investors who "allegedly had consulting agreements with the company."  Apolant and Dilluvio Memorandum of Law ("Memo.") at 1.

The Complaint pleads with particularity that Apolant and Dilluvio generated millions of dollars in profit through a fraudulent scheme to conceal their status as affiliates and to sell large quantities of Enzolytics shares without having to register them.  An affiliate "directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with" an issuer.  17 C.F.R. § 230.405.  "Control" is the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Id.*

Through their scheme, executed with Defendants Harry Zhabilov and Billy Ray (collectively, "the Control Group,") the Apolant-Dilluvio Defendants deceptively obtained massive quantities of Enzolytics shares, misrepresented their affiliate status in attorney opinion letters in order to get sales restrictions removed from those shares, and then profitably sold the resultant shares to the investing public through complex, multilayered transactions with the defendant-entities, relief defendants, and third parties, including Defendants Jonathan Farber and Wexford Industries, Ltd. ("Wexford").  The Defendants thus violated Section 10(b) of the

1

Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)], Rule 10b-5 thereunder

[17 C.F.R. §240.10b-5], and Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], as well as

the registration requirements set forth in Sections 5(a) and 5(c) of the Securities Act [15 U.S.C.

§§77e(a), (c)], and generated ill-gotten gains for the Defendants and the Relief Defendants from

retail investors unaware that company affiliates were selling their shares.  Accordingly, the Court

should deny Defendants' motion.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6) should be denied if a complaint contains sufficient factual matter to "state a

claim to relief that is plausible on its face." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128

(2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*.  In evaluating a motion to

dismiss, "[c]onsideration is limited to the facts alleged in the complaint and any documents

attached to the complaint or incorporated by reference." *Rombach v. Chang*, 355 F.3d 164, 169

(2d Cir. 2004).  Further, courts must accept as true all factual allegations in the complaint and

draw all reasonable inferences in plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496

F.3d 229, 237 (2d Cir. 2007).  Fed. R. Civ. P. 9(b) requires that, for claims sounding in fraud, the

complaint "must state with particularity the circumstances constituting fraud," but "malice,

intent, knowledge, and other conditions of a person's mind may be alleged generally."

## SUMMARY OF COMMISSION'S COMPLAINT

The Commission's complaint alleges that Apolant, Dilluvio, Sky-Direct, and Seacor

engaged in a fraudulent scheme to profit from deceptively accumulating stock in the company

Enzolytics while concealing their control of the company and the stock, then selling that stock to

2

retail investors.  Compl. ¶1.  While the focus of the Complaint is on the fraudulent scheme, the Commission also alleges that the scheme encompassed misrepresentations by Apolant and Dilluvio about their relationship with Enzolytics to obtain unrestricted shares of stock – including by providing attorney opinion letters that falsely stated that the entities[1] they controlled were not affiliates of Enzolytics.  *Id.* ¶8.  The Complaint alleges that Apolant and Dilluvio's fraudulent conduct and misstatements (and those of their entities, Sky-Direct and Seacor), violated Exchange Act Section 10(b) and Rule 10b-5 thereunder, Securities Act Section 17(a), and the registration requirements set forth in Securities Act Sections 5(a) and 5(c).  *Id.* ¶11.

## FACTUAL BACKGROUND

The Commission's allegations against Apolant and Dilluvio center on the two men's undisclosed involvement in a thinly traded Delaware public company called Enzolytics, Inc.  In the company's public filings in 2020, Enzolytics claimed to be "a drug development company committed to the commercialization of its proprietary proteins for the treatment of HIV/AIDS."  *See* Exhibit B to the Declaration of Rua M. Kelly ("Kelly Decl.") (Ex.-99.1 to Enzolytics SEC Form 8-K, dated Apr. 16, 2020).[2]  Defendant Harry Zhabilov was President, CEO, and sole board member of Enzolytics until the company merged with another company in late 2020, when he became Chief Science Officer.  Compl. ¶¶16, 58, 87, 89; *see also* Exhibit A to Kelly Decl.

---

[1] Defendant Sky-Direct LLC ("Sky-Direct") is a corporation controlled by Apolant.  Compl. ¶24.  Defendant Seacor Capital, Inc. ("Seacor") is a corporation controlled by Dilluvio.  *Id.* ¶23.  Although both Sky-Direct and Seacor were ostensibly controlled by the spouses of Apolant and Dilluvio, the Complaint alleges that Sky-Direct and Seacor were controlled by Apolant and Dilluvio respectively – not their spouses.  *Id.*  Relief Defendants NY Farms Group, Inc. ("NY Farms") and Equity Markets ADV LLC ("Equity Markets") are both controlled by Apolant.

[2] When deciding a motion to dismiss, the Court is entitled to consider, *inter alia*, documents "integral" to the complaint and relied on in it, even if not attached or incorporated by reference.  *See Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011).  The Commission submits that particularly where a complaint alleges fraud related to the registration of securities, the company's SEC filings are integral to the Complaint.  *See also Roth v. LAL Fam. Corp.*, 748 F. Supp. 3d 180 (S.D.N.Y.) (Sept. 10, 2024) (taking judicial notice of SEC filings referenced in complaint and attached to declarations filed in support of motion to dismiss).

(SEC Form 8-K, signed by Harry Zhabilov as President and CEO of Enzolytics).  At all times relevant to the Complaint, Enzolytics was a development stage company, *i.e.*, a pre-revenue company.  *Id*. ¶28 (noting that Enzolytics was allegedly "in the development stage").  As the Complaint describes, Enzolytics had substantial debt, as it relied on outside financing to operate, including funding from Apolant and Dilluvio.  *See id*. ¶28 (alleging that Defendant Ray was responsible for obtaining financing for Enzolytics), ¶51 (describing loans totaling $1,420,000 made by Apolant, Seacor, and Sky-Direct to Enzolytics).

The Complaint describes Apolant and Dilluvio's financial relationship to Enzolytics. While neither Apolant nor Dilluvio had formal roles at Enzolytics as officers, directors, or board members, both had roles behind the scenes (as well as purported "consulting" agreements executed with the Apolant-Dilluvio Entities).  And – relatedly – Apolant and Dilluvio were constrained in working with public companies and/or trading securities because of prior enforcement actions against them by state and federal securities regulators.  Apolant is a former registered representative of a broker-dealer who was barred by state authorities in Georgia and New Jersey from participating in the sale of securities in those states, based on prior securities law violations.  *Id*. ¶19.  Dilluvio was charged by the Commission with violating the federal securities laws back in 2001; Dilluvio consented to an injunction against future violations of the antifraud provisions of the securities laws, as well as to pay disgorgement, and was then barred from trading in penny stocks.  *Id*. ¶18.

Despite their lack of official titles at Enzolytics, beginning in 2017, both Apolant and Dilluvio exercised outsized authority over the company, as did Defendant Billy Ray.[3]  By the fall

---

[3] While Ray is not the subject of the instant motion to dismiss, Ray – like Apolant and Dilluvio – had no formal role with Enzolytics, beyond a purported "consultancy agreement." *Id*. ¶17.  Ray was also the subject of a prior SEC action alleging that Ray violated the antifraud provisions of the federal securities laws; in 2014, Ray consented to

of 2017, Zhabilov and Ray were working closely with Dilluvio and Apolant, who funded Enzolytics through Sky-Direct and Seacor.  *Id*. ¶51.  On Ray's recommendation, Zhabilov engaged Dilluvio as a "project manager" with Enzolytics.  *Id*. ¶50.  By in or about 2018, both Sky-Direct (Apolant) and Seacor (Dilluvio) had entered into so-called "consulting agreements" with Enzolytics, purportedly to perform "business consulting and advisory services" in exchange for Enzolytics shares.  *Id*. ¶52.  Dilluvio in particular was in frequent communication with both Ray and Zhabilov on key management topics, including potential mergers, filings, potential liability, and communications with counsel.  *Id*. ¶53.  Indeed, in 2019, Zhabilov acknowledged that he had gotten permission from "Steve" [Apolant] and "Charlie" [Dilluvio] and an associate to file a Form 8K with the Commission.  *Id*. ¶54.  Dilluvio was copied on drafts of company disclosures and made substantive edits to those documents.  *Id*. ¶56.  Apolant and Dilluvio also paid for Enzolytics to become current with required legal filings, for merger fees, and for attorney's fees.  *Id*. ¶58.  On top of steering Enzolytics through critical junctures for the company, Apolant and Dilluvio were major sources of funding; between 2017 and 2020, Sky-Direct and Apolant loaned Enzolytics at least $120,000, while between 2020 and 2021, Sky-Direct and Seacor wired Enzolytics ~$1.3 million.  *Id*. ¶51.

Apolant and Dilluvio were not simply providing funding to a start-up company. Beginning as early as 2017, Apolant and Dilluvio were scheming with Ray, Zhabilov, and others to obtain large quantities of unrestricted stock in their control, ostensibly as payment for their "consulting" to Enzolytics.  *Id*. ¶¶37, 55.  These efforts were successful.  By late 2020, Apolant and Dilluvio alone controlled about 550 million unrestricted Enzolytics shares, or more than 30

---

entry of a judgment that barred him from trading in penny stocks and from serving as an officer or director of most publicly-traded companies.  *Id*.

percent of the "float," *e.g.*, the total shares available for trading in the open market. *Id.* ¶59. As detailed in the Complaint, the Control Group took several convoluted steps to obtain those shares for Apolant and Dilluvio, all of which required concealing the affiliate status of Apolant, Dilluvio, Sky-Direct, and Seacor. For example, in the fall of 2020, Apolant and Dilluvio (through Seacor and Sky-Direct) converted debt they held into nearly 400 million unrestricted shares of Enzolytics. *Id.* ¶40. Apolant and Dilluvio could obtain those shares because they provided the transfer agent with attorney opinion letters stating that Sky-Direct and Seacor were not affiliates of Enzolytics. *Id.* But that representation was false; they were affiliates. Dilluvio and Apolant had been involved with day-to-day management and overall strategic decision making of Enzolytics for years, as detailed in the Complaint. *Id.* ¶¶40, 46, 50, 51-58. And once Apolant and Dilluvio obtained unrestricted shares of Enzolytics, Apolant funded a stock promotional campaign to increase the moribund level of trading and to allow them to sell large quantities of stock. *Id.* ¶127. Defendants then sold their stock (concealing their identities as sellers by selling through Wexford, among others) and made tens of millions of dollars by selling the shares to buyers who had no idea about the Defendants' affiliate status with Enzolytics. *Id.*, ¶¶ 129-30.

## ARGUMENT

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *SEC v. Apuzzo*, 689 F.3d 204, 207 (2d Cir. 2012); *SEC v. Wyly*, 788 F. Supp. 2d 92, 101 (S.D.N.Y. 2011). A motion to dismiss should be granted only if the complaint does not articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Federal Rule of Civil Procedure 9(b) requires that allegations of fraud "must state with

6

particularity the circumstances constituting fraud," but the rule allows that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Further, the Commission must sufficiently allege scienter for its fraud claims.[4]  Scienter is a fact-specific inquiry, and courts are typically hesitant to grant a motion to dismiss on scienter grounds because intent is a classic issue for the factfinder.[5]  *See*, *e.g.*, *SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc*., No. 13-CV-4645 JPO, 2014 WL 5026153, at *4 (S.D.N.Y. Sept. 29, 2014) ("The Second Circuit has also held that a complaint subject to Rule 9(b) should be allowed to survive a motion to dismiss based on 'fairly tenuous inferences' of intent, because intent is a fact that a jury should find.") (citations and quotation omitted).  The Second Circuit has held that, to be adequate, scienter allegations must "give rise to a strong inference of fraudulent intent." *Novak v. Kasaks,* 216 F.3d 300, 307 (2d Cir. 2000).  A plaintiff can establish this intent "'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  *Acito v. IMCERA Grp., Inc.,* 47 F.3d 47, 52 (2d Cir. 1995) (quoting *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994)).

## I.    SCHEME LIABILITY

Section 17(a)(1) of the Securities Act prohibits a person from "employ[ing] any device, scheme, or artifice to defraud," and Section 17(a)(3) of the Securities Act prohibits "engag[ing] in any transaction, practice, or course of business which operates or would operate as a fraud or

---

[4] As Defendants note, violations of Sections 5(a) and (c) of the Securities Act do not require proof of scienter.

[5] Throughout the Complaint, the Commission alleges the Defendants' states of mind in the alternative because certain claims require a lesser state of mind than scienter to establish a violation.  For the sake of simplicity, the Commission will generally refer to the Defendants' knowing or intentional misconduct, but that conduct also falls within the scope of the negligence required to establish violations of Section 17(a)(2) and (a)(3) of the Securities Act.

deceit upon the purchaser." 15 U.S.C. § 77q(a)(1), (a)(3). Section 10(b) and Rule 10b-5(a) and (c) of the Exchange Act similarly make it unlawful for any person "in connection with the purchase or sale of any security," 15 U.S.C. § 78j(b), to "employ any device, scheme, or artifice to defraud," or to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit. 17 C.F.R. § 240.10b-5(a), (c).[6] Taken together, these statutes and rules "create what courts have called 'scheme liability' for those who, with scienter, engage in deceitful conduct." *SEC v. Sason*, 433 F. Supp. 3d 496, 508 (S.D.N.Y. 2020) (internal citations omitted). To prove liability, the Commission must show "that defendants: (1) committed a deceptive or manipulative act; (2) in furtherance of the alleged scheme to defraud; (3) with scienter." *SEC v. Collector's Coffee, Inc.*, 697 F. Supp. 3d 138, 157 (S.D.N.Y. 2023) (internal citations omitted); *see also SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022) (actionable scheme liability claim requires conduct beyond misstatements and omissions, such as dissemination of misstatements).

Notwithstanding the Apolant-Dilluvio Defendants' protestations, the Complaint articulates a scheme to defraud by the Defendants, including Apolant and Dilluvio, and it is a scheme that is not hard for the reader to understand. In the very first paragraph, the Complaint alleges that Dilluvio, Apolant, Seacor, Sky-Direct, and others "engaged in a fraudulent scheme to profit from accumulating Enzolytics stock while concealing their control of the company and the stock, then selling that stock to retail investors." Compl. ¶1 (noting that the scheme generated "about $92 million" in illicit profits). While Apolant and Dilluvio's methods were byzantine,

---

[6] The Apolant-Dilluvio Defendants try to claim that the Commission's "failure to tie the allegations to specific subsections" of Rule 10b-5 and Section 17(a) constitutes grounds for dismissal. But, as Defendants concede, the Commission's claims include each of the subsections by quoting the specific language of each subsection. *See*, *e.g.*, Compl, ¶ 137. The Commission need not choose which of the three subsections is implicated if the Defendants' conduct violates all three sections.

involving false attorney opinion letters, sham consulting agreements, and using a Canadian entity to sell stock (*see, e.g.*, *Id.*, ¶¶ 8, 40, 113, 118, 120 (letters); ¶¶ 7, 52, 55, 103-109 (consulting agreements); ¶ 128 (Canadian entity)), these were deliberate acts in furtherance of a fraudulent scheme to profit by selling millions of unregistered shares that affiliates like Apolant and Dilluvio should never have had in the first place.

Among other things, Defendants insinuate that because the Complaint does not allege a typical "pump-and-dump" scheme – *e.g.*, where defendants "pump" up the stock price with lies and half-truths, and then "dump" shares on unwitting investors – that it does not allege fraudulent conduct. *See, e.g.*, Memo. at 17. They are wrong. In fact, the Complaint alleges that Apolant, Dilluvio, and the entities they controlled commit[ted] acts to wrong securities purchasers in their property rights by dishonest methods – through Seacor and Sky-Direct, Apolant and Dilluvio acquired millions of unrestricted shares by sending false attorney opinion letters to the transfer agent that concealed their status as affiliates of Enzolytics in order to get the restrictive legend lifted from the shares. *See* Compl. ¶¶8, 40, 46, 59, 111-121. In other words, absent the fraudulent scheme, Apolant and Dilluvio would not have had the ability to sell millions of Enzolytics shares, at any price.

Moreover, Defendants' contention that Apolant, Dilluvio, Sky-Direct, and Seacor were *not* affiliates of Enzolytics borders on ludicrous. The Complaint amply pleads Apolant and Dilluvio's control of Enzolytics and their inclusion in a control group. *See, e.g.*, ¶1 (alleging the existence of the group, its control of Enzolytics, and the group's involvement in a fraudulent scheme); ¶3 (the control group obtained shares by arranging for Enzolytics to enter into sham consulting agreements and using misrepresentations about their affiliate status to obtain shares); ¶¶39, 44 (control group's concealment of control); ¶40 ("Dilluvio and Apolant were both

involved in the day-to-day operations and management of Enzolytics"); ¶46 (Control Group defendants "controlled both the day-to-day operations of the company and strategic decision making"); ¶48 (Seacor and Sky-Direct were affiliates because they were controlled by affiliates of Enzolytics); ¶50 (Dilluvio engaged as Enzolytics project manager); ¶52 (Seacor and Sky-Direct had agreements to perform "business consulting and advisory services"); ¶53 (Dilluvio communicated about multiple areas of the business including mergers and other corporate transactions as well as company filings); ¶55 (Dilluvio continued to be closely involved in Enzolytics' operations, including directing Zhabilov to sign notes and a consulting agreement); ¶56 (Dilluvio edited company disclosures before they were made public, and instructed Zhabilov to waive share transfer requirements); ¶58 (Dilluvio and Apolant signed off on merger target); ¶59 (Defendants were affiliates because of the large amount and large percentage of free-trading stock they held; including 30 percent of the free-trading stock[7] held by Apolant and Dilluvio alone); and ¶¶103-109 (Apolant and Dilluvio provided funds in exchange for "consulting agreement" for "business and consulting services" for Seacor and Sky-Direct). Taken together, the Complaint shows individual and collective "participation in and influence over the management and policies" of Enzolytics by Apolant, Dilluvio, and the entity Defendants that they controlled. *See SEC v. Verdiramo*, 890 F. Supp. 2d 257, 270 (S.D.N.Y. 2011).

In short, the Complaint makes plain that Apolant and Dilluvio worked hand-in-glove with Enzolytics management for years, making them affiliates of the company under the federal securities laws. *See* 17 C.F.R. § 230.405. But Apolant and Dilluvio claim that these allegations that they, individually and as members of a "control group," had enough influence over

---

[7] *See SEC v. Longfin*, 316 F. Supp. 3d 743, 759 (S.D.N.Y. 2018) (using control of large portion of the public "float" (the free-trading shares) and the resulting "influence on and domination of the market for Longfin shares" as a factor in finding defendant was an affiliate).

Enzolytics to be considered affiliates, are not enough.  Memo., pp. 5-12.  That argument is premature:  per the Second Circuit, determining whether a person or group exercises sufficient control to be an affiliate is "a question of fact which depends upon the totality of the circumstances including an appraisal of the influence upon management and policies of a corporation by the person" or group involved.  *United States v. Corr*, 543 F.2d 1042, 1050 (2d Cir. 1976) (citing *SEC v. Am. Beryllium & Oil Corp.*, 303 F. Supp. 912, 915 (S.D.N.Y. 1969)); *see also SEC v. Kern*, 425 F.3d 143, 149 (2d Cir. 2005); *SEC v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1087 (9th Cir. 2010) (control is a fact-intensive inquiry "to be determined from the particular circumstances of the case.").  That "totality of the circumstances" determination cannot be made at the outset of litigation, before fact discovery.

But even if the issue of "control" needed to be established in the Complaint, the Apolant-Dilluvio Defendants' "[a]ctive participation in and influence over the management and policies" of Enzolytics, including in concert with Defendants Ray and Harry Zhabilov, makes them "'person[s] that directly, or indirectly through intermediaries, control[led] … [the] issuer.'" *Verdiramo*, 890 F. Supp. 2d at 270 (quoting Rule 144, 17 C.F.R. § 230.144 (a)(1)).  The "test for control is sometimes framed as a question of fact in each case whether that person has enough influence within the group to be able to obtain the issuer's signature on a registration statement." *SEC v. Longfin*, 316 F. Supp. 3d 743, 759 (S.D.N.Y. 2018) (internal quotation omitted).  It "is not necessary that one be an officer, director, manager, or even shareholder to be a controlling person.  Further, control may exist although not continuously and actively exercised." *Pennaluna & Co. v. SEC*, 410 F.2d 861, 866 (9th Cir. 1969) (discussing SEC Rule 405, which contains the same definition as Rule 144 and defines "control").

In addition, the fraudulent scheme alleged in the Complaint does not require the Commission to show that the Apolant-Dilluvio Defendants *themselves* met the Section 5-related control standards. The Complaint alleges that Apolant, Dilluvio, and their entities were working in close coordination with the other members of the Control Group (Ray and Zhabilov). While "group" is not defined in Section 5, the rules promulgated under Securities Act Section 13 (requiring disclosure by an individual or group owning more than 5% of an issuer's securities) provides one. A group exists "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting, or disposing of equity securities of an issuer[.]" 17 C.F.R. § 240.13d-5(b)(1). The definition of "group" is broad; it includes any members who have "combined in furtherance of a common objective." *Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir. 1982). So for the Apolant-Dilluvio Defendants to be considered affiliates, it is not necessary that they themselves exercised control. The Commission need only plead that the Apolant-Dilluvio Defendants worked as part of a "group" that collectively exerted control over Enzolytics. The Complaint makes those allegations (*e.g.*, ¶¶ 1, 39, 55, 133), and the Apolant-Dilluvio Defendants' motion does not argue that these allegations about the Control Group are inadequate.

The Apolant-Dilluvio Defendants try to import the case law governing "control person liability" under Section 20(a) of the Exchange Act into their argument that they are not part of a control group for the purposes of affiliate status for exemptions to Section 5 of the Securities Act. But by trying to bootstrap case law about a particular type of secondary liability ("control person liability") to construe the securities sale registration exemptions, they go wrong. For instance, they cite several "control person liability" cases that suggest that "the exercise of influence" is not enough to exercise control. Memo., p. 8. But the Second Circuit's case law on

control in the context of registration exemptions to Section 5 of the Securities Act (that is, the pertinent case law) says the opposite:  determining "control" *does* involve "an appraisal of the influence upon the management and policies of a corporation…".  *Corr*, 543 F.2d at 1050. Likewise, the Apolant-Dilluvio Defendants cite Exchange Act Section 20(a) "control person liability" cases suggesting that the controlling person must be "a parent corporation, the employer of the primary violator or a director or officer of the primary violator corporation." Memo, p. 9.  But, in the context of the securities sale registration provisions, it "is not necessary that one be an officer, director, manager, or even shareholder to be a controlling person." *Pennaluna & Co.*, 410 F.2d at 866.  The Court should not accept Defendants' invitation to use Section 20(a) cases to interpret "control" here.

Finally, Defendants argue that the Complaint fails to adequately plead scienter as to both Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act.  In advancing this argument, Defendants ignore vast swaths of the Complaint that allege facts showing that Apolant, Dilluvio, Sky-Direct, and Seacor had motive and opportunity to commit fraud *and* that reflect compelling evidence of recklessness.  *See Acito*, 47 F.3d at 52 (scienter requires showing of motive and opportunity or allegations "that constitute strong circumstantial evidence of conscious misbehavior or recklessness").

To begin with, neither Apolant nor Dilluvio were amateurs in the securities space; the Complaint alleges that both were subject to bars from certain securities selling activities from state or federal securities regulators based on violations of federal or state securities laws.  *See* Compl., ¶¶18-19.  And by the time the Control Group submitted the false attorney opinion letters to transfer agents that allowed the restrictive legends to be removed from the stock certificates, allowing Apolant and Dilluvio to sell unregistered Enzolytics shares, Apolant and Dilluvio had

been working closely with the company for about three years. Both Seacor and Sky-Direct had "consulting agreements" with Enzolytics that purportedly dated back to 2018 [*id.*, ¶52], and the CEO of Enzolytics engaged Dilluvio as a project manager in 2017. *Id.*, ¶50.

It is hardly a logical leap to conclude that Apolant and Dilluvio—after working closely with Enzolytics management for three years, providing the company with funding, making strategic decisions alongside the CEO, and purportedly entering into formal agreements to provide services to the company—knew that they were affiliates of Enzolytics and intentionally concealed that fact. And the Complaint illustrates that both men had motive and opportunity to commit fraud, given their close relationships to the CEO (Zhabilov) and *de facto* CFO (Ray) and given that concealing affiliate status was the only route to generate tens of millions in stock sale proceeds from their shares in Enzolytics. [Compl., ¶¶3, 8, 9, 116-123.] These facts are a far cry from allegations that merely reflect "the general motivation to act in one's own economic self-interest[.]" *See Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 29 (2d Cir. 2013). This type of motive is also distinguishable from the general incentive "for the corporation to appear profitable and the desire to keep stock prices high[.]" *See ECA v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) (finding that motives "common to most corporate officers" do not constitute "motive" for purposes of scienter).[8]

The Complaint also meets the second prong for demonstrating scienter – namely, strong circumstantial evidence of conscious misbehavior or recklessness. *See ECA v. JP Morgan Chase Co.*, 553 F.3d at 198. The Complaint provides detailed factual allegations that constitute strong

---

[8] And Apolant and Dilluvio's scienter is imputed to the entities they controlled, Seacor and Sky-Direct. *See*, *e.g.*, *Teamsters Loc. 445 Freight v. Dynex Cap., Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (scienter imputed to a corporate entity when "an agent of the corporation committed a culpable act with the requisite scienter"); *SEC v. Treadway*, 430 F. Supp. 2d 293, 337 (S.D.N.Y. 2006) ("It is settled that the scienter of executives can be imputed to corporate entities.").

circumstantial and direct evidence of Apolant and Dilluvio's conscious misbehavior or recklessness.  *See, e.g.*, Compl. at ¶¶116-120 (outlining steps taken by Dilluvio and Apolant to conceal affiliate status to convert debt into additional unrestricted shares of Enzolytics).

The Apolant-Dilluvio Defendants fail to establish any deficiency in the Commission's scheme allegations under either Section 10(b) or Section 17(a), and their motion on these charges should thus be denied.  As shown in the next section, their argument on the Commission's additional theory of liability—misrepresentations—fares no better.

## II.    MISREPRESENTATION LIABILITY

The Commission alleges the Apolant-Dilluvio Defendants violated Section 10(b) and Rule 10b-5(b) by making misrepresentations and fraudulent omissions.  Compl., ¶¶ 135-138 (First Claim for Relief).  To do so, the Commission must allege that a defendant (1) made a material misstatement or omission, (2) with scienter, and (3) in connection with the purchase or sale of securities.  *See SEC v. Sourlis*, 851 F.3d 139, 144 (2d Cir. 2016).  The Commission further alleges [Compl., ¶¶ 139-42 (Second Claim for Relief)] that Apolant, Dilluvio, Sky-Direct, and Seacor intentionally or negligently made misrepresentations in violation of Section 17(a)(2) of the Securities Act, because they obtained money or property by means of an untrue statement of a material fact or any omission to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.  *See SEC v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014); *SEC v. Wey*, 246 F. Supp. 3d 894, 913 (S.D.N.Y. 2017) (same allegations that support claims under Section 10(b) can also support claims under Section 17(a)(2), which only requires negligent conduct).

To comport with Fed. R. Civ. P. 9(b), the Second Circuit requires that the plaintiff "(1) detail the statements (or omissions) that … are fraudulent, (2) identify the speaker, (3) state

where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Financing (Jersey) No. 3 Limited v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2017) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). "In determining the adequacy of [p]laintiffs' fraud pleadings under these various requirements, we view the alleged facts in their totality, not in isolation." *Id.* Scienter may be alleged by showing "conscious misbehavior or recklessness." *SEC v. Honig*, 2023 WL 6386918 at *10 (S.D.N.Y., Sept. 29, 2023).

The Complaint plainly states that Apolant, Dilluvio, Sky-Direct, and Seacor made misrepresentations about their affiliation with Enzolytics. As the Defendants acknowledge, the Complaint alleges that "Apolant and Dilluvio obtained attorney opinion letters 'that falsely stated' that Seacor and Sky-Direct were not Enzolytics affiliates." Memo. at 4; *see* Compl. ¶¶ 117-120. And it alleges that the Apolant-Dilluvio Defendants obtained money (their sale profits) and property (unrestricted Enzolytics shares) by doing so. *Id.*, *e.g.*, ¶¶ 1, 3, 8, 120-121,128-32. Thus, the Complaint sufficiently alleges that Apolant, Dilluvio, Sky-Direct, and Seacor made material misrepresentations, with scienter, in connection with the purchase or sale of securities to obtain money or property.

Confusingly, Defendants argue that the attorney opinion letters "are not actionable false statements" because "Defendants did not control Enzolytics … so a statement that they were not affiliates was not false." Memo. at 14. Defendants cite no caselaw for their assertion, which is wrong. As discussed above, Defendants need not have had unilateral control over Enzolytics to be affiliates under the law – and at the stage of a motion to dismiss, where the factual allegations are taken as true and all reasonable inferences are drawn in the Commission's favor, the

Complaint sufficiently alleges that the Apolant-Dilluvio Defendants were affiliated with Enzolytics.

Defendants are also wrong that the false attorney opinion letters[9] are not actionable because Defendants did not "make" the statements under *Janus Cap. Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Memo. at 14. *SEC v. Garber* is instructive on this issue. 959 F. Supp. 2d 374 (S.D.N.Y. 2013). There a group of defendants bought unregistered shares in penny stock companies and sold those shares to the investing public after "obtaining attorney opinion letters" that allowed convertible debt to be converted to "stock certificates without restrictive legends." *Id*. at 376-77. The *Garber* defendants argued that the Commission's Section 10(b) claims failed under *Janus* because only the "maker" of the misleading statement could be liable, and here, the "misrepresentations were made, not by Defendants but by attorneys in the form of opinion letters." *Id*. at 380. The District Court agreed that *Janus* governed but rejected this argument. Among other things, the Court found that the attorneys were "analogous to the investment advisors in *Janus* and Defendants to the client, whom *Janus* suggest[ed] *was* the maker of the statement." *Id*. Accordingly, the Court found that "[e]ven under *Janus*, the 'making' of these statements could be attributed to Defendants" because they had ultimate authority over whether and how to communicate the statement "in the context of the alleged scheme." *Id*. at 381-82.

Once again, the Apolant-Dilluvio Defendants' arguments do not show that any actual defect in the Commission's pleading of the misrepresentation claims, and that part of their

---

[9] Defendants make a cursory argument that the false attorney opinion letters are statements of opinion under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185 (2015). Such an argument is at best premature, since even if the Court were to apply *Omnicare*, statements of opinion are actionable "if: (1) the speaker does not honestly hold the stated opinion; (2) the opinion includes an 'embedded statement[] of fact' that is false; or (3) the opinion omits facts that are necessary to make the opinion not misleading." *See SEC v. DeFrancesco*, 699 F. Supp. 3d 228, 239-240 (S.D.N.Y. 2023) (applying *Omnicare* to statements in SEC filings). The Commission submits that Defendants' false statements about affiliate status meet all three prongs of *Omnicare*.

Motion should be denied.  That leaves their challenge to the Section 5 claims for sale of unregistered securities, which like their other arguments, should be rejected.

### III.    REGISTRATION VIOLATIONS

The Commission's complaint alleges that Apolant, Dilluvio, and the Apolant and Dilluvio Entities violated Sections 5(a) and 5(c) of the Securities Act by directly or indirectly engaging in the offer or sale of unregistered Enzolytics securities.  To state a Section 5 claim, the Commission must allege "(1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale."  *SEC v. Cavanagh*, 445 F.3d 105, 111 n. 13 (2d Cir. 2006) (citations and internal quotations omitted).  Scienter is not an element of a Section 5 violation.  *SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007)). Section 5 is a non-fraud claim governed by Federal Rule of Civil Procedure 8(a) and requires only a "short and plain statement of the claim[s]" showing that they are facially plausible.  *SEC v. Alpert*, 2018 WL 1156012, at *2 (S.D.N.Y. Mar. 2, 2018).

The Complaint establishes a prima facie case that the Apolant-Dilluvio Defendants violated Sections 5(a) and 5(c).  The Commission alleges: (1) that no registration statements were filed or in effect with the Commission for any of the Defendants' Enzolytics sales (*e.g.*, Compl., ¶¶ 7-10, 23-24, 40-41, 43-45, 59-60, 121-122, 128-134); (2) that the Apolant-Dilluvio Defendants brought about the sale of the unregistered securities (*e.g.*, *id.*, ¶¶ 121-122); and (3) that Defendants used instruments of interstate commerce and communication, including telephone and the mails, in connection with the offer and sale of these securities (*e.g.*, *id.*, ¶¶ 109, 110, 112 137, 141, 145).

The Apolant-Dilluvio Defendants do not contest the sufficiency of those allegations, claiming instead that their unregistered sales fall under one or more exemptions to the registration requirements.  Memo., at 22-23 ("The transactions involving Apolant, Sky-Direct, and the Dilluvio Defendants were exempt from registration.").  A defendant's assertion that its unregistered securities sales qualify for an exemption constitutes an affirmative defense, and the defendant bears the burden of establishing eligibility.  *Cavanagh*, 445 F.3d at 111 n.13 ("Once a prima facie case has been made, the defendant bears the burden of proving the applicability of an exemption.").  So the Commission's complaint need not allege facts preemptively to refute an assertion of an exemption by a defendant.

In fact, a court may not dismiss a claim based on an affirmative defense raised in a motion to dismiss, unless "'the facts supporting the defense appear on the face of the complaint,' and 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"  *United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)); *SEC v. Bronson*, 14 F. Supp. 3d 402, 411-12 (S.D.N.Y. 2014) (where the complaint does not allege sufficient facts to establish the applicability of and defendant's entitlement to asserted exemption, court cannot determine as a matter of law that defendants satisfy exemption and denies motion to dismiss on that basis).  In other words, the Commission's complaint would have to allege facts that conclusively established Defendants' entitlement to an exemption.  It does not.

The Apolant-Dilluvio Defendants seek to avail themselves of the Section 4(a)(1) registration exemption (requiring that the transaction be "by any person other than an issuer, underwriter, or dealer") and the Rule 144 safe harbor from the definition of underwriter.  Memo., p. 23.  As detailed above, the Complaint alleges facts that establish that the Apolant-Dilluvio

Defendants were affiliates and therefore will not be able to establish eligibility for the Section 4(a)(1) exemption. The Complaint certainly does not concede any facts conclusively establishing that the Apolant-Dilluvio Defendants were *not* affiliates. Defendants merely argue that there aren't enough facts to establish that they *were* affiliates, which is insufficient to warrant dismissal based on the assertion of the exemption affirmative defense. And even if the Complaint conceded that the Apolant-Dilluvio Defendants were not affiliates, there is a securities holding-period requirement for non-affiliates under the Rule 144 safe harbor. The Complaint does not allege facts establishing that, for each sale, the Apolant-Dilluvio Defendants held the securities for long enough to fulfill this requirement. Either way, as the Complaint does not allege facts sufficient to establish conclusively the Defendants' eligibility for an exemption, the Section 5 charge may not be dismissed.

## IV.    RELIEF DEFENDANTS

A federal court may order equitable relief against a relief defendant where that entity (1) has received ill-gotten funds, and (2) does not have a legitimate claim to the funds. *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998). Whether a relief defendant indeed lacks a legitimate claim to ill-gotten assets under *Cavanagh*'s second prong depends on the nature of the relief defendant's interest in the assets and how the assets passed to the relief defendant. *See CFTC v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010) (discussing legitimate and illegitimate claims to ill-gotten funds).

The claims against the Relief Defendants must stand, because the Complaint adequately alleges that NY Farms and Equity Markets (both controlled by Apolant) received millions in ill-gotten funds from stock sales without having a legitimate claim to those funds. As to Equity Markets, the Complaint alleges that Defendant Wexford transferred more than $23 million in

Enzolytics stock sale proceeds to Equity Markets, even though Equity Markets never transferred Enzolytics shares to Wexford.  Compl. ¶¶ 123.  Similarly, NY Farms received more than $14.5 million in Enzolytics stock sale proceeds from Wexford, [*id.,* ¶26], but does not appear to have paid any consideration for the 95 million shares that it received from Sky-Direct (another entity controlled by Apolant).  *See id*. ¶122.  In light of these specific and detailed allegations, the Commission is entitled to discovery on the convoluted transactions with the Relief Defendants that involve several third parties and appear to make no economic sense, other than to mask the purpose of the transfers.

Defendants also wrongly conflate their liability with that of the Relief Defendants, insisting that dismissal of claims against them would automatically warrant dismissal for NY Farms and Equity Markets.  Memo. at 23.  Not so.  Whether Relief Defendants must disgorge ill-gotten gains "is distinct from liability on the merits" and to be determined independently.  *See*, *e.g.*, *SEC v. Yin*, 17-cv-972 (JPO), 2023 WL 2753094, at *8 (S.D.N.Y. Mar. 31, 2023) (relief defendants not jointly liable with primary defendant, because relief defendants not personally liable for claims).

## V.    DISGORGEMENT

The Defendants and Relief Defendants' motion to dismiss the Commission's disgorgement claims is, at a minimum, premature.  Disgorgement is an equitable remedy to be decided *after* liability has been established, not a cause of action that must be plead in a complaint.  In *SEC v. Govil*, 86 F.4th 89 (2d Cir. 2023), the Second Circuit held that a district court at the remedial phase of an SEC action abused its discretion when it ordered disgorgement without finding that the investor-victims suffered pecuniary harm.  But *Govil* does not provide a basis to dismiss a request for relief at the motion to dismiss stage of a litigation.  Instead, *Govil*

confirms that disgorgement is a remedies issue addressed after liability.  There, the parties had already resolved the Commission's four substantive securities law claims and then were seeking court intervention for the appropriate remedy on one of those claims.  *Id*. at 97-98 (addressing standard for a district court to award disgorgement at the remedial phase).  Here, by contrast, the parties have not even obtained discovery, much less determined liability.  The parties should have the opportunity to evaluate and apply the facts here before seeking a ruling on the appropriate remedies for the alleged violation.  *See*, *e.g.*, *SEC v. Caledonian Bank Ltd.*, 145 F. Supp. 3d 290, 310 (2015) (denying motion to preclude SEC from seeking disgorgement as "premature" where defendant sought relief prior to determination of liability for securities law violation); *SEC v. Wall St. Communications, Inc.*, No. 8:09-cv-1046, 2009 WL 2579310, *3 (M.D. Fla. Aug. 19, 2009) (rejecting motion to dismiss arguments seeking to preclude remedies, including disgorgement, finding them "premature at this stage"); *SEC v. Levin*, 232 F.R.D. 619, 625 (C.D. Cal. 2005) (rejecting motion to strike claim for disgorgement finding issue "premature" at motion to dismiss stage).

Defendants are also wrong that the Complaint does not allege investor harm.  It does.  For example, after detailing the machinations of the Control Group to obtain millions of unrestricted shares of Enzolytics, the Complaint states:

> ***To sell these Enzolytics shares, the Defendants needed investors willing to buy them***.  To attract investors, Apolant, using funds from Sky-Direct, hired a stock promoter to tout Enzolytics stock in order to bring in investors who would buy the Defendants' stock.

Compl. ¶45 [emphasis added].  Then, in Paragraph 125, the Complaint notes that the Control Group sought a promoter "[t]o persuade enough retail investors to buy the hundreds of millions of shares of Enzolytics stock the Control Group intended to sell (and to do so without greatly depressing the stock price)" and explicitly states that it sought "to increase investor interest[.]"

The Complaint plainly alleges that the Control Group wanted to increase investor interest to sell millions of shares – and while it doesn't use the magic words "investor harm," the point is clear. The Control Group needed to ensure that willing buyers for Enzolytics shares were available – and the buyers needed to be willing to pay more than the Control Group's purchase prices (if any) to make these transactions profitable. *See id*., ¶¶126-27 (alleging that the promoter's job was to increase the volume of trading, and that in fact, the share price "began to creep up" right around the time that Sky-Direct and Wexford paid the promoter $109,000).

While Defendants are correct that the SEC must show that investors "suffered pecuniary loss" to obtain disgorgement under *Govil*, they are wrong about *when* the SEC must make such a showing. The Complaint adequately pleads investor harm. After fact and expert discovery and a determination of liability, the parties will quantify that harm for purposes of relief, including, but not limited to, disgorgement.

## CONCLUSION

For the reasons above, the Commission asks this Court to deny Defendants Apolant, Dilluvio, Sky-Direct, Seacor, and the Relief Defendants' Motion to Dismiss.

Dated: September 9, 2025

SECURITIES AND EXCHANGE COMMISSION

*/s/ Marc J. Jones*
Marc J. Jones (*pro hac vice*)
Rua M. Kelly (*pro hac vice*)
33 Arch Street, 24th Floor
Boston, MA 02110
jonesmarc@sec.gov
(617) 573-8900