UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : |
| HARRY ZHABILOV, BILLY V. RAY, JR., CHARLES DILLUVIO, STEPHEN APOLANT, DANNIE ZHABILOV, JONATHAN FARBER, CAMELOT NEVADA TRUST, SEACOR CAPITAL, INC., SKY-DIRECT LLC, and WEXFORD INDUSTRIES LTD., | : |
| Defendants, | : |
| and | : |
| NY FARMS GROUP, INC. and EQUITY MARKETS ADV LLC, | : |
| Relief Defendants. | : |

Case No. 1:24-cv-07362-ALC

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE APOLANT AND DILLUVIO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

---

**PASHMAN STEIN WALDER HAYDEN, P.C.**
Jerome M. Selvers
David N. Cinotti
Darcy Baboulis-Gyscek

*Attorneys for Defendants Stephen Apolant and Sky-Direct LLC and Relief Defendants NY Farms Group, Inc. and Equity Markets ADV LLC*

**HERRICK, FEINSTEIN LLP**
Arthur Glenn Jakoby
Maxim Mordecai Lebowitz-Nowak
Michael Ryan Feeney

*Attorneys for Defendants Charles Dilluvio and Seacor Capital, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .................................................................................................................... 1

   I.   The complaint fails to allege facts showing control. ......................................... 1

   II.  The complaint fails to state a claim for securities fraud. .................................... 5

   III. The complaint fails to state a claim for the sale of unregistered securities. ....................... 8

   IV. The complaint fails to state a claim against Relief Defendants. ......................... 8

   V.  Alternatively, the Court should strike the demand for disgorgement. ............................... 9

   VI. The Court should dismiss or strike with prejudice. ......................................... 10

CONCLUSION ................................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bartlett v. Baasiri*,
  81 F.4th 28 (2d Cir. 2023) ................................................................................... 3

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
  543 U.S. 157 (2004) ........................................................................................... 2

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
  643 F. Supp. 3d 421 (S.D.N.Y. 2022) ............................................................... 2

*Guerrero-Lasprilla v. Barr*,
  589 U.S. 221 (2020) ........................................................................................... 1

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ........................................................................................... 6

*Kelly-Brown v. Winfrey*,
  717 F.3d 295 (2d Cir. 2013) ............................................................................... 8

*Morales v. Quintel Ent., Inc.*,
  249 F.3d 115 (2d Cir. 2001) ............................................................................... 4

*Nano Dimension Ltd. v. Murchinson Ltd.*,
  681 F. Supp. 3d 168 (S.D.N.Y. 2023) ............................................................... 4

*Olson v. Major League Baseball*,
  29 F.4th 59 (2d Cir. 2022) ................................................................................. 6

*Polselli v. IRS*,
  598 U.S. 432 (2023) ........................................................................................... 3

*SEC v. Ahmed*,
  72 F.4th 379 (2d Cir. 2023) ............................................................................... 9

*SEC v. Caledonian Bank Ltd.*,
  145 F. Supp. 3d 290 (S.D.N.Y. 2015) ............................................................. 10

*SEC v. Contorinis*,
  743 F.3d 296 (2d Cir. 2014) ............................................................................... 9

*SEC v. Garber*,
  959 F. Supp. 2d 374 (S.D.N.Y. 2013) ............................................................... 6

*SEC v. Govil,*
    86 F.4th 89 (2d Cir. 2023) ................................................................................. 9, 10

*SEC v. Sayid,*
    No. 17-CV-2630, 2018 WL 357320 (S.D.N.Y. Jan. 10, 2018) ................................. 7

*SEC v. Yin,*
    17-CV-972, 2023 WL 2753094 (S.D.N.Y. Mar. 31, 2023) ........................................ 9

*Shotwell Mfg. Co. v. United States,*
    371 U.S. 341 (1963) .................................................................................................. 8

*Solomon v. Flipps Media, Inc.,*
    136 F.4th 41 (2d Cir. 2025) ................................................................................... 10

*Turkiye Halk Bankasi A.S. v. United States,*
    598 U.S. 264 (2023) .................................................................................................. 3

*U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC,*
    583 U.S. 387 (2018) .................................................................................................. 1

*United States v. Atilla,*
    966 F.3d 118 (2d Cir. 2020) ..................................................................................... 2

*United States v. Corr,*
    543 F.2d 1042 (2d Cir. 1976) ................................................................................... 3

*United States v. Re,*
    336 F.2d 306 (2d Cir. 1964) ..................................................................................... 2

*Vega v. Hempstead Union Free Sch. Dist.,*
    801 F.3d 72 (2d Cir. 2015) ....................................................................................... 8

**Statutes**

15 U.S.C. § 77b(a)(2) ...................................................................................................... 3

15 U.S.C. § 77b(a)(11) .................................................................................................... 3

15 U.S.C. § 77o(a) .......................................................................................................... 3

15 U.S.C. § 78m(d) .......................................................................................................... 4

**Rules**

Rule 12(b)(6) ............................................................................................................... 1, 6

**Regulations**

17 C.F.R. 240.13d-5(b)(1)(i) ............................................................................................ 4

17 C.F.R. § 230.405 .......................................................................................................... 1

17 C.F.R. § 240.13d-5(b)(1) ............................................................................................ 4

The Apolant and Dilluvio Defendants submit this reply in further support of their motion to dismiss with prejudice.[1]

## ARGUMENT

### I.    The complaint fails to allege facts showing control.

The SEC makes four incorrect arguments: (1) control is a fact issue, (2) the caselaw on control-person liability does not apply here, (3) influence suffices to show control, and (4) Apolant and Dilluvio were part of a "control group." *See* Opp'n 9-13.

First, this motion seeks to resolve issues of law, not fact. Under Rule 12(b)(6), the Court must decide: "Do the facts alleged in a complaint, taken as true, state a claim for relief under the applicable legal standard?" *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227 (2020). The parties agree that the applicable legal standard for "control" is the "power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405; *see* Opp'n 1. But they disagree on whether that legal test requires actual power to direct management and policies. Resolving that legal issue correctly requires the Court to dismiss the claims because the SEC does not plead that Apolant and Dilluvio had such power. *See* Mov. Br. 10-11.

Regardless whether control depends on a totality of circumstances or a single fact, "[t]he set of *relevant* historical facts will of course depend on the legal test used." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018) (emphasis added). Under the correct legal test, the alleged totality of circumstances must show that Apolant

---

[1] The moving brief is cited as "Mov. Br.," and the SEC's opposition is cited as "Opp'n." The other capitalized terms have the same meaning as in the moving brief.

1

and Dilluvio had the actual power to direct Enzolytics' management and policies. The complaint fails to make that showing.

Second, the SEC agrees that the identical regulatory definition of control applies in both the control-person and affiliate contexts but then asks the Court to ignore control-person caselaw. *See* Opp'n 12-13. The identical regulatory definition cannot mean different things depending on where the SEC chooses to apply it. *See United States v. Atilla*, 966 F.3d 118, 126 (2d Cir. 2020) (explaining that "courts are generally averse to giving the same words different meanings when construing statutes or regulations"). Further, the cases the SEC cites did not address whether control-person caselaw applies under Section 5, and issues "neither brought to the attention of the court nor ruled upon . . . are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (internal quotation marks omitted).

The SEC also ignores, and therefore concedes, the argument that the meaning of "control" would be so vague as to violate principles of fair notice without the developed control-person caselaw as guidance. *See* Mov. Br. 12; *see also Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").[2] The SEC does not give fair notice to the securities industry by saying that persons "control" an issuer whenever a jury decides that they do.

Third, it is not enough to allege that a person "influenced" corporate decisions to show that they controlled an issuer. *See* Mov. Br. 7-12. The SEC ignores the moving brief's arguments as to

---

[2] The Second Circuit's decades-old rejection of a vagueness challenge to the meaning of control, *see United States v. Re*, 336 F.2d 306, 316 (2d Cir. 1964), did not consider (and could not have considered) the argument that inconsistent application of the regulatory definition of control later adopted by the Second Circuit violates principles of fair notice that also post-date *Re. See Cooper Indus.*, 543 U.S. at 170.

why *United States v. Corr*, 543 F.2d 1042 (2d Cir. 1976), does not hold that mere influence equates to control. *See* Mov. Br. 11-12. "[O]pinions are not statutes. They should not be read as if they were." *Bartlett v. Baasiri*, 81 F.4th 28, 35 (2d Cir. 2023). Rather, opinions "should be read as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023) (internal quotation marks omitted). In context, *Corr* was talking about a defendant's actual *power to direct* corporate policies and decisions: the defendant there "exercise[d] authority independent of" the company's CEO. 543 F.2d at 1050. The SEC does not argue that the allegations here are comparable to the circumstances in *Corr*, because they are not. In any event, the facts alleged do not show any more "influence" over corporate management and policies than a lender would have.

Fourth, the SEC incorrectly argues that the complaint need not "show that the Apolant-Dilluvio Defendants *themselves* met the Section 5-related control standards" because they were allegedly part of a group that exercised control. Opp'n 12. Sections 4 and 5 of the Securities Act do not refer to a control group. The definition of underwriter refers to "any person" who controls an issuer, *see* 15 U.S.C. § 77b(a)(11), and a "person" is defined as "an individual, a corporation, a partnership, an association, a joint-stock company, a trust, any unincorporated organization, or a government or political subdivision thereof," *id.* § 77b(a)(2). In contrast, Section 15 of the Securities Act expressly provides for control-person liability when a person, "pursuant to or in connection with an agreement or understanding with one or more other persons," controls another who violates the securities laws. *Id.* § 77o(a). If Congress had intended to include a control group as a person under Section 5, it would have done so. *See Polselli v. IRS*, 598 U.S. 432, 439 (2023) ("Congress acts intentionally and purposely when it includes particular language in one section of

a statute but omits it in another section of the same Act." (internal quotation marks omitted)).

Nor has the SEC established a regulatory basis for a control-group test under Section 5. Contrary to the SEC's representation, the regulation on which the SEC relies (Rule 13d-5), was promulgated under a section of the *Exchange Act*, not the Securities Act, which is substantively different from Section 5. *See* Opp'n 12 (citing 17 C.F.R. § 240.13d-5(b)(1)). Rule 13d-5 implements Section 13(d) of the Exchange Act, which requires reports to be filed with the SEC by any "person" who owns 5% or more of a company's securities. 15 U.S.C. § 78m(d). A "person" under Section 13(d), unlike under Section 5, expressly includes "two or more persons acting as a partnership, limited partnership, syndicate, or other group." *Id.* § 78m(d)(3). And Rule 13d-5 does not refer to a "*control* group," only a "group." Indeed, there "need not be an agreement to gain corporate control" to form a group under Section 13(d). *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 124 (2d Cir. 2001). Notably, the SEC cites no cases applying Rule 13d-5 to Section 5 of the Securities Act. *See* Opp'n 12. The SEC has simply cherry-picked a standard that has nothing to do with Section 5 or a control group.

Even if this Court adopts the Rule 13d-5 standard under Section 5, the complaint does not sufficiently allege that Apolant and Dilluvio "agree[d] to act together for the purpose of acquiring, holding, voting, or disposing of equity securities of an issuer." 17 C.F.R. 240.13d-5(b)(1)(i). The SEC is wrong that any common objective is sufficient; rather, the regulation requires an agreement to act jointly for the purpose of the specific acts listed in the regulation. *Morales*, 249 F.3d at 124. The complaint alleges no facts to show that the defendants agreed to act together for the specified purposes. That they each separately sold shares through Wexford is insufficient. *See Nano Dimension Ltd. v. Murchinson Ltd.*, 681 F. Supp. 3d 168, 182 (S.D.N.Y. 2023) (holding that parallel transactions and use of same agent are insufficient to plead a Section 13(d) group), *aff'd*, 102 F.4th

136 (2d Cir. 2024). And the SEC cannot merely lump together Apolant and Dilluvio with the CEO Zhabilov, who of course controlled the company, and call them a control group.

## II.    The complaint fails to state a claim for securities fraud.

The SEC clarifies that its fraud claims are based on scheme liability and affirmative misrepresentations. *See* Opp'n 3. It has pleaded neither.

The complaint fails to plead a scheme case. The SEC does not dispute that a scheme to defraud requires allegations that the defendants wronged securities purchasers in their property rights by dishonest methods. *See* Mov. Br. 17-18. But the SEC incorrectly argues that the complaint is sufficient because Apolant and Dilluvio were able to sell shares they purportedly should not have been able to sell. *See* Opp'n 9. That does not demonstrate a scheme to defraud. The SEC concedes that it has not alleged market manipulation (or a "pump-and-dump" scheme), *see id.*, and ignores the caselaw cited in the moving brief demonstrating that investors are not defrauded when they receive what they paid for: free-trading shares at fair-market prices. *See* Mov. Br. 17-18.

The complaint also fails to plead actionable misrepresentations. The only alleged misrepresentations are the "false" attorney-opinion letters. *See* Opp'n 16-17. The moving brief sets out four reasons that the complaint fails to allege actionable misrepresentations based on those letters. *See* Mov. Br. 14-16. The first—that the statements were correct—has been addressed in detail above and in the moving brief. *See id*.

The second is that the statement that someone is not an affiliate is a legal opinion, which is only actionable if the speaker did not sincerely hold that belief. *See id.* Though the SEC relegates that important issue to a footnote and calls the argument "cursory" and "premature," Opp'n 17 n.9, it does not deny that affiliate status is a legal *opinion*. The Court should thus deem that point conceded. And there is nothing cursory about the argument; the moving brief supports it with two

paragraphs of analysis, a Supreme Court decision, two controlling Second Circuit opinions, and a Ninth Circuit case. *See* Mov. Br. 14-15. Nor is the argument premature. All four cases cited in its support were decided under Rule 12(b)(6). For example, the Second Circuit held in *Olson v. Major League Baseball*, 29 F.4th 59 (2d Cir. 2022), that the complaint failed to state a claim for misrepresentations because the statements at issue were opinions about how statutory terms applied to the defendants. *See id.* That central holding governs here.

The third point is equally fatal to the SEC's misrepresentation claim. The SEC acknowledges that, under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), only the "maker" of a statement can be liable for misrepresentations contained in the statement, but it nevertheless argues that the Apolant and Dilluvio Defendants made the legal conclusions in the opinion letters drafted by an attorney. The SEC's only support for that argument is *SEC v. Garber*, 959 F. Supp. 2d 374 (S.D.N.Y. 2013). *See* Opp'n 17. *Garber* was not reviewed on appeal, is wrong, and is inconsistent with the SEC's successful arguments in other cases.

In *Garber*, an attorney drafted opinion letters concluding that certain debts were securities, which enabled the defendants to convert the debts to stock and sell the shares. *See* 959 F. Supp. 2d at 377. The court reasoned that the defendants made the statements in the opinion letters because the defendants chose to use the letters to further their scheme. *See id.* at 381-82. That reasoning cannot be squared with *Janus*. Consistent with an attorney's professional responsibilities, a client cannot dictate to an attorney what statements to make or conclusions to reach in an opinion letter. *See* Mov. Br. 15. Thus, the maker of any alleged misrepresentations in such a letter is the attorney who authored it, not the client who relies on it, because the attorney has "ultimate authority" over what to say in an attorney opinion letter and whether to issue it at all. *See Janus*, 564 U.S. at 142.

6

The SEC previously advanced *exactly that position*. In *SEC v. Sayid*, No. 17-CV-2630, 2018 WL 357320 (S.D.N.Y. Jan. 10, 2018), the court agreed with the SEC on a motion to dismiss that "[a]s the drafter and signatory of the alleged misstatements of the opinion letters, [the attorney] had ultimate authority over those statements and is the 'maker' under *Janus*." *Id.* at \*5. The court relied on cases holding that "signatories of misleading documents 'made' the statements in those documents." *Id.* (internal quotation marks omitted).

In its motion for summary judgment, the SEC told the court that "[a]ttorneys writing opinion letters for the removal of restriction on securities are professionals who have an ethical obligation to have a 'reasonable basis' for believing the facts stated in the opinion are true." SEC Mem. of Law Supp. Summ. J. at 25, SEC v. Sayid, No. 17-CV-2630, (S.D.N.Y. Feb. 11, 2019), ECF No. 98. There was "no question" that the attorney had "ultimate authority over the opinion letters' content and whether to issue the letters at all" because "[he], alone, decided whether [the client] had provided him with a reasonable basis to" reach the conclusions in the letter. *Id.* at 22. The SEC was correct in *Sayid* but advances an opposite position here to better suit its arguments.

The fourth and final point was that the allegations about the opinion letters do not comply with Rule 9(b). *See* Mov. Br. 15-16. The complaint fails to provide any details about the letters, including who wrote them, when they were written, what exactly they said, the information on which they were based, and why they were knowingly false instead of just incorrect. *See* Compl. ¶¶ 118, 120.

Further, the complaint does not plead scienter based on either conscious misbehavior/recklessness or motive and opportunity to commit fraud. *See* Mov. Br. 18-22. The SEC concedes by silence that an allegedly incorrect conclusion about a complex and unclear legal standard does not show knowledge or recklessness. *Id.* at 20. The allegations that Apolant and

Dilluvio were not industry rookies and consulted with management, *see* Opp'n 13-14, do not somehow show that they knew or recklessly disregarded that they met a legal test that the SEC refuses to explain to the industry. The SEC also ignores, and thus concedes, that the Apolant and Dilluvio Defendants lacked opportunity to commit fraud. *See* Mov. Br. 20-22.[3]

### III.    The complaint fails to state a claim for the sale of unregistered securities.

The SEC incorrectly argues that the alleged facts do not establish an exemption from the registration requirements. *See* Opp'n 18-20. In doing so, the SEC seeks to impose hurdles to dismissal that do not exist. It relies on the "no-set-of-facts" pleading standard, *id.* at 19, that the Supreme Court discarded in *Iqbal* and *Twombly*. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). Instead, "affirmative defenses may be adjudicated at this stage in the litigation . . . where the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). As explained, the facts establish the defense that Apolant and Dilluvio did not control Enzolytics.

The SEC also argues that the complaint does not plead facts showing compliance with the one-year holding period for non-affiliates under Rule 144. Opp'n 20. But the SEC had access to the defendants' trading records during its pre-suit investigations. Given the "unqualified duty of scrupulous candor that rests upon government counsel," *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 358 (1963), the Court should require the SEC to represent that it disputes compliance with that holding period if the Court is inclined to deny the motion on that ground.

### IV.    The complaint fails to state a claim against Relief Defendants.

The SEC is wrong that it may proceed with claims for disgorgement against Relief

---

[3] The SEC does not make any arguments specific to its negligence-based claims and instead relies on its scienter arguments. *See* Opp'n 7 n.5. It has therefore waived any argument that the negligence-based claims should independently survive if the scienter-based claims are dismissed.

Defendants even if the complaint fails to state a claim against Apolant or Sky-Direct. *See* Opp'n 21.

"Disgorgement serves to remedy securities law violations by depriving violators of the fruits of their illegal conduct." *SEC v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014). The SEC must show that a relief defendant "(1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *SEC v. Ahmed*, 72 F.4th 379, 408 (2d Cir. 2023) (internal quotation marks omitted). Thus, the SEC cannot disgorge funds from Relief Defendants unless the funds they received were derived from a primary defendant's illegal conduct. The complaint alleges, at most, that Relief Defendants received the fruits of *Apolant's* securities transactions, not those of other defendants. *See* Compl. ¶¶ 41, 122-123, 128-129. If Apolant's transactions were lawful, the SEC cannot disgorge proceeds from Relief Defendants.

The SEC takes the statement in *SEC v. Yin*, 17-CV-972, 2023 WL 2753094, at *8 (S.D.N.Y. Mar. 31, 2023), that "the issue of disgorgement is distinct from liability on the merits," out of context. The court explained that *relief defendants* need not be, and generally are not, liable on the merits to disgorge funds from them. *See id.* The primary defendant had defaulted on insider-trading claims, and the SEC sought to disgorge funds in accounts belonging to the relief defendants because the primary defendant used those accounts to conduct the trades. *See id.* at *1, 5.

## V.    Alternatively, the Court should strike the demand for disgorgement.

The SEC ignores the cases cited in the moving brief, *see* Mov. Br. 23-24, to argue that it would be premature to strike disgorgement because "the parties have not even obtained discovery." Opp'n 22. But the SEC conducted extensive pre-suit investigation, including obtaining documents and interviewing witnesses, yet it still cannot allege any victims of the purported "scheme." The only case from this circuit cited in the opposition is irrelevant because it was decided before *SEC*

*v. Govil*, 86 F.4th 89 (2d Cir. 2023), and concerned whether a defendant broker would have to disgorge funds received by its clients on a theory of joint-and-several liability, not whether the complaint was sufficient to seek disgorgement based on harm to victims. *See SEC v. Caledonian Bank Ltd.*, 145 F. Supp. 3d 290, 310 (S.D.N.Y. 2015).

The SEC is also wrong that the complaint pleads harm to investors because the defendants allegedly profited from sales and (lawfully) promoted the stock. *See* Opp'n 22-23. That a defendant profited from sale of stock does not show that an investor suffered pecuniary harm by buying it. An investor "who received the benefit of the bargain" is not a victim for whom disgorgement can be obtained. *Govil*, 86 F.4th at 103. The SEC does not rebut the point that the purchasers received the benefit of the bargain when they received free-trading shares at non-manipulated market prices.

## VI.    The Court should dismiss or strike with prejudice.

Because the SEC does not seek leave to amend, much less propose specific amendments, the Court should dismiss or strike **with prejudice**. *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025) (affirming dismissal with prejudice on first motion because plaintiff failed to explain proposed amendments); Individual Practices of Judge Andrew L. Carter, Jr. ¶ 2.D.ii.

## CONCLUSION

For those reasons, and the reasons stated in the moving brief, the Court should dismiss the claims against the Apolant and Dilluvio Defendants with prejudice.

Dated: September 23, 2025

Respectfully submitted,

**PASHMAN STEIN WALDER HAYDEN, P.C.**

**HERRICK, FEINSTEIN LLP**

By: s/ David N. Cinotti
    Jerome M. Selvers
    David N. Cinotti
    Darcy Baboulis-Gyscek
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200
dcinotti@pashmanstein.com

By: _____
    Arthur Glenn Jakoby
    Maxim Mordecai Lebowitz-Nowak
    Michael Ryan Feeney
Two Park Avene
New York, NY 10016
(212) 592-1400
mnowak@herrick.com

*Attorneys for Defendants Stephen Apolant and Sky-Direct LLC and Relief Defendants NY Farms Group, Inc. and Equity Markets ADV LLC*

*Attorneys for Defendants Charles Dilluvio and Seacor Capital, Inc.*