### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiffs,

      -against-

HARRY ZHABILOV,
BILLY V. RAY, JR.,
CHARLES DILLUVIO,
STEPHEN APOLANT,
DANNIE ZHABILOV,
JONATHAN FARBER,
CAMELOT NEVADA TRUST,
SEACOR CAPITAL, INC.,
SKY-DIRECT LLC, and
WEXFORD INDUSTRIES LTD.,

                Defendants,

        and

NY FARMS GROUP, INC. and
EQUITY MARKETS ADV LLC,

           Relief Defendants

`

Case No. 1:24-cv-07362-ALC

**MEMORANDUM OF LAW IN SUPPORT OF CAMELOT NEVADA TRUST MOTION TO STRIKE ALL PLEADINGS FILED OR PREPARED BY NITA KLUNDER AND MOTION FOR SANCTIONS**

By: _/s/ Patrick Ryan Morris
PATRICK RYAN MORRIS, ESQ.
SDNY Bar No. MO9929
NY: 5575501
305 Broadway, Suite 777
New York, New York 10007
+ 1 (917) 905 – 9804
+ 1 (917) 970 - 8446
prm@patrickmorrislaw.com

*Attorneys for Defendant Camelot Nevada Trust*

**Table of Content**

Table of Authorities…………………………………………………………………………iii

Preliminary Statement……………………………………………………………………..1

Factual Introduction………………………………………………………………………..2

Introduction…………………………………………………………………………………..4

Argument Roadmap…………………………………………………………………………5

Part A: Local Rule 1.5 Constitutes Binding Law Under Federal Authority………………………5

Part B: The Suspension Constitutes a Reportable Disciplinary Action……………………………6

Part C: The Violation Undermines Both the Admission Process and Judicial Integrity…………..6

Part D: Appropriate Remedial Measures Are Required……………………………………………6

ARGUMENT……………………………………………………………………………………..7

Part A: Local Rule 1.5 Constitutes Binding Law Under Federal Authority………………………7

1. Statutory Foundation for Local Rules……………………………………………………………7

2. Supreme Court Recognition of Local Rules as Law……………………………………………8

3. Second Circuit Authority on the Binding Nature of Local Rules………………………………9

4. Application to Local Rule 1.5……………………………………………………………………10

5. The Grievance Committee Cannot Nullify the Rule Through Informal Guidance……………10

6. Enforcement of Local Rules Protects Judicial Integrity………………………………………11

Part B: The Suspension Constitutes a Reportable Disciplinary Action…………………………11

1. The Appellate Division Characterizes These Proceedings as Disciplinary……………………12

2. The Suspension Involves Professional Misconduct, Not Administrative Non-Compliance…..13

3. The Duration and Reinstatement Requirements Confirm Disciplinary Character……………13

4. The Grievance Committee's Guidance Cannot Override the Plain Text of the Rule………….14

5. Federal Courts Should Treat § 468-a Suspensions as Disciplinary……………………………15

6. The SEC's Own Acknowledgment Confirms the Reporting Obligation………………………16

Part C: The Violation Undermines Both the Admission Process and Judicial Integrity………...16

1. Local Rules 1.3 and 1.5 Create an Interlocking System of Continuing Eligibility Requirements………………………………………………………………………………………16

2. The Admission Process Creates Continuing Obligations………………………………………17

3. The Violation Here Demonstrates Systemic Failure of Both Rules……………………………18

4. The Grievance Committee's Position Would Eviscerate Both Rules…………………………18

5. The SEC's Position Creates an Untenable Double Standard……………………………………19

6. The Grievance Committee's Guidance Would Eviscerate the Rule……………………………20

Part D: Appropriate Remedial Measures Are Required…………………………………………21

Conclusion……………………………………………………………………………………23

# TABLE OF AUTHORITIES

**Cases**

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) ...........................................................22

Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101 (2017) ....................................21

Imperator Realty Co. v. Tull, 228 N.Y. 447 (1920) ....................................................23

In re Ruffalo, 390 U.S. 544 (1968) ..............................................................................15

In re Snyder, 472 U.S. 634 (1985) ...............................................................................13

Matter of Banji, 106 A.D.3d 73 (1st Dep't 2013) ........................................3, 12, 13, 17

Matter of Morgado, 159 A.D.3d 50 (1st Dep't 2018) ............................................3, 13

United States v. Hastings, 695 F.2d 1278 (11th Cir. 1983) ............................................9

United States v. Hvass, 355 U.S. 570 (1958) ...................................................5, 8, 9, 10

United States v. Weissman, 1996 WL 742844 (S.D.N.Y. Dec. 20, 1996)........................9

United States v. Yonkers Board of Education, 747 F.2d 111 (2d Cir.
1984).............................................................................................5, 9, 10, 11, 14

Weil v. Neary, 278 U.S. 160 (1929) ...............................................................................9

Woods Construction Co. v. Atlas Chemical Industries, Inc., 337 F.2d 888 (10th Cir. 1964)
.........................................................................................................................9

**Statutes and Rules**

22 N.Y.C.R.R. § 603.4(e)(1)……………………………………………..12

28 U.S.C. § 1654…………………………………………………..…………….......................8

28 U.S.C. § 2071..........................................................................................5, 7, 8, 10

28 U.S.C. § 2071(a)..........................................................................................7

Fed. R. Civ. P. 83………………………………………………….5, 8, 10, 11, 15

Local Civil Rule 1.3…………………………………….....................................16, 18, 19

Local Civil Rule 1.3(f)………………………………………....................................16, 17, 18

Local Civil Rule 1.5.................1, 3, 4, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23

Local Civil Rule 1.5(b)(1)................................................................................10, 15

Massachusetts Rule of Professional Conduct 8.3……………………………………………3

N.Y. Judiciary Law § 468-a…………………………..…………………………1,2,3,12 ,13,15,19,20

N.Y. Judiciary Law § 468-a(5) …………………......................................................6,12,13

Conclusion…………………………………………………………………………………..23

## Preliminary Statement

Camelot Nevada Trust submits that this matter is not an administrative lapse but a fundamental reporting failure. Counsel was suspended by the New York Appellate Division for disciplinary reasons after years of default, repeated notices, and a published suspension order under Judiciary Law § 468-a. Yet that suspension was never reported to this Court, as Local Rule 1.5 expressly requires, nor—so far as appears—was it reported to the SEC or to professional colleagues.

The law must be enforced, not for its own sake, but because the integrity of the judicial system depends upon it. Local Rule 1.5 was designed to ensure transparency and protect the Court from unauthorized practice. If it can be disregarded without consequence, its function is nullified.

It is critical that this failure was not self-reported. Discovery came only after years of noncompliance. To suggest that enforcement should depend on a showing of prejudice, or that the burden should shift to a defendant to establish inconvenience or cost, would invert the purpose of the rule. Plaintiffs—particularly government agencies—cannot be permitted to rely on the supposed difficulty of remedying their own violations as a defense to enforcement.

The SEC itself enforces day-for-day compliance with its own regulations, such as Rule 144, sanctioning even technical failures in reporting. It cannot credibly insist on strict adherence from others while excusing noncompliance by its own counsel with this Court's rules.

On this record, there is a prima facie case for corrective action beyond simple withdrawal. The Court should issue an Order striking all pleadings and filings signed by or substantially prepared by the suspended attorney unless and until they are re-filed in amended form by properly admitted counsel. In the alternative, the Court should issue an Order to Show Cause requiring

Plaintiff to explain why such filings should not be stricken, amended, or otherwise remedied, and why the burdens unfairly imposed on defendants should not be shifted back to the party responsible through remedial measures—including re-filing requirements and duplication of efforts at the SEC's expense within the Court's equitable powers. Finally, consistent with long-standing principles, the Court should retain discretion to grant such further relief as justice requires to restore confidence in the integrity of these proceedings.

## Factual Introduction

On November 17, 2022, the Appellate Division, First Department formally suspended SEC enforcement attorney Nita Klunder from the practice of law in New York for failing to comply with Judiciary Law § 468-a's biennial registration requirements (see Ex. A, "Appellate Order"). The court expressly treated the proceeding as disciplinary, finding her prolonged noncompliance to be "conduct prejudicial to the administration of justice." Before issuing the order, the Court mailed multiple notices to her last known addresses and then authorized service by publication. In September 2022, Ms. Klunder's name and suspension were published in the *New York Law Journal* for five consecutive days and posted on the Court's website, providing constructive notice both to her and to her employer (see Ex. A, "Appellate Order").

Despite this, Ms. Klunder remained suspended for nearly three years without curing the default or seeking reinstatement. During this entire period she continued to appear as counsel of record in multiple SEC enforcement matters in the Southern and Eastern Districts of New York (see Ex. B, "PACER Locator"). She also continued to hold herself out publicly, including on her LinkedIn profile (see Ex. C, "LinkedIn Profile"), as admitted to practice in New York and the federal courts of that state.

SEC attorneys in the SK-0905 series are required to annually self-certify that they are members in good standing of at least one jurisdiction, a requirement repeatedly stressed by the SEC's Office of Inspector General as critical to protecting the integrity of the Commission's enforcement program (see Ex. D, "SEC OIG Report"). Nevertheless, Ms. Klunder submitted filings in which she falsely affirmed her New York admission. Most notably, in 2025, while suspended, she signed a sworn declaration in *SEC v. Farber* (S.D.N.Y.) attesting under penalty of perjury that she was "a member of the bar of the State of New York and the United States District Court for the Southern District of New York." (see Ex. E, "Klunder's Declaration SEC v. Farber") Under New York law, however, a suspended attorney "holds approximately the same status as one never admitted" and cannot appear or file papers in any court. *Matter of Banji*, 106 A.D.3d 73, 76 (1st Dept. 2013).

The duty to ensure compliance did not rest with Ms. Klunder alone. Local Civil Rule 1.5 of both the Southern and Eastern Districts of New York requires attorneys to promptly notify the Court of any discipline imposed by another tribunal. Massachusetts Rule of Professional Conduct 8.3 likewise obligates attorneys to report substantial professional misconduct. Her colleagues and supervisors therefore had an affirmative duty to prevent a suspended attorney from appearing in federal court. Yet no such disclosure was made, and Ms. Klunder continued to prosecute enforcement actions on behalf of the SEC.

When the suspension finally came to light in mid-2025, the SEC attempted to minimize the violation as an administrative lapse. This characterization is squarely contradicted by the Appellate Division's own orders, which consistently describe § 468-a suspensions as disciplinary matters, as well as by binding precedent in cases such as *Matter of Morgado* and *Matter of Banji*. Informal correspondence from the SDNY Grievance Committee suggesting otherwise misstates

New York law and cannot override the Appellate Division's binding characterization (see Ex. F, "Grievance Committee Email").

In sum, for nearly three years Ms. Klunder practiced in the federal courts of New York while formally suspended from the New York bar. She failed to notify this Court as required by Local Rule 1.5, falsely attested to her standing in sworn declarations, and continued to hold herself out publicly as admitted. Her colleagues and supervisors likewise failed to act despite constructive notice through official publication and their own oversight duties. The result was a prolonged period of unauthorized practice, compounded by false statements and systemic lapses in reporting and supervision. The existence of Ms. Klunder's suspension was not self-reported or disclosed by the SEC; it came to light only because Defendant Camelot independently discovered the suspension and brought it to the Court's attention.

## Introduction

This matter presents a fundamental question regarding the enforcement of Local Civil Rule 1.5 and the integrity of attorney admission standards in the Southern District of New York. At issue is whether an attorney's suspension by the New York Appellate Division—entered after years of non-compliance with registration requirements and characterized by that court as a "disciplinary proceeding" for "conduct prejudicial to the administration of justice"—triggers the reporting obligations of Local Rule 1.5 and necessitates remedial action when such suspension was never disclosed to this Court.

The significance of this question extends beyond the immediate parties. Local Rule 1.5 serves as the enforcement mechanism that transforms the one-time sworn declarations required for admission into continuing obligations of candor and eligibility. Every attorney admitted to practice

before this Court, whether generally or pro hac vice, must attest under penalty of perjury to their good standing in all jurisdictions. The Rule ensures these attestations remain meaningful by requiring ongoing disclosure of any disciplinary actions or suspensions. When the Rule's requirements are disregarded—particularly by government counsel who themselves enforce strict regulatory compliance—the entire framework of attorney accountability is undermined.

The Court now confronts a troubling disconnect between the Appellate Division's treatment of these suspensions as disciplinary matters warranting formal proceedings and published orders, and informal guidance suggesting such suspensions need not be reported to this Court. This tension cannot be resolved through administrative convenience or post-hoc rationalization. The integrity of this Court's proceedings depends upon consistent enforcement of its rules, applied equally to all who appear before it. Ultimately, federal courts are not only empowered but obligated to enforce their own rules to preserve the legitimacy of their proceedings. Discretionary or selective enforcement in the face of clear and ongoing violations would dilute the Court's authority and jeopardize the rule of law itself—an outcome the Supreme Court has repeatedly cautioned against.

## Argument Roadmap

This memorandum presents four arguments demonstrating why the failure to report warrants immediate corrective action:

### Part A: Local Rule 1.5 Constitutes Binding Law Under Federal Authority

We establish that Local Rule 1.5 carries the full force of law under 28 U.S.C. § 2071 and Federal Rule of Civil Procedure 83. Following *United States v. Hvass*, 355 U.S. 570 (1958), and Second Circuit precedent including *United States v. Yonkers Board of Education*, 747 F.2d 111

(2d Cir. 1984), local rules properly adopted pursuant to statutory authority are binding on all parties and practitioners. The Rule's requirements are not advisory or discretionary; they constitute mandatory obligations enforceable through appropriate judicial remedies.

## Part B: The Suspension Constitutes a Reportable Disciplinary Action

We demonstrate that the Appellate Division's suspension order—explicitly denominated as a "disciplinary proceeding" for professional misconduct under Judiciary Law § 468-a(5)—falls squarely within Local Rule 1.5's reporting requirements. The First Department's characterization of these proceedings as disciplinary, not administrative, controls over any contrary informal guidance. The suspension's duration (exceeding two years), the formal reinstatement requirements, and the court's express invocation of its disciplinary authority collectively establish that this was not a ministerial registration lapse but sanctionable professional misconduct.

## Part C: The Violation Undermines Both the Admission Process and Judicial Integrity

We explain how the failure to report this suspension corrupts the foundation of the attorney admission system. Both general and pro hac vice applicants must certify they have never been suspended in any jurisdiction. When attorneys can maintain suspensions without disclosure, these sworn certifications become meaningless formalities. Moreover, the SEC's acknowledgment of the reporting failure while minimizing its significance exemplifies a troubling double standard—the agency demands strict compliance from regulated entities while excusing its own counsel's violations of court rules.

## Part D: Appropriate Remedial Measures Are Required

We propose targeted relief designed to cure the violation without unnecessarily disrupting proceedings. Through an Order to Show Cause, the Court should require the SEC to: (1) withdraw

and promptly re-file all pleadings signed by or substantially prepared by the suspended attorney; (2) bear any costs imposed on defendants by this corrective process;[1] and (3) explain why additional sanctions should not issue. This approach places the burden of remediation on the party responsible for the violation while protecting both the Court's processes and opposing parties from prejudice.

The consequences of failing to enforce these requirements are concrete and ongoing: if attorneys may continue appearing, filing, and representing parties in this Court while suspended elsewhere, the Court is deprived of notice, opposing parties may be prejudiced by unauthorized filings, and the justice system's foundational trust in the candor and eligibility of its bar is eroded in practice as well as principle.

**ARGUMENT**

## Part A: Local Rule 1.5 Constitutes Binding Law Under Federal Authority

Local Civil Rule 1.5 is not merely an administrative guideline or a matter of judicial preference—it carries the full force and effect of federal law. This conclusion rests on clear statutory authority, controlling Supreme Court precedent, and consistent Second Circuit jurisprudence establishing that properly promulgated local rules bind all who appear before the Court.

## 1. Statutory Foundation for Local Rules

Congress has expressly authorized district courts to promulgate local rules through multiple statutory provisions. Under 28 U.S.C. § 2071(a), "[t]he Supreme Court and all courts established

---

[1] Defendant acknowledges that the commission is immune from financial sanctions, but precedent permits sanctions against individual attorney even if they are in the employed of the federal government.

by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court." This broad grant of rulemaking authority is reinforced by 28 U.S.C. § 1654, which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

Federal Rule of Civil Procedure 83 implements this statutory authority at the district court level, providing that: "[e]ach district court, by action of a majority of the judges thereof, may from time to time, after appropriate public notice and an opportunity for comment, make and amend rules governing its practice not inconsistent with these rules." The Southern and Eastern Districts of New York have exercised this authority to adopt Local Civil Rule 1.5, which governs attorney conduct and discipline within this jurisdiction.

## 2. Supreme Court Recognition of Local Rules as Law

The Supreme Court definitively resolved the legal status of local rules in *Hvass*. There, the Court considered whether a local district court rule constituted a "law of the United States" for purposes of the federal perjury statute. The Court held unequivocally that "the phrase 'a law of the United States,' as used in the perjury statute, is not limited to statutes, but includes as well Rules and Regulations which have been lawfully authorized and have a clear legislative base." *Id.* at 576.

The *Hvass* Court explained that local court rules satisfy this standard because they are "prescribed pursuant to statutory authority." *Id.* The Court found "no room to doubt that the District Court was lawfully authorized to prescribe its local rules and that they have a clear legislative base" given the express congressional authorization in 28 U.S.C. §§ 2071 and 1654. *Id.* at 575-76.

8

This holding establishes that local rules adopted pursuant to statutory authority possess the same binding force as federal statutes or regulations.

As the Southern District recognized in *United States v. Weissman*, 1996 WL 742844, at *13 (S.D.N.Y. Dec. 20, 1996), *Hvass* establishes that local rules meet the standard for "laws of the United States" when they rest on clear statutory authority. The court in *Weissman* explained that "there is nothing in *Hvass* or its predecessors... which indicates that the term 'clear legislative base' means anything more than that the authority to promulgate the rule at issue is granted by federal statutory law." *Id.*

### 3. Second Circuit Authority on the Binding Nature of Local Rules

The Second Circuit has consistently held that local rules, once properly adopted, are binding on both district judges and practitioners until formally amended or repealed. In *Yonkers Board of Education* at 113, the Circuit addressed whether a district judge could waive or disregard a local rule prohibiting recording devices in the courtroom. The court held definitively that local rules "have the force of law" and "are binding on the district judges until properly amended or repealed." *Id.*

The *Yonkers Board of Education* court explained the principle underlying this conclusion: "So long as such rules do not conflict with rules prescribed by the Supreme Court, congressional enactments, or constitutional provisions, they have the force of law." *Id.* (citing *Weil v. Neary*, 278 U.S. 160, 169 (1929)). This holding has been consistently applied throughout the federal courts. See *United States v. Hastings*, 695 F.2d 1278, 1283 n.13 (11th Cir. 1983) (local rules are binding on the district judges until properly amended or repealed); *Woods Construction Co. v. Atlas Chemical Industries, Inc.*, 337 F.2d 888, 890-91 (10th Cir. 1964) (same).

**4. Application to Local Rule 1.5**

Local Civil Rule 1.5 satisfies all requirements for recognition as binding federal law. The Rule was adopted by a majority of judges in the Southern District pursuant to the authority granted by 28 U.S.C. § 2071 and Federal Rule of Civil Procedure 83. It does not conflict with any Act of Congress, Federal Rule of Civil Procedure, or constitutional provision. The Rule serves the legitimate purposes of maintaining attorney discipline, ensuring the integrity of practice before the Court, and protecting litigants from representation by suspended or disciplined attorneys.

Specifically, Local Rule 1.5(b)(1) requires that any attorney admitted to this Court's bar "who has been disciplined by any federal court or by a court of any state or territory" must "promptly notify the Clerk of this Court of any such action." Subsection (h) further mandates that attorneys "admitted or otherwise authorized to practice before this Court shall notify the Clerk of this Court of being held in contempt or disciplined by any federal, state or territorial court, administrative agency, or other tribunal within thirty (30) days of entry of the contempt citation or the discipline."

These provisions create mandatory, self-executing obligations. They are not suggestions or best practices—they are requirements carrying the force of law. As *Hvass* and *Yonkers Board of Education* make clear, neither individual judges nor practitioners may disregard these requirements based on their own assessment of their importance or applicability.

**5. The Grievance Committee Cannot Nullify the Rule Through Informal Guidance**

The August 27, 2025, email from counsel to the Grievance Committee suggesting that certain suspensions need not be reported (see Ex. F, "Grievance Committee Email") does not and cannot override the plain text of Local Rule 1.5. While the Grievance Committee plays an

important role in attorney discipline matters, it lacks authority to suspend or modify the operation of duly enacted local rules through informal guidance or administrative interpretation.

As the Second Circuit emphasized in *Yonkers Board of Education*, local rules remain binding "until properly amended or repealed." *Yonkers Board of Education* at 113. The process for amending local rules is set forth in Federal Rule of Civil Procedure 83—it requires action by a majority of the district's judges after appropriate public notice and opportunity for comment. An informal email from court staff, no matter how well-intentioned, cannot accomplish what Rule 83 requires formal judicial action to achieve.

Moreover, the Grievance Committee's position contradicts the plain language of the Rule, which requires reporting of discipline "by a court of any state." A suspension order entered by the Appellate Division, regardless of the underlying reason, is unquestionably discipline "by a court" within the meaning of this provision.

**6. Enforcement of Local Rules Protects Judicial Integrity**

The binding nature of Local Rule 1.5 serves critical institutional interests. The Southern District has established through Local Rule 1.5 a system of ongoing verification of attorney eligibility. This system depends entirely on self-reporting by attorneys who have been disciplined elsewhere. If attorneys can avoid their reporting obligations by characterizing suspensions as "administrative" or by relying on informal guidance contradicting the Rule's plain text, the entire system breaks down. The Court would be left unable to monitor the continuing eligibility of attorneys appearing before it, undermining both the integrity of proceedings and the protection of litigants.

**Part B: The Suspension Constitutes a Reportable Disciplinary Action**

The argument that § 468-a suspensions are purely "administrative" is squarely contradicted by the controlling authority: the Appellate Division's published orders, which unequivocally characterize these proceedings as "disciplinary" and impose suspension for "conduct prejudicial to the administration of justice." (see Ex. A, "Appellate Order") This formal judicial action, not informal or retrospective categorization, governs for purposes of Local Rule 1.5. The Court should defer to the text and intent of the suspending tribunal, not administrative convenience or ancillary commentary.

## 1. The Appellate Division Characterizes These Proceedings as Disciplinary

The First Department's November 17, 2022, order suspending Ms. Klunder leaves no doubt about the disciplinary nature of these proceedings. The order is captioned "Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department." (see Ex. A, "Appellate Order") It expressly invokes Judiciary Law § 468-a(5), which provides that "[n]oncompliance by an attorney with the provisions of this section and the rules promulgated hereunder shall constitute conduct prejudicial to the administration of justice and shall be referred to the appropriate appellate division of the supreme court for disciplinary action."

This Court has consistently recognized that it must defer to how the suspending tribunal characterizes its own proceedings. In *Matter of Banji*, 106 A.D.3d 73, 76 (1st Dept. 2013), the First Department made clear that failure to comply with § 468-a registration requirements constitutes "professional misconduct that immediately threatens the public interest," warranting immediate suspension from practice. The court expressly invoked its disciplinary authority under 22 N.Y.C.R.R. § 603.4(e)(1), the same provision used to suspend attorneys for substantive misconduct.

Similarly, in *Matter of Morgado*, 159 A.D.3d 50, 53 (1st Dept. 2018), the First Department treated § 468-a violations as grounds for disciplinary suspension, noting that such conduct is "prejudicial to the administration of justice" and warrants "appropriate disciplinary action" under Judiciary Law § 468-a(5). The court emphasized that these are not ministerial matters but professional misconduct requiring formal disciplinary proceedings.

**2. The Suspension Involves Professional Misconduct, Not Administrative Non-Compliance**

The characterization of § 468-a suspensions as merely "administrative" fundamentally misunderstands both the statutory framework and the Appellate Division's treatment of these violations. Judiciary Law § 468-a(5) explicitly defines non-registration as "conduct prejudicial to the administration of justice"—the same standard used for substantive ethical violations. This is not comparable to a late filing fee or a ministerial deficiency; it is professional misconduct that strikes at an attorney's fitness to practice.

The Supreme Court's analysis in *In re Snyder*, 472 U.S. 634, 635 (1985), provides the relevant framework. There, the Court explained that attorney discipline encompasses "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice." The Appellate Division has determined that prolonged failure to comply with registration requirements meets this standard. As the First Department stated in its suspension order, attorneys who fail to register for multiple periods demonstrate "a total disregard for [their] duties as an attorney." *Matter of Banji* at 76.

**3. The Duration and Reinstatement Requirements Confirm Disciplinary Character**

13

The length and nature of the suspension further confirm its disciplinary character. This is not a temporary administrative hold that lifts automatically upon payment of a fee. The reinstatement process for suspensions of this duration involves both the submission of all delinquent registration materials and fees and a demonstration of current professional competence—typically through evidence of substantial CLE completion and a formal motion for reinstatement under the Court's disciplinary procedures. These steps mirror the process applied to attorneys suspended for substantive ethical violations, confirming the disciplinary nature of the order.

These requirements go far beyond ministerial compliance. The CLE mandate—requiring eight credits within two years, including specific ethics and diversity components—reflects the Appellate Division's judgment that prolonged suspension necessitates demonstration of continued competence and ethical fitness before resumption of practice. This is indistinguishable from reinstatement procedures following suspension for substantive misconduct.

## 4. The Grievance Committee's Guidance Cannot Override the Plain Text of the Rule

The August 27, 2025, email from counsel to the Grievance Committee (see Ex. F, "Grievance Committee Email") does not and cannot nullify Local Rule 1.5's reporting requirements. Several fundamental principles compel this conclusion.

First, as established in Part A, local rules have the force of law and cannot be suspended or modified through informal administrative guidance. The Second Circuit made this clear in *Yonkers Board of Education* at 112: local rules "are binding on the district judges until properly amended or repealed." Amendment requires formal action by a majority of the district's judges after public

notice and comment under Federal Rule of Civil Procedure 83. An email from court staff, however well-intentioned, cannot accomplish what formal rulemaking requires.

Second, the plain text of Local Rule 1.5(b)(1) requires reporting when an attorney "has been disciplined by any federal court or by a court of any state or territory." The rule does not distinguish between types of discipline or create exceptions for suspensions the Grievance Committee deems "administrative." Where the rule's language is unambiguous, this Court must apply it as written. See *In re Ruffalo*, 390 U.S. 544, 550 (1968) (courts must follow established rules and cannot create ad hoc exceptions).

The Grievance Committee's position contradicts the Appellate Division's express characterization of these proceedings as disciplinary. The Court must defer to the suspending tribunal's characterization, not administrative preferences.

## 5. Federal Courts Should Treat § 468-a Suspensions as Disciplinary

Federal courts should treat § 468-a suspensions as disciplinary matters requiring reciprocal action. Under *In re Ruffalo* at 547, federal courts must independently evaluate but give substantial weight to state disciplinary proceedings involving professional unfitness.

The critical inquiry is not whether the underlying conduct involved moral turpitude or client harm, but whether the suspending court treated the matter as professional discipline. Here, the Appellate Division explicitly invoked its disciplinary authority, found professional misconduct, and imposed a suspension that can only be lifted through formal reinstatement proceedings. These hallmarks of disciplinary action trigger Local Rule 1.5's reporting requirements.

**6. The SEC's Own Acknowledgment Confirms the Reporting Obligation**

The SEC's own August 4, 2025, letter (see Ex. G, "SEC's Letter") acknowledged that Local Rule 1.5 required disclosure of the suspension. This admission is dispositive and contradicts any argument that the suspension was non-reportable.

Moreover, the SEC's letter reveals the prejudice flowing from non-disclosure. Ms. Klunder filed declarations in federal court falsely attesting that she was "a member of the bar of the State of New York and the United States District Court for the Southern District of New York" (see Ex. E, "Klunder's Declaration SEC v. Farber") when she was suspended from the New York bar. This misrepresentation—made possible only by the failure to report the suspension—strikes at the heart of the integrity concerns Local Rule 1.5 was designed to prevent.

**Part C: The Violation Undermines Both the Admission Process and Judicial Integrity**

**1. Local Rules 1.3 and 1.5 Create an Interlocking System of Continuing Eligibility Requirements**

The Southern and Eastern Districts have constructed a comprehensive regulatory framework through Local Rules 1.3 and 1.5 that makes good standing not merely an admission requirement but a continuing condition of practice. This framework operates through two complementary mechanisms: Local Rule 1.3 establishes the substantive requirement of maintaining good standing, while Local Rule 1.5 provides the procedural mechanism to monitor and enforce that requirement.

Local Rule 1.3(f) makes explicit what the admission oath implies—that good standing is an ongoing obligation. The rule provides that any attorney admitted under Local Rule 1.3 who "voluntarily resigns from membership in the bar of the state under which he was admitted to the

bar of this court" and fails to establish alternative eligibility within 30 days "will be deemed to have voluntarily resigned from the bar of this court as of the same date." While this provision addresses voluntary resignation, it illuminates a fundamental principle: admission to this Court is contingent upon maintaining the underlying qualifications that justified admission in the first place.

This principle extends beyond voluntary resignation. If voluntary loss of state bar membership triggers automatic resignation from this Court's bar, then involuntary suspension—which the Appellate Division explicitly characterized as disciplinary action for "conduct prejudicial to the administration of justice"—must equally disqualify an attorney from practicing here. As the Appellate Division noted in *Matter of Banji*, a suspended attorney "holds approximately the same status as one never admitted." See *Banji* at 76.

## 2. The Admission Process Creates Continuing Obligations

All applicants for admission must swear under penalty of perjury that they have never been suspended from practice and must disclose all disciplinary history. The admission application's categorical language permits no exception for "administrative" suspensions. Within the form, in the section called "Good Standing", the form asks: "Have you ever been censured, suspended, disbarred, or denied admission or readmission by any court?" (see Ex. H, "SDNY Admission Form") The required certificate of good standing must be issued within 30 days of filing, reflecting this Court's insistence on current, verified eligibility.

But these sworn declarations are not mere historical artifacts. Local Rule 1.3(f)'s automatic resignation provision and Local Rule 1.5's reporting requirements transform them into continuing obligations. The interplay between these rules ensures that the representations made at

admission—that the attorney is in good standing and has not been suspended—remain accurate throughout the attorney's practice before this Court.

Local Rule 1.5 operationalizes this continuing obligation through mandatory self-reporting. Subsection (h) requires any attorney "who has been disciplined by any federal court or by a court of any state or territory" to "promptly notify the Clerk of this Court of any such action." This reporting requirement serves as the enforcement mechanism for Rule 1.3's substantive requirements, ensuring the Court learns when an attorney no longer meets the eligibility standards that justified their admission.

### 3. The Violation Here Demonstrates Systemic Failure of Both Rules

This case illustrates the complete breakdown of this interlocking system. Ms. Klunder's suspension violated both the substantive requirement of maintaining good standing under Local Rule 1.3 and the procedural requirement of reporting under Local Rule 1.5. For nearly three years, she practiced before this Court while suspended from the New York bar—a status that, under Local Rule 1.3(f)'s logic, should have terminated her eligibility to practice here.

The violation is particularly egregious because Ms. Klunder not only failed to report her suspension but actively misrepresented her status. During her suspension, she filed declarations attesting that she was "a member of the bar of the State of New York and the United States District Court for the Southern District of New York." (see Ex. E, "Klunder's Declaration SEC v. Farber") These declarations were possible only because the reporting mechanism of Local Rule 1.5 failed and the continuing eligibility requirements of Local Rule 1.3 went unenforced.

### 4. The Grievance Committee's Position Would Eviscerate Both Rules

Accepting the Grievance Committee's position that § 468-a suspensions need not be reported would create an absurd result that undermines both Local Rules 1.3 and 1.5. Under this interpretation, an attorney could:

- Be suspended indefinitely in New York (violating the good standing requirement of Rule 1.3),
- Continue practicing in federal court without disclosure (violating the reporting requirement of Rule 1.5),
- Make false declarations about their standing (violating their oath and Rule 11), and
- Face no consequences unless accidentally discovered.

This would render Local Rule 1.3's requirement of good standing meaningless and Local Rule 1.5's reporting obligations optional. The judges who adopted these complementary rules clearly intended them to work in tandem to maintain the integrity of the bar. Local Rule 1.3 establishes what is required; Local Rule 1.5 ensures the Court knows when those requirements are no longer met.

## 5. The SEC's Position Creates an Untenable Double Standard

The SEC's handling of this matter reveals a particularly troubling double standard. The Commission enforces securities laws with zero tolerance for technical violations. It routinely sanctions registrants for missing filing deadlines, failing to maintain required records, or violating prophylactic rules designed to prevent potential harm. The SEC has long maintained that strict compliance with regulatory requirements is essential to market integrity. Yet the SEC minimizes its counsel's rule violations while demanding strict compliance from others. As representatives of the public interest, government attorneys must be held to the highest standards of compliance.

If the SEC demands that market participants adhere to every technical requirement—and penalizes even minor deviations—it cannot excuse its own departures from this Court's equally

binding rules. Just as the Fifth Circuit very recently reminded the Department of Justice,[2] government agencies may not cloak irregular exercises of power in claims of necessity. The principle that no one is above the law applies with particular force to those entrusted to enforce it.

## 6. The Grievance Committee's Guidance Would Eviscerate the Rule

Accepting the Grievance Committee's position that § 468-a suspensions need not be reported would create an absurd result. Attorneys could be suspended indefinitely in New York, continue practicing in federal court without disclosure, and face no consequences. This would render Local Rule 1.5 a dead letter for an entire category of disciplinary actions.

Moreover, the Grievance Committee's interpretation would create an impossible situation for attorneys seeking admission. The admission application requires disclosure of all suspensions without exception. The sworn declaration asks: "Have you ever been censured, disbarred or suspended from practice before any court?" An attorney suspended under § 468-a must answer "yes" or commit perjury. Yet the Grievance Committee suggests such suspensions need not be reported after admission. This internal contradiction cannot stand.

The judges who adopted Local Rule 1.5 made no exception for "administrative" suspensions. They required reporting of all disciplinary actions because they recognized that any suspension raises questions about an attorney's fitness to practice. The Court cannot permit administrative staff to effectively amend the Rule through informal guidance that contradicts its plain text and purpose.

---

[2] The Fifth Circuit's issuance of a preliminary injunction against removals shows that federal agencies do not enjoy immunity from judicial oversight when they break rules. *W.M.M. v. Trump*, No. 25-10534, slip op. (5th Cir. Sept. 2, 2025)

**Part D: Appropriate Remedial Measures Are Required**

The discovery of this violation places defendants in an untenable position, forcing them to bear burdens created entirely by the SEC's misconduct. Settled law requires that when a party's misconduct corrupts judicial proceedings, the wrongdoer must bear the burden of remediation. As the Supreme Court reaffirmed in *Goodyear Tire & Rubber Co.*, 581 US at 104 (2017), sanctions for litigation misconduct must be calibrated to the damages caused by the bad-faith acts, making the innocent party whole for expenses "incurred solely because of the misconduct." Here, defendants who discovered and reported the violation through their own investigation now face the prospect of relitigating matters, responding to potentially invalid filings, and bearing costs that should never have been incurred.

Defendant believes that this Court should issue an Order to Show Cause directing the SEC to demonstrate why all pleadings, motions, and other filings signed by or substantially prepared by Ms. Klunder should not be withdrawn and re-filed by properly admitted counsel, and why any unreplaced filings should not be stricken. Because sovereign immunity shields the agency from fee-shifting remedies, other corrective measures must be employed in the interests of fairness. This relief ensures that the burden of noncompliance rests with the party responsible, while protecting defendants from prejudice caused by reliance on unauthorized filings. By requiring refiling through authorized counsel and striking any defective submissions that remain uncorrected, the Court both safeguards the integrity of its proceedings and vindicates the principle that compliance with Local Rule 1.5 is not optional.

The current posture creates an impossible situation for defendants. Every filing involving Ms. Klunder is now questionable—are these acts void ab initio, can they be ratified, must they be

re-done? If defendants treat the filings as valid, do they waive objections? If they refuse to recognize them, are they in default? Any re-filing or re-briefing requires additional attorneys' fees for work already performed in response to unauthorized filings. Moreover, the SEC now possesses defendants' arguments and strategy from prior briefing, gaining an unfair advantage from its own violation if matters must be re-litigated.

Simple withdrawal of counsel cannot remedy this violation. The SEC's August 4, 2025, letter treats a multi-year breach as a minor personnel change, ignoring the systemic harm from unauthorized practice and false declarations to the Court. At minimum, the defendant believes that this Court should require the SEC to identify every filing where Ms. Klunder participated while suspended; withdraw and re-file all affected documents with appropriate certifications; and certify implementation of procedures ensuring future compliance with Local Rule 1.5.

The Supreme Court recognized in *Chambers v. NASCO, Inc.*, 501 U.S. at 50-51, that when misconduct involves "fraud on the court" or demonstrates " bad faith, vexatiously, wantonly, or for oppressive reason," enhanced remedies are appropriate. The defendant believes that this case may meet that standard through the duration of the violation spanning over two years, the concealment despite Local Rule 1.5's clear requirements, Ms. Klunder's false and misleading declarations about her standing, the particular egregiousness of an enforcement agency violating court rules while prosecuting others, and the lack of self-reporting that would have allowed the violation to continue indefinitely absent opposing party's investigation. Under these circumstances, the Court has broad discretion to fashion appropriate relief.

If violations of Local Rule 1.5 carry no meaningful consequences beyond belated substitution of counsel, the Rule becomes meaningless and attorneys have no incentive for

compliance. The Court must consider the message sent to litigants who follow the rules but find themselves disadvantaged by opponents' violations. As Judge Cardozo observed, "no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." *Imperator Realty Co. v. Tull*, 228 N.Y. 447, 457 (1920).

The remedies sought are restorative, not punitive, seeking to place parties where they would have been had the SEC followed the rules. Only by requiring the violator to bear the full burden of remediation can the Court ensure its rules are respected and innocent parties are not prejudiced by others' violations.

## Conclusion

For nearly three years, SEC attorney Nita Klunder practiced before this Court while suspended from the New York bar. She filed pleadings, submitted false declarations of good standing, and prosecuted enforcement actions—all without disclosing her suspension as Local Rule 1.5 unequivocally requires. The Appellate Division explicitly characterized her suspension as a "disciplinary proceeding" for "conduct prejudicial to the administration of justice." The SEC's belated acknowledgment that reporting "should have" occurred confirms the violation but offers no meaningful remedy.

This violation undermines the integrity of these proceedings and the Court's ability to police its own bar. When government counsel who demand strict regulatory compliance from others can themselves violate court rules with impunity, the rule of law itself is diminished.

**WHEREFORE**, Defendant Camelot Nevada Trust respectfully requests that this Court issue an Order:

1. Striking from the record all pleadings, motions, and other filings signed by or substantially prepared by Ms. Klunder during her suspension, unless and until they are promptly re-filed by properly admitted counsel;

2. Requiring amended re-filings, so that any such submissions are presented in amended form to eliminate any unfair advantage derived from defendants' prior disclosures;

3. Directing the SEC to shoulder remedial burdens created by its violation—including identifying all affected filings, re-filing at its own expense, and duplicating efforts as necessary—so that defendants are restored, as nearly as possible, to the position they would have occupied absent the violation;

4. In the alternative, issuing an Order to Show Cause requiring Plaintiff to demonstrate why the above relief should not be granted; and

5. Granting such other and further equitable relief as the Court, in its discretion, deems just and proper to protect the integrity of these proceedings.

Dated: October 8, 2025

New York, New York

Respectfully submitted,

By: _/s/ Patrick Ryan Morris_
PATRICK RYAN MORRIS, ESQ.
SDNY Bar No. MO9929
NY: 5575501
305 Broadway, Suite 777
New York, New York 10007
+ 1 (917) 905 – 9804
+ 1 (917) 970 - 8446
prm@patrickmorrislaw.com
*Attorneys for Defendant Camelot Nevada Trust*