UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

SECURITIES AND EXCHANGE
COMMISSION,

                      **Plaintiff,**

                      **-against-**

HARRY ZHABILOV, BILLY V. RAY, JR.,
CHARLES DILLUVIO, STEPHEN
APOLANT, DANNIE ZHABILOV,
JONATHAN DARBER, CAMELOT
NEVADA TRUST, SEACOR CAPITAL,
INC., SKY-DIRECT LLC, and WEXFORD
INDUSTRIES LTD.,

                      **Defendants,**

**and**

NY FARMS GROUP, INC. and EQUITY
MARKETS ADV LLC.,

                      **Relief Defendants.**

------------------------------------------------------------ x

**1:24-cv-07362 (ALC)**

<u>**OPINION AND ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

The Securities and Exchange Commission (the "SEC" or "Plaintiff") brings this action

against Harry Zhabilov, Dannie Zhabilov (together, the "Zhabilov Defendants"), Charles Dilluvio,

Seacor Capital, Inc. (together, the "Dilluvio Defendants"), Stephen Apolant, Sky-Direct LLC, the

relief defendants NY Farms Group, Inc. and Equity Markers ADV LLC (together, the "Apolant

Defendants"), Wexford Industries Ltd., Jonathan Farber, Camelot Nevada Trust ("Camelot"), and

Billy Ray, Jr. ("Ray") (each individually a "Defendant," and collectively "Defendants"). The SEC

alleges that the Defendants engaged in a fraudulent scheme in violation of various provisions of

the Securities Act of 1933 and the Securities Exchange Act of 1934. *See generally*, Dkt. No. 1,

Compl. Before the Court are three separate motions to dismiss filed by the Apolant and Dilluvio

("Apolant-Dilluvio") Defendants (Dkt. No. 118), Defendant Camelot Nevada Trust (Dkt. No. 130), and Defendant Billy V. Ray, Jr. (Dkt. No. 137). For the reasons explained below, each Motion is **DENIED**.

**BACKGROUND**[1]

### I. Factual Background

#### i. The Parties

**Enzolytics**

Enzolytics, Inc. ("Enzolytics") is a Delaware public company with little (and sometimes no) trading in its stock.

**Harry Zhabilov**

Defendant Harry Zhabilov, age 57, lives in Frisco, Texas. Zhabilov was the Chief Executive Officer and sole board member of Enzolytics until it merged with another company. After the merger, Zhabilov became the Chief Science Officer, and a second person was appointed to the board.

**Billy V. Ray, Jr.**

Defendant Ray, age 66, lives in Marietta, Georgia. Ray controls Camelot Nevada Trust which purportedly provided consulting services to Enzolytics (and its predecessor). In 2014, Ray was charged by the Commission for violating Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder. *SEC v. Ray et al.*, 14-cv-61195-BB (S.D. Fla. filed May 22, 2014). Ray consented to the entry of final judgment in that matter, which enjoined him from violating Section 17(a)(1) of the Securities Act and Section

---

[1] The facts that follow are taken from the Complaint. Dkt. No. 1.

10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder. Ray was also permanently barred from trading in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, as well as from serving as an officer or director of any issuer that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act, or is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act.

**Charles Dilluvio**

Defendant Dilluvio, age 53, lives in Myrtle Beach, South Carolina. Dilluvio controls Seacor Capital, Inc., which received and transferred Enzolytics stock, and received back and distributed the proceeds from selling that stock. In 2001, Dilluvio was charged by the Commission for violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. *SEC v. Spectrum Brands Corp.*, 01-cv-8257 (E.D.N.Y. filed December 11, 2001). Dilluvio consented to the entry of final judgment in that matter which enjoined him from violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and ordered that he pay disgorgement. Dilluvio was also barred from trading in penny stocks pursuant to a follow-on administrative proceeding.

**Stephen Apolant**

Defendant Apolant, age 56, lives in Oyster Bay, New York. Apolant controls Sky- Direct LLC, Equity Markets ADV LLC, and New York Farms Group, Inc., which received and transferred Enzolytics stock.

**Dannie Zhabilov**

Defendant Dannie, age 27, lives in Plano, Texas. She is the daughter of Harry Zhabilov.

**Jonathan Farber**

Defendant Farber, age 58, lives in New York, New York. Farber controlled Wexford Industries Ltd., which held an account at a Canadian firm through which he deposited and sold shares. Farber used that account to trade shares on behalf of the ZARD Members and Dannie including about 347 million shares of Enzolytics. Farber sold these shares on behalf of his customers without either registering with the Commission as a broker or being associated with a registered broker, as required by U.S. federal securities laws. Farber has never been associated with any entity registered as a broker with the Commission.

**Camelot Nevada Trust**

Defendant Camelot is a sole proprietorship operating in Georgia and controlled by Ray. Debt owed to Camelot by Enzolytics was sold to generate unrestricted shares that the ZARD Members (defined below) could sell.

**Seacor Capital, Inc.**

Defendant Seacor is a New York corporation controlled by Dilluvio. Dilluvio, through Seacor, purportedly worked as a consultant for Enzolytics beginning in 2018. In late 2020, Enzolytics issued Seacor over 400 million shares, most of which Dilluvio transferred to friendly entities so that they could be deposited and sold to the public. Though Dilluvio's wife is identified as the sole officer in New York State filings, Dilluvio in fact controlled Seacor, deciding what agreements to enter when, negotiating compensation, and determining when to transfer shares.

**Sky-Direct LLC**

Defendant Sky-Direct is a Nevada corporation controlled by Apolant. Throughout 2020, Sky-

4

Direct received about 260 million Enzolytics shares, transferring the majority to other ZARD Members affiliated entities, and ultimately selling millions of shares through Farber's Wexford. Though Apolant often used his wife, who has a different surname, to sign documents, he had control over Sky-Direct throughout the relevant period.

**Wexford Industries Ltd.**

Defendant Wexford is a Wyoming company controlled by Farber. Wexford held and sold Enzolytics stock on behalf of the ZARD Members and distributed the profits back to individuals and entities under their control. Farber's relative ("Relative") is identified as Wexford's "President/Director" in Wyoming Secretary of State filings. Though Relative continued to be identified in filings as the President of Wexford, Relative was in fact retired, and Farber operated Wexford, including finding investment opportunities. Farber and Relative lived together during intervals throughout the Relevant Period, in particular during the early months of the Covid-19 pandemic.

**NY Farms Group, Inc.**

Relief Defendant NY Farms Group is a New York entity controlled by Apolant which received over $14.5 million in Enzolytics stock sale proceeds from Wexford. Equity Markets ADV LLC is a New York entity controlled by Apolant which received at least $23 million of Enzolytics stock sale proceeds from Wexford.

**Enzolytics**

Relief Defendant Enzolytics, Inc. ("Enzolytics") is a Delaware public company with little (and sometimes no) trading in its stock.

5

ii.  The Scheme

From approximately fall 2017 through summer 2022 ("Relevant Period"), defendants Zhabilov, Ray, Dilluvio, and Apolant (collectively, "ZARD Members[2]"), along with entities Camelot, Seacor, and Sky-Direct engaged in a fraudulent scheme to profit from accumulating Enzolytics stock while concealing their control of the company and the stock, then selling that stock to retail investors. Defendants shared about $92 million in stock sale proceeds generated by their scheme.

In 2018, Zhabilov (Enzolytics' CEO) and Ray (who purportedly consulted for the company through Camelot) made a series of misrepresentations to transfer agents, attorneys, and the public in the course of selling Enzolytics shares that allowed them to sell debt supposedly owed by Enzolytics to Apolant and Dilluvio's associate ("Associate"). Associate bought the debt owed to Ray for $100,000. Ray shared those payments with Zhabilov. In return, Enzolytics issued over half a billion unrestricted shares to Associate.

In 2020, the ZARD Members obtained unrestricted Enzolytics shares it could sell to the public through agreements purportedly for consulting services with Dilluvio and with Zhabilov's daughter, Dannie. The ZARD Members then used a series of misrepresentations relating to Dilluvio and Dannie's affiliate status to convert the debt from the unpaid consulting agreements into unrestricted shares they could, and did, sell.

Zhabilov and Dannie created phony documents and lied to the transfer agent used by Defendants to facilitate stock transactions ("transfer agent") and transfer 231 million unrestricted

---

[2] While the Complaint refers to this grouping of defendants collectively as the "Control Group," the Court declines to do so here. As evidenced by the briefing from the parties, "control" is a term with legal significance for these proceedings.

shares from Enzolytics to Dannie. The misrepresentations were designed to avoid the stock sale limitations placed on insiders by federal securities laws.

Ray had Dannie transfer the shares she received to Farber for Farber to sell. For brokering this transaction, Ray received 1 million Enzolytics shares. Farber sent Dannie $7.125 million for the transferred shares. Dannie used that money to buy a home for herself, pay off her parents' mortgage, lease a luxury car for her father, and also sent Ray, via Camelot, over $726,000.

While Farber was selling stock on behalf of the ZARD Members, they were funding a stock promotion campaign promoting Enzolytics stock. The goal of the promotion campaign was to generate sufficient interest among retail investors to buy all the shares the ZARD Members was selling without severely depressing the prices of those shares.

The ZARD Members also used a sham consulting agreement to get Dilluvio 200 million unrestricted Enzolytics shares. Dilluvio then sold those shares to the public through intermediaries, including Wexford (by Farber).  Apolant and Dilluvio converted Enzolytics debt into nearly 400 million unrestricted Enzolytics shares. To get the shares issued without a restrictive legend (a designation intended to prevent shareholders from transferring ownership of otherwise restricted stock in violation of the federal securities laws), Apolant and Dilluvio provided attorney opinion letters falsely stating that their entities which held the stock were not affiliates of Enzolytics. At the time, Apolant and Dilluvio (and thus the entities they controlled) were affiliates of Enzolytics.

Farber was transferred at least 350 million Enzolytics shares controlled by the ZARD Members, most of which he then sold to the public. In turn, Farber transferred at least $62

million of stock sale proceeds back to the ZARD Members. When the ZARD Members, through

Farber, sold Enzolytics stock, there were no registration statements for those sales on file with

the Commission or in effect for those transactions.

## II.       Procedural Background

On September 30, 2024, the SEC filed the Complaint, initiating this action. Dkt. No. 1.

On August 11, 2025, the Apolant and Dilluvio Defendants filed their joint motion to dismiss.

Dkt. No. 118. On August 25, 2025, Defendants Camelot and Ray each filed separate motions to

dismiss. Dkt. Nos. 130, 137. On September 9, 2025, the SEC filed its Opposition to the Apolant

and Diluvio Defendants' motion. Dkt. No. 146. On September 16, 2025, the SEC filed its

Opposition to Defendants Camelot and Rays' motions to dismiss. On. September 23, 2025, the

Apolant and Dilluvio Defendants filed their joint reply memorandum of law in further support of

their combined motion to dismiss. Dkt. No. 153. On September 30, 2025, Defendants Camelot

and Ray each filed separate reply memorandums of law in further support of their respective

motions to dismiss. The Court considers each motion fully briefed.

## LEGAL STANDARD

## I.       Motions to Dismiss Under Federal Rules of Civil Procedure 12(b)(2) in General

The burden of establishing that a court has personal jurisdiction over the defendant lies

on the plaintiff. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d. Cir. 2003);

*DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). However, the extent of

this burden "depends upon the procedural context in which the jurisdictional challenge in

raised." *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369,373 (S.D.N.Y. 2009).

Where there has been no jurisdictional discovery and no evidentiary hearing is held, the plaintiff

"need make only a prima facie showing by its pleadings and affidavits that jurisdiction exists." *CutCo Indus., Inc., v. Naughton*, 806 F.2d 361,365 (2d Cir. 1986). "This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation marks and citations omitted).

When deciding a motion to dismiss for lack of personal jurisdiction (i.e., pursuant to Rule 12(b)(2)), courts may rely on the pleadings, as well as the documents cited therein, and any affidavits submitted by the parties. *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (internal quotation marks and citations omitted). When evaluating these documents, the Court must "construe the pleadings and affidavits in the light most favorable to [the plaintiffs], resolving all doubts in [their] favor." *Id*.

## II.    Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) in General

To survive a motion to dismiss made pursuant to FRCP 12(b)(6), a complaint must allege facts sufficient to state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The Second Circuit has counseled that, at the pleading stage, a plaintiff faces only a minimal burden." *Bandyopadhyay v. State Univ. of New York*, 2021 WL 1209420, at *3 (E.D.N.Y. Mar. 30, 2021) (citations and internal quotations omitted). Therefore, the plaintiff's complaint need not contain "detailed or elaborate factual allegations." *Keiler v. Harlequin Enters.*, 751 F.3d 64,

70 (2d Cir. 2014). However, the plaintiff's claims must be more than "speculative." *Twombly*, 550 U.S. at 545.

When ruling on a motion to dismiss made pursuant to Rule 12(b)(6), the court must also "draw all reasonable inferences in [plaintiff's] favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). In addition, the court must assume that all "well-pleaded allegations" are true. *Iqbal*, 556 U.S. at 679. This assumption does not extend to "legal conclusions" or "legal conclusion[s] couched as a factual allegation[s]." *Id.* at 678–79. Those the Court may properly disregard. *Id.* Those the Court may properly disregard. *Id.* When deciding the motion, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 201).

## DISCUSSION

### I.    Defendant Billy V. Ray Jr.'s Motion to Dismiss

Against Defendant Ray, the SEC alleges violations of (a) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, (b) Section 17(a) of the Securities Act of 1933 ("Securities Act"), and (c) Sections 5(a) and 5(c) of the Securities Act. Defendant Ray moves to dismiss the claims against him pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction; 12(b)(3) for improper venue; and 12(b)(6) and 9(b) for failure to state a claim. Given Defendant Ray's *pro se* status, the Court construes his briefs liberally, reading them to suggest the strongest arguments they could possibly raise. However, the Court is also mindful that Defendant Ray's "pro se status does not exempt [him] from compliance with relevant rules of procedural and substantive law.'"

*Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 350 (S.D.N.Y. 2003) (citations omitted). For the reasons that follow, Defendant Ray's Motion is **DENIED**.

### a.  The Court has Personal Jurisdiction Over Defendant Ray

"A prima facie showing of personal jurisdiction requires: (1) procedurally proper service of process, (2) 'a statutory basis for personal jurisdiction that renders such service of process effective' and (3) that 'the exercise of personal jurisdiction . . . comport with constitutional due process principles." *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 808 F. Supp. 3d 609, 614 (S.D.N.Y. 2025). As it relates to the second prong, Rule 4(k)(1)(C) provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." *Id*. (*quoting* Fed. R. Civ. P. 4(k)(1)(C)).  Here, Section 22 of the Securities Act provides such authorization; specifically, it states that "p]rocess . . . may be served . . . in any . . . district of which the defendant is an inhabitant or wherever the defendant may be found." 15. U.S.C. § 77v(a). "[W]here a federal statute authorizes nationwide service of process, the court may generally exercise personal jurisdiction, consistent with due process, over a properly served defendant who resides in the United States." *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 808 F. Supp. 3d 609, 617 (S.D.N.Y. 2025). To the extent a defendant wishes to challenge personal jurisdiction,"[t]he burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will make litigation 'so gravely difficult and inconvenient' that [the defendant is unfairly] at a 'severe disadvantage' in comparison to his opponent.'" *Sec. & Exch. Comm'n v. Stubos*, 634 F. Supp. 3d 174, 187 (S.D.N.Y. 2022) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). The "[r]easonableness . . . will depend in each case 'on an evaluation of several factors,' including 'the burden on the

defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.'" *Fuld v. Palestine Liberation Organization.*. 145 S. Ct. 2090, 2106, 2109 (2025) (citation omitted).

The Court finds this standard easily met with respect to Defendant Ray here, where it is undisputed that service was proper and Ray resides in Texas. *See Id*. Further, Defendant Ray has not satisfied his burden of demonstrating his presence here would make litigation "so gravely difficult and inconvenient" that he would be at a 'severe disadvantage" in comparison to the SEC. Therefore, Ray's challenge pursuant to Rule 12(b)(2) is **DENIED**.

### b.  Venue is Proper in this District.

Defendant Ray next challenges whether venue is proper in this district. Ray argues that venue cannot be proper because he has never lived in New York, been subject to adverse proceedings there, or conducted business there. The SEC contends that venue is proper here because an act or transaction constituting substantial part of the alleged conspiracy occurred in this district and under the federal securities laws. Plaintiff has the right of it.

Under the Exchange Act, "venue is proper in the district where: (1) the defendant is found; (2) the defendant is an inhabitant; (3) the defendant transacts business; or (4) any act or transaction constituting a violation occurred." *Mergenthaler v. Zimbler*, No. 2:23-cv-06926 (JMA) (JMW), 2025 U.S. Dist. LEXIS 33947, at *39 (E.D.N.Y. Jan. 30, 2025).  Courts interpret the fourth ground as including "any non-trivial act in the forum which helps to accomplish a securities law violation." *SEC v. Rust*, 2017 WL 239381, at *1 (S.D.N.Y. Jan. 17, 2017). Non-trivial acts sufficient to establish venue include acts such as clearing trades through broker-dealers in the relevant district or receiving relevant mail and telephone calls in the same district where the securities at issue were traded. *See SEC v. Rust*, 2017 U.S. Dist. LEXIS 6647, at *3

12

(S.D.N.Y. Jan. 17, 2017) (internal quotation marks and citation omitted(.

Here the Complaint alleges that "several individuals residing in the Southern District of New York bought Enzolytics stock during the time when Defendants were selling their stock." Compl. ¶15. It also alleges that Enzolytics traded on OTC Link (in New York), and Ray drafted and edited OTC Link filings (which consequently were filed in New York) (¶28). These allegations are sufficient to support a finding of proper venue here. *See SEC v. Contrarian Press, LLC*, 2017 WL 4351525, at *2 (S.D.N.Y. Sept. 29, 2017) (finding venue where "Manhattan-based OTC Bulletin Board and OTC Link were 'key instruments in the fraud,' and that investors in this District purchased … shares after the promotions."). Accordingly, Ray's challenge pursuant to Rule 12(b)(3) fails.

### c.  The SEC Has Stated a Claim For Scheme Liability

Plaintiff asserts, against Defendant Ray, violations of Section 10(b) of the Exchange Act, including Rule 10b-5(a) and (c) thereunder, and Sections 17(a)(1) and 17(a)(3) of the Securities Act. Taken together, these statutes create what courts refer to as "scheme liability" for defendants "who, with scienter, engage in deceitful conduct." *SEC v. Sason*, 433 F. Supp. 3d 496, 508 (S.D.N.Y. 2020) (internal citations omitted); *SEC v. Sugarman*, No. 19cv5998, 2020 U.S. Dist. LEXIS 181034, at *14 (S.D.N.Y. Sep. 30, 2020) ("Analyzing these provisions together, Section 10(b) of the Exchange Act, Rules 10b-5(a) and (c), and Sections 17(a)(1) and (3) of the Securities Act 'create what courts have called 'scheme liability' for those who, with scienter, engage in deceitful conduct.'"). The Court provides an overview of each below.

Section 10(b) of the Exchange Act makes it unlawful "for any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any

13

manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5 makes it unlawful to: "(a) employ any device, scheme, or artifice to defraud"; and "(b) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made . . . not misleading"; or "(c) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person" in connection with the purchase or sale of securities. 17 C.F.R. § 240.10b-5.

Section 17(a)(1) of the Securities Act makes it unlawful to "employ any device, scheme, or artifice to defraud" in the offer or sale of securities. 15 U.S.C. § 77q(a)(1). "'Essentially the same elements are required under Section 17(a)(1) as under Section 10(b) and Rule 10b-5, except that Section 17(a)(1) requires proof of a connection with the 'offer or sale' of securities, instead of the 'purchase or sale' of securities." *SEC v. Sugarman*, No. 19cv5998, 2020 U.S. Dist. LEXIS 181034, at *13 (S.D.N.Y. Sep. 30, 2020) (citations omitted).

Section 17(a)(3) of the Securities Act prohibits defendants from engaging in " any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a)(3). "This provision has almost identical elements as Section 10(b) and Section 17(a)(1), except that '[s]cienter is not required to prove a defendant violated' the statute. Rather, '[a] showing of negligence is sufficient.'" *SEC v. Sugarman*, No. 19-cv-5998, 2020 U.S. Dist. LEXIS 181034, at *13 (S.D.N.Y. Sep. 30, 2020) (citations omitted; alterations original).

   i.  The Standard for Scheme Liability

Scheme liability requires the SRC to "show that defendants participated in an

illegitimate, sham or inherently deceptive transaction where their conduct or role had the purpose and effect of creating a false appearance." *United States SEC v. Collector's Coffee, Inc.*, 697 F. Supp. 3d 138, 157 (S.D.N.Y. 2023). To demonstrate scheme liability, the SEC must thus allege "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *In re Carlotz, Inc. Sec. Litig.*, No. 21-cv-5906 (AS), 2024 U.S. Dist. LEXIS 151417, at *5 (S.D.N.Y. Aug. 23, 2024); *see also SEC v. Sugarman*, No. 19cv5998, 2020 U.S. Dist. LEXIS 181034, at *14 (S.D.N.Y. Sep. 30, 2020). A "manipulative or deceptive act" is an act "that gives the victim a false impression." *United States v. Finnerty*, 533 F.3d 143, 148 (2d Cir. 2008). Further, the act must be "inherently deceptive . . . and not just a misleading statement." *United States SEC v. Collector's Coffee, Inc.*, 697 F. Supp. 3d 138, 157 (S.D.N.Y. 2023) (internal quotation marks and citation omitted). "Thus, the 'act' must include something other than the misleading or deceptive statements required for 10b-5(b)." *Id*.

Defendant Ray argues that the Complaint must be dismissed because (a) it fails to allege a manipulative or deceptive act, and (b) it fails to allege scienter. Dkt. No. 139 at 4–7. The Court disagrees.

### ii.   Plaintiff Has Alleged a Manipulative or Deceptive Act

"[D]issemination of misleading statements can count as a deceptive act for purposes of scheme liability." *In re Carlotz, Inc. Sec. Litig.*, No. 21-cv-5906 (AS), 2024 U.S. Dist. LEXIS 151417, at *6 (S.D.N.Y. Aug. 23, 2024) (citing *Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022)). "[D]issemination includes knowingly sending false statements made by another person to prospective investors. . . ." *Id*. (citation omitted). However, the dissemination

15

of misleading statements are not the only sort of acts that satisfy the statute; actions such as misappropriating funds, relying on fabricated documents, and routing funds through others can support a finding of a manipulative or deceptive act. *United States SEC v. Collector's Coffee, Inc.*, 697 F. Supp. 3d 138, 170-71 (S.D.N.Y. 2023).

The Complaint is replete with examples of manipulative or deceptive acts showing Defendant Ray's participation in the scheme. Dkt. No. 148 at 7–8. For example, Plaintiff alleges Camelot's participation in a scheme to defraud, including the sale of debt, brokering the sale of unregistered shares obtained through deceptive means, and concealing Ray's involvement in Enzolytics using Defendant Camelot. *See, e.g.,* Compl. ¶1 (Defendant Camelot Nevada Trust engaged in scheme with the Control Group to profit from stock sales); ¶2 (Ray "purportedly consulted for the company through Camelot"); ¶5 (Camelot received $726,000 in proceeds from sale of unregistered shares); ¶17 (Ray controlled Camelot); ¶22 (Camelot debt sold to generate unrestricted shares that the control group could sell); ¶38 (Ray sold debt allegedly owed to Camelot to Dilluvio and an associate of Apolant); ¶65 (Zhabilov and Ray confirmed in email that proceeds from Camelot debt sale would be used to fund Enzolytics); ¶68 (Ray authorized signing of claim purchase agreement on behalf of Camelot); ¶75 (Camelot, with Ray's authorization, made false representations in claims purchase agreement); ¶98 (Camelot retained by Dannie Zhabilov as "consultant and financial advisor" in exchange for one million unrestricted Enzolytics shares for helping to broker the sale of Dannie Zhabilov's shares); Compl. ¶ 73 (Defendant Ray may have been backdating documents because "[e]ven though Ray had not learned that Camelot Financial Group, LLC was the wrong name until August 2017, the Amended Contract, purportedly entered in July 2017, used the correct name, Camelot Nevada

16

Trust."). Accordingly, the Court concludes that this element is satisfied.

### iii.   Plaintiff Has Alleged Scienter

To avoid dismissal, with respect to the element of scienter, Plaintiff must "plead the factual basis which gives rise to a strong inference of fraudulent intent. . . . A strong inference of fraudulent intent may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  In addition, a plaintiff adequately alleges scienter "only if a reasonable person would deem the inference of scienter *cogent and at least as compelling as any opposing inference one could draw from the facts alleged.*" *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 732 (S.D.N.Y. 2015) (italics original). The Second Circuit has held "that a complaint subject to Rule 9(b) should be allowed to survive a motion to dismiss based on 'fairly tenuous inferences' of intent, because intent is a fact that a jury should find," but such complaints are nevertheless "simultaneously subject to the 'strong inference' standard." *SEC v. One or More Unknown Traders in the Sec. of Onyx Pharms., Inc.*, No. 13-CV-4645 (JPO), 2014 U.S. Dist. LEXIS 137448, at *11 (S.D.N.Y. Sep. 29, 2014) (citations omitted).

Plaintiff's allegations here that Defendant Ray had both motive and opportunity to commit fraud meets this standard. As alleged by Plaintiff, Defendant Ray benefitted and stood to benefit financially from the scheme (i.e., motive) and the opportunity to do so as a "Consultant" to Camelot.

17

### d. Plaintiff has Stated a Claim for Misrepresentation Liability

"To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Caplan v. Dollinger*, 803 F. Supp. 3d 219, 239 (S.D.N.Y. 2025). Defendant Ray seeks dismissal of Plaintiff's claims for violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, for Plaintiff's alleged failure to demonstrate his nexus to a security transaction. In this case, Plaintiff has alleged that Defendant Ray "had Dannie transfer the shares she received to Farber for Farber to sell. For brokering this transaction, Ray received 1 million Enzolytics shares." Compl. ¶ 5. Defendant's challenge to this claim fails because Defendant, rather than explaining how Plaintiff has failed to state a claim, attempts to introduce arguments and evidence beyond the Complaint to disprove Plaintiff's factual allegations. The Court may not consider such evidence on a motion to dismiss. For these reasons, Defendant Ray's challenge fails.

### e. Both Scheme Liability and Misrepresentation Liability are Alleged Against Defendant Ray with the Specificity Required in Federal Rules 8 and 9(b)

Defendant Ray seeks dismissal pursuant to Rules 8 and 9(b) for Plaintiff's alleged failure to allege, with specificity, a claim against him and instead, lumping him into the ZARD Members group. Defendant contends that, by failing to do so, the Complaint violates the prohibition on group pleading. Dkt. No. 139 at 5–7. Defendant Ray is wrong; the allegations here do not violate the prohibition on group pleading. Rule 8 provides that:

[a] pleading that states a claim for relief must contain:
(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

18

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief."

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

1. Standard

In securities actions "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *SEC v. Sugarman*, No. 19cv5998, 2020 U.S. Dist. LEXIS 181034, at *14 (S.D.N.Y. Sep. 30, 2020) (internal quotation marks and citation omitted). In general, Rule 9(b) is not satisfied by a complaint in which "defendants are clumped together in vague allegations." *Id*. Therefore, typically "the complaint may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." "[C]onclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others," are similarly insufficient to satisfy 9(b). *Id*. However, a defendant may allege that several persons have acted in concert "to commit a violation of section 10(b) that might not be actionable were it not for their cooperation." *Id*. A court may properly disregard conclusory allegations that "other scheme participants carried out acts . . . with . . . knowledge and approval or knowledge and consent," of another tortfeasor where such claims are not supported by corresponding factual allegations. *Id*. (collecting cases).

19

     ii.  Plaintiff Has Successfully Alleged What Each Defendant Has Done in Terms of Establishing Liability

Where, like here, a "plaintiff's Securities Act claims sound in fraud, they are subject to the heightened pleading standard of Rule 9(b)." *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d To satisfy Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Caplan v. Dollinger*, 803 F. Supp. 3d 219, 239 (S.D.N.Y. 2025). The Complaint meets each of these requirements with respect to Defendant Ray. The SEC has adequately alleged what each ZARD Member did in furtherance of the scheme without relying on conclusory statements and lumping each defendant together.

**f.  Plaintiff has Alleged Violations of Sections 5(a) and 5(c) of the Securities Act.**

Under Section 5 "[e]ach sale of a security . . . must either be made pursuant to a registration statement or fall under a registration exemption." *SEC v. Cavanagh*, 2004 U.S. Dist. LEXIS 13372, at *50 (S.D.N.Y. July 15, 2004). To establish a prima facie violation of Section 5, "the SEC must prove three elements: (1) that no registration statement was in effect for the securities; (2) that the defendant directly or indirectly sold or offered to sell the securities; and (3) that interstate means were used in connection with the offer or sale." *Id*.

If the SEC has made out a prima facie case of a violation, then to avoid liability, the defendant bears the burden of showing that the securities transactions at issue fall within one of the enumerated exemptions from registration. *Id*. One such safe harbor is Rule 144. That section of the statute provides an exemption from registration "transactions by any person other than an issuer, underwriter, or dealer." The Complaint alleges that the ZARD Member Defendants, fraudulently structured certain sales of Enzolytics stocks so that they would appear to qualify for

the registration exemptions provided by Securities Act §§ 4(a)(1). Ordinarily, an affiliate may

not rely on a Section 4(1) exemption. Cavanagh, 155 F.3d at 134. Whether a party is an "affiliate

is a fact intensive inquiry often not even resolvable on a motion for summary judgment," let

alone a motion to dismiss. *SEC v. Genovese*, 2021 U.S. Dist. LEXIS 58323 (S.D.N.Y. Mar. 26,

2021).

Defendant Ray asserts that dismissal of the claims concerning Sections 5(a) and 5(c) of

the Securities Act are warranted because he never sold any shares. Sections 5(a) and 5(c) cover

sales and offers to sell. Moreover, Defendant's factual allegations do not change the Court's

analysis at this stage in the case, where the Court must draw all inferences in Plaintiff's favor.

Based on the Complaint, and drawing all inferences in Plaintiff's favor, the Motion is denied.

### g. This Lawsuit Does Not Constitute an Impermissible Collateral Attack on the 2018 §3(a)(10) Judgments

Defendant Ray asserts that dismissal of the Complaint is warranted here because this

action is a collateral attack on the 2018 proceedings. Defendant is wrong. An action involving a

"collateral attack," seeks to reverse or modify the judgment of another court. Looking at the four

corners of the Complaint, it is evident that the SEC seeks no such thing here. Instead, it seeks to

hold Defendant Ray liable for separate conduct, in a separate jurisdiction, alongside different

defendants. All of Defendant Ray's challenges to the Complaint fail, so too does his motion.

### II.    Defendant Camelot's Motion to Dismiss

Against Defendant Camelot, the SEC alleges violations of (a) Section 10(b) of the

Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, (b)

Section 17(a) of the Securities Act of 1933 ("Securities Act"), and (c) Sections 5(a) and 5(c) of

the Securities Act. Defendant Camelot moves to dismiss the claims against it pursuant to Federal

Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction; 12(b)(3) for improper venue; and 12(b)(6) and 9(b) for failure to state a claim. Defendant's Motion is **DENIED.**

Camelot's arguments with respect to this Court's alleged lack of personal jurisdiction, improper venue, failure to plead with specificity under rule 9(b), and claim that this suit is an impermissible collateral attack on the 2018 judgment, all fail for the same reasons as those set forth with respect to Defendant Ray above. Defendant Camelot also seeks dismissal for the SEC's misidentification of Camelot in this action in the Complaint. Specifically, in the Complaint, the SEC described Camelot as a Georgia sole proprietorship, when Camelot is a Nevada trust. Dismissal would be an extreme measure here, where the correct party has been served and any confusion regarding who was being sued in this action was resolved prior to the start of discovery. The Cout will direct the SEC to amend its Complaint to reflect that Camelot is a Nevada trust. For these reasons, the Motion is **DENIED**.

### III.    The Apolant-Dilluvio Defendants' Motion to Dismiss

Against Defendant Apolant and Defendant Dilluvio, the SEC alleges violations of (a) Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, (b) Section 17(a) of the Securities Act, and (c) Sections 5(a) and 5(c) of the Securities Act. The SEC also alleges a claim for equitable relief, including unjust enrichment and constructive trust, against Relief Defendants NY Farms and Equity Markets.

The Apolant-Dilluvio Defendants move to dismiss the claims against them pursuant to Rules 12(b)(6) and 9(b) for failure to state a claim. The Apolant-Diluvio Defendants also seek dismissal of all claims against the Relief Defendants and ask the Court to strike the demand for disgorgement. The same reasons for denial with respect to Defendants Camelot and Ray also

22

apply to the Apolant-DIluvio Defendants. Therefore, Defendants' Motion is **DENIED**. Because the Complaint survives intact, the Court declines to strike the claims for relief against the Relief Defendants or dismiss that claim.

## CONCLUSION

The Court has considered all of Defendants' arguments. To the extent any argument raised by Defendants is not addressed specifically, those arguments are either moot or without merit considering this preliminary stage of the case. For the reasons set forth above, Defendants' Motions to Dismiss are **DENIED**. Plaintiff is directed to file an amended Complaint by **April 10, 2026**. The Clerk of Court is respectfully directed to terminate the pending motions at Dkt. Nos. 118, 130, and 137.

**SO ORDERED.**
**Dated:     March 31, 2026**
        **New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**

23