UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : Case No. 1:24-cv-07362-ALC |
| v. | : Oral Argument Requested |
| HARRY ZHABILOV, BILLY V. RAY, JR., CHARLES DILLUVIO, STEPHEN APOLANT, DANNIE ZHABILOV, JONATHAN FARBER, CAMELOT NEVADA TRUST, SEACOR CAPITAL, INC., SKY-DIRECT LLC, and WEXFORD INDUSTRIES LTD., | : |
| Defendants, | : |
| and | : |
| NY FARMS GROUP, INC. and EQUITY MARKETS ADV LLC, | : |
| Relief Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF THE APOLANT AND DILLUVIO DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 31, 2026, ORDER DENYING THEIR MOTION TO DISMISS OR TO CERTIFY QUESTIONS UNDER 28 U.S.C. § 1292(b)**

**PASHMAN STEIN WALDER HAYDEN, P.C.**
Jerome M. Selvers
David N. Cinotti
*Attorneys for Defendants Stephen E. Apolant and Sky-Direct LLC and Relief Defendants NY Farms Group, Inc. and Equity Markets ADV LLC*

**HERRICK, FEINSTEIN LLP**

Arthur Glenn Jakoby
Maxim Mordecai Lebowitz-Nowak
Michael Ryan Feeney
*Attorneys for Defendants Charles Dilluvio and Seacor Capital, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

I.   The Court should reconsider its denial of the Apolant and Dilluvio Defendants' motion to
     dismiss .......................................................................................................................... 4

     A.   The Order overlooks the Apolant and Dilluvio Defendants' arguments and
          authorities demonstrating that the complaint fails to allege that they controlled
          Enzolytics as a matter of law. ............................................................................... 4

     B.   The Order overlooks the Apolant and Dilluvio Defendants' arguments and
          authorities demonstrating that the complaint fails to allege scheme liability as a
          matter of law. ........................................................................................................ 7

     C.   The Order overlooks the Apolant and Dilluvio Defendants' arguments and
          authorities demonstrating that the complaint fails to allege that they made any
          misrepresentations as a matter of law. .................................................................. 8

II.  Alternatively, the Court should certify questions to the Second Circuit. ...................... 9

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................. 6

*FCC v. Fox TV Stations, Inc.*,
    567 U.S. 239 (2012).................................................................................................. 7

*Flor v. BOT Fin. Corp. (In re Flor)*,
    79 F.3d 281 (2d Cir. 1996)...................................................................................... 10

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011).................................................................................................. 8

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990)........................................................................................ 9

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024).................................................................................................. 5

*PHL Variable Ins. Co. v. Town of Oyster Bay*,
    929 F.3d 79 (2d Cir. 2019)........................................................................................ 8

*SEC v. Genovese*,
    2021 U.S. Dist. LEXIS 58323 (S.D.N.Y. Mar. 26, 2021) ........................................ 4

*SEC v. Genovese*,
    No. 17 Civ. 5821 (LGS), 2021 WL 1164654 n.3 (S.D.N.Y. Mar. 26, 2021) ......................... 6, 7

*Tantaros v. Fox News Network, LLC*,
    465 F. Supp. 3d 385 (S.D.N.Y. 2020)...................................................................... 10

*U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*,
    583 U.S. 387 (2018).................................................................................................. 5

**Statutes**

28 U.S.C. § 1292(b) .................................................................................... 1, 2, 9, 10

**Rules**

Fed. R. Civ. P. 6.3.................................................................................................... 4

Fed. R. Civ. P. 9(b) ............................................................................................................... 4, 8

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 4

**Regulations**

17 C.F.R. § 230.405 ................................................................................................................. 2

Stephen E. Apolant, Sky-Direct LLC, NY Farms Group, Inc., Equity Markets ADV LLC, Charles Dilluvio, and Seacor Capital, Inc. (collectively, the "Apolant and Dilluvio Defendants"), respectfully submit this memorandum of law in support of their motion for reconsideration of the Court's March 31, 2026, order (ECF No. 182) (the "Order") or for certification under 28 U.S.C. § 1292(b).

## PRELIMINARY STATEMENT

The Apolant and Dilluvio Defendants do not make this motion lightly but are compelled to seek reconsideration of the Order. The SEC seeks to hold them liable for tens of millions of dollars on claims that are fatally defective as a matter of law. Without analyzing the Apolant and Dilluvio Defendants' arguments, the Court denied their motion to dismiss for the "same reasons" that it denied the motions of defendants Ray and Camelot and stated that arguments not addressed were "moot or without merit considering this preliminary stage of the case." Order 22-23. But the Apolant and Dilluvio Defendants made different legal arguments based on different authorities, and their alleged conduct is materially different from Ray's and Camelot's alleged conduct. Moreover, the legal arguments they raised are not premature, identify important issues of first impression, and warrant resolution now rather than after expensive and potentially unnecessary discovery.

First, the Order overlooks the arguments and authorities demonstrating that the complaint fails to allege that the Apolant and Dilluvio Defendants controlled Enzolytics, Inc. ("Enzolytics"). The Order did not address those arguments and authorities but stated only that control is a fact-intensive inquiry. "Control," however, is a statutory and regulatory term, and thus is for the Court to interpret. The parties' briefs demonstrate a sharp dispute over its legal meaning, and that legal meaning matters because the complaint does not state a claim under the correct control standard.

1

Second, the Order overlooks the Apolant and Dilluvio Defendants' arguments and authorities demonstrating that the SEC cannot state a claim for scheme liability against them as a matter of law because it is undisputed that the alleged "victims" received free-trading shares at fair market prices. None of the allegations in the complaint can establish a scheme "to defraud" when no securities purchaser was allegedly defrauded.

Third, the Order overlooks the Apolant and Dilluvio Defendants' arguments and authorities demonstrating that the complaint does not plead that they made any actionable misrepresentations. The only alleged misrepresentations that the SEC says *the Apolant and Dilluvio Defendants made* were allegedly false attorney opinion letters, but those cannot be the basis of a claim, including because attorney opinion letters are statements by the lawyer, not the client—a position that the SEC has successfully advanced in prior cases.

The Court should reconsider the Order, address the arguments, and dismiss the claims against the Apolant and Dilluvio Defendants. Alternatively, the Court should certify for immediate appeal the legal issues discussed below under 28 U.S.C. § 1292(b).

## BACKGROUND

The Apolant and Dilluvio Defendants filed their motion to dismiss on August 11, 2025. *See* ECF Nos. 118-120. As relevant here, they argued that all of the SEC's claims against them depended on a showing that they controlled Enzolytics but that the complaint did not allege facts to meet the legal standard for control under Sections 4 and 5 of the Securities Act and SEC Rule 144: "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." Mov. Br. 7, ECF No. 119 (quoting 17 C.F.R. § 230.405); *see also id.* at 7-12. The Apolant and Dilluvio Defendants also explained that the Second Circuit has adopted

2

the same regulation to define "control" for control-person liability under Section 20(a) of the Exchange Act and Section 15 of the Securities Act, and that the extensive case law under those control-person standards provided the relevant pleading standard. *Id.* at 7-11. The Apolant and Dilluvio Defendants also argued that the SEC cannot base allegations of control under Sections 4 and 5 of the Securities Act on a "control group" theory as a matter of law, and that the complaint failed to allege facts that meet the control-group test applied under different, and inapplicable, SEC rule. Reply 3-4, ECF No. 153. The SEC disputed the Apolant and Dilluvio's legal standard for control and argued that "participation in and influence over the management and policies" of an issuer, whether individually or through a group, is sufficient. Opp'n 10, ECF No. 146.

The Apolant and Dilluvio Defendants also argued that the complaint fails to allege any claims for securities fraud against them because: (1) the only potential misrepresentation linked to them were attorney opinion letters for which they could not be liable under controlling law, Mov. Br. 14-16; and (2) there could be no scheme to defraud securities purchasers as a matter of law because the purchasers received free-trading shares at fair-market, nonmanipulated prices, *id.* at 16-18.

Pro se defendant Ray and defendant Camelot filed their motions to dismiss on August 25, 2025. *See* ECF Nos. 130-132, 137-139. Ray's brief devoted only a few pages to Rule 12(b)(6) issues. *See* ECF No. 139, at 6-7. Camelot briefly addressed control but otherwise focused on different issues. *See* ECF No. 131, at 14.

The Order resolved Ray's, Camelot's, and the Apolant and Dilluvio Defendants' motions to dismiss. The Court held that the complaint pleaded scheme liability against Ray. Order 16-17. The Court held that Ray's arguments about misrepresentations alleged against him were based on information outside the complaint. *Id.* at 18.

The Order only briefly addressed control.  It stated: "Whether a party is an 'affiliate is a fact intensive inquiry often not even resolvable on a motion for summary judgment,' let alone a motion to dismiss. *SEC v. Genovese*, 2021 U.S. Dist. LEXIS 58323 (S.D.N.Y. Mar. 26, 2021)." Order 21.  As to Camelot, the Court did not address any Rule 12(b)(6) issues other than pleading with specificity under Rule 9(b).  *See* Order 22.  The Court did not discuss any of the Apolant and Dilluvio Defendants' arguments but instead stated: "The same reasons for denial with respect to Defendants Camelot and Ray also apply to the Apolant-[Dilluvio] Defendants."  *Id.* at 22-23.  In the conclusion, the Court stated: "To the extent any argument raised by Defendants is not addressed specifically, those arguments are either moot or without merit considering this preliminary stage of the case."  *Id.* at 23.

## ARGUMENT

A motion for reconsideration must "set[] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked."  L. Civ. R. 6.3.  As explained below, the Order overlooks legal issues and controlling decisions that require dismissal of the claims against the Apolant and Dilluvio Defendants.  If the Court declines to reconsider denial of the motion to dismiss, it should certify questions to the Second Circuit.

**I.    The Court should reconsider its denial of the Apolant and Dilluvio Defendants' motion to dismiss.**

The Order overlooked dispositive issues and controlling authorities that warrant reconsideration and dismissal of the claims against the Apolant and Dilluvio Defendants.

**A.    The Order overlooks the Apolant and Dilluvio Defendants' arguments and authorities demonstrating that the complaint fails to allege that they controlled Enzolytics as a matter of law.**

The Apolant and Dilluvio Defendants' briefs devoted more than 10 pages to the control issue.  *See* Mov. Br. 5-12; Reply 1-5.  But the Order did not discuss any of those arguments; rather,

4

it stated only that affiliate status is a fact-intensive issue, citing *Genovese*. *See* Order 21. That statement, however, could not resolve the *legal issue* presented in the Apolant and Dilluvio Defendants' motion.

All the SEC's claims against the Apolant and Dilluvio Defendants depend on their alleged control over Enzolytics. The gravamen of the claims is that the Apolant and Dilluvio Defendants were affiliates because they controlled Enzolytics, and they therefore violated the securities laws by engaging in unregistered securities sales that purportedly concealed that control. "Control" in that context is a legal conclusion. The word "control" comes from the definition of "underwriter" in Section 4 of the Securities Act and from the meaning of "affiliate" in SEC Rule 144. *See* Mov. Br. 5-6. If the Apolant and Dilluvio Defendants did not control, and were not affiliates of, Enzolytics, they cannot be liable for any claims in this case. *See id.*

As explained, the Court must determine the applicable legal standard for "control" before it can evaluate whether the SEC's allegations are sufficient to state a claim, because control is a statutory and regulatory term. *See* Reply 1 (quoting *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018) ("[t]he set of relevant historical facts will of course depend on the legal test used")). And the Supreme Court has emphasized that "courts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). That obligation exists here, as in many cases where there are disputed facts. For example, whether a driver was speeding is a fact question, but if a defendant argued that a complaint was insufficient because it alleged that he was driving unreasonably fast rather than above a posted speed limit, the court would have to identify the legal standard for speeding (unreasonably fast or above a posted speed limit) before deciding

5

that motion.  It would be no answer to the parties' dispute to say that speeding is always a question of fact, so the complaint states a cause of action.

The Order overlooks that the Apolant and Dilluvio Defendants and the SEC have such a dispute here.  The Apolant and Dilluvio Defendants contend that the standard for control requires actual power to *direct* the issuer to take action.  *See* Mov. Br. 7-10.  And, as they also explained, the concept of control under Sections 4 and 5 of the Securities Act cannot—as a matter of law— include group control because Congress expressly included group control in other sections of the Securities Act but not in Sections 4 and 5.  Reply 3-4.  The SEC, in contrast, says that control requires only "participation in and influence over the management and policies" of an issuer and can be exercised by a group.  Opp'n 10.

The Order could not properly resolve that legal dispute—which will persist throughout this case—by stating that control is a fact question.  And that legal dispute matters at the pleading stage because the SEC, like any other civil plaintiff, must plead a plausible claim under the correct legal standard to "unlock the doors of discovery."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations in the complaint do not meet the standard for "control" that the Apolant and Dilluvio Defendants advance.  *See* Mov. Br. 10-11; Reply 1-5.

Moreover, the Order's reliance on *Genovese* is misplaced.  The language that the Order quotes from *Genovese* does not appear in that case.  *See* Order 21.  The *Genovese* court also did not hold that control is always a fact issue.  In dicta, it addressed control for affiliate purposes in a footnote and said there was a dispute of fact—which was irrelevant because the Rule 144 exemption did not apply even if the defendant was not an affiliate—because the defendant "controlled up to 22.5% of [the issuer's] outstanding stock, including 45.5% of [the issuer's] unrestricted stock."  *SEC v. Genovese*, No. 17 Civ. 5821 (LGS), 2021 WL 1164654, at *7 n.3

(S.D.N.Y. Mar. 26, 2021). The defendants' stock ownership thus far exceeded the 10% threshold that some courts have said can suggest corporate control. *See* Mov. Br. 7. The SEC does not, and cannot, allege that the Apolant and Dilluvio Defendants held 10% of Enzolytics' outstanding stock. Thus, *Genovese* does not stand for the proposition that control is always a question of fact, and the decision would be wrong if it did so.

The Order also overlooks the arguments that the SEC's refusal for decades to provide regulatory guidance on the meaning of control for affiliate status and then filing this "gotcha" enforcement action violates "the requirement of clarity in regulation [which] is essential to the protections provided by the Due Process Clause of the Fifth Amendment." Mov. Br. 12 (quoting *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012)); *see also* Reply 2. To return to the above analogy, just as drivers cannot be fined for speeding without notice of the speed limits, securities traders cannot be held liable (here, potentially for tens of millions of dollars) for trading while purportedly controlling a company without any reasonable notice of what constitutes control.

**B.    The Order overlooks the Apolant and Dilluvio Defendants' arguments and authorities demonstrating that the complaint fails to allege scheme liability as a matter of law.**

The Order overlooks the arguments and authorities demonstrating that the SEC cannot state a claim for a scheme to defraud securities purchasers when the alleged object and effect of the purported scheme was to sell purchasers free-trading securities at non-manipulated prices. *See* Mov. Br. 16-18; Reply 5. That argument is ripe because the complaint does not allege market manipulation or that purchasers cannot freely trade the securities they purchased from the Apolant and Dilluvio Defendants. *See id.* In addition, the allegations cited in the Order regarding Ray have no bearing on that legal issue; indeed, none of the SEC's attempts in the complaint to transform the alleged securities sales into a scheme to defraud can overcome the fatal legal defect that securities purchasers are not defrauded when they receive what they paid for.

7

**C.**    **The Order overlooks the Apolant and Dilluvio Defendants' arguments and authorities demonstrating that the complaint fails to allege that they made any misrepresentations as a matter of law.**

The Order failed to address the Apolant and Dilluvio Defendants' arguments as to why the complaint did not allege misrepresentations against them and instead only addressed Ray's different argument. *See* Order 18. Whether the complaint states a claim for misrepresentations against other defendants is irrelevant because a false statement is only actionable against the "maker" of the statement. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142-43 (2011). The only misrepresentations allegedly attributable to the Apolant and Dilluvio Defendants are purportedly false opinion letters drafted by unidentified attorneys. *See* Opp'n 16.

As the Apolant and Dilluvio Defendants thoroughly explained under controlling case law, those attorney opinion letters cannot be actionable misrepresentations *by them*. Attorney opinions are "legal opinion rather than a statement of fact." Mov. Br. 14 (quoting *PHL Variable Ins. Co. v. Town of Oyster Bay*, 929 F.3d 79, 94 (2d Cir. 2019)). In addition, the maker of a false statement is "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.'" Mov. Br. 15 (quoting *Janus Cap. Grp.,* 564 U.S. at 142). The SEC has affirmatively and successfully argued in other cases that the "maker" of statements in an attorney opinion letter is the attorney—not the clients who received or disseminated the letter. Reply 5-7. The complaint also violates Rule 9(b) because it provides "no detail about the letters, including who wrote them, when they were written, what exactly they said, the information on which they were based, and why they were knowingly false instead of just incorrect." *Id.* at 7.

The Order's failure to address these issues is particularly problematic because the SEC's argument to this Court that the Apolant and Dilluvio Defendants are liable for alleged misrepresentations in attorney opinion letters directly contradicts the arguments the SEC made— and the court adopted—in the *Sayid* case. *Id.*

8

**II.    Alternatively, the Court should certify questions to the Second Circuit.**

If the Court declines to reconsider the Order, it should certify the following legal questions

to the Second Circuit:

1.  Whether the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an issuer for purposes of "control" under Sections 4 and 5 of the Securities Act and SEC Rule 144 requires actual power to direct the issuer to take action as it does under Section 15 of the Securities Act and Section 20(a) of the Securities Exchange Act of 1934.

2.  Whether a person "controls" an issuer for purposes of Sections 4 and 5 of the Securities Act and SEC Rule 144 if he is part of a group that exercises control but does not do so individually; if so, what is required to plead and prove the existence of, and membership in, such a control group.

3.  Whether a civil enforcement action by the SEC based on alleged control of an issuer under Sections 4 and 5 of the Securities Act and SEC Rule 144 violates the fair-notice principles of the Fifth Amendment's Due Process Clause when the SEC has refused to provide any regulatory guidance on the meaning of control and contends that control is always a fact issue for a jury to decide.

4.  Whether conduct intended to sell securities without complying with Section 5 of the Securities Act's registration requirements is a scheme to defraud securities purchasers under SEC Rule 10b-5(a) and (c), and Section 17(a)(1) and (3) of the Securities Act, when the securities purchasers received free-trading shares at non-manipulated market prices.

5.  Whether a person makes a misrepresentation under SEC Rule 10b-5(b) and Section 17(a)(2) of the Securities Act if he conveys to an issuer an opinion letter drafted by an attorney that incorrectly states the person does not control the issuer for purposes of Sections 4 and 5 of the Securities Act and SEC Rule 144.

All those questions meet the certification standard.  A district court may certify to the

Second Circuit for immediate appeal (1) "a controlling question of law" (2) "as to which there is

substantial ground for difference of opinion" if (3) the court believes an immediate appeal "may

materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

First, those issues are all controlling questions of law because, if the Second Circuit agrees

with the Apolant and Dilluvio Defendants, it would either terminate the action against them or at

least significantly affect the conduct of this action.  *See Klinghoffer v. S.N.C. Achille Lauro*, 921

9

F.2d 21, 24 (2d Cir. 1990) ("[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action."); *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) (Carter, J.) (explaining that "[a] question of law can also be controlling if reversal of the district court's order could significantly affect the conduct of the action" (internal quotation marks omitted)).  In addition, these are pure issues of law that require little to no review of a factual record.  *See Tantaros*, 465 F. Supp. 3d at 389 ("The question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." (internal quotation marks omitted)).

Second, there is at least a substantial ground for difference of opinion on those issues because they are "difficult" and "questions of first impression." *Tantaros*, 465 F. Supp. 3d at 391. The Second Circuit has not addressed those issues, except for the third regarding due process, but that decision is more than sixty years old and predates the Supreme Court and Second Circuit cases on which the Apolant and Dilluvio Defendants rely.  *See* Reply 2 n.2.  Further, "[i]t is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." *Flor v. BOT Fin. Corp. (In re Flor)*, 79 F.3d 281, 284 (2d Cir. 1996) (internal quotation marks and emphasis omitted).  The arguments made in the motion to dismiss are strong, well-supported, and reasonably likely to succeed.

Finally, certification will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  This factor is "closely connected" to the first factor and includes consideration of "the institutional efficiency of both the district court and the appellate court." *Tantaros*, 465 F. Supp. 3d at 392 (internal quotation marks omitted).  Resolving these important issues immediately will either terminate the claims altogether or enable the parties to focus their

10

litigation (or settlement discussion) on the facts that matter under the correct legal standards. These pure legal issues will only return at summary judgment and disputes over jury instructions if there is a trial. Answering them now rather than after years of litigation is far more efficient.

## CONCLUSION

For the foregoing reasons, the Court should reconsider the Order or certify the above questions of law.

Dated: April 14, 2026                                              Respectfully submitted,

**PASHMAN STEIN WALDER**                          **HERRICK, FEINSTEIN LLP**
**HAYDEN, P.C.**

By: *s/ David N. Cinotti*                                  By: _____
    Jerome M. Selvers                                          Arthur Glenn Jakoby
    David N. Cinotti                                           Maxim Mordecai Lebowitz-Nowak
Court Plaza South                                             Michael Ryan Feeney
21 Main Street, Suite 200                               Two Park Avene
Hackensack, NJ 07601                                   New York, NY 10016
(201) 488-8200                                              (212) 592-1400
dcinotti@pashmanstein.com                          mnowak@herrick.com

*Attorneys for Defendants Stephen*                *Attorneys for Defendants Charles Dilluvio*
*Apolant and Sky-Direct LLC and Relief*          *and Seacor Capital, Inc.*
*Defendants NY Farms Group, Inc. and Equity*
*Markets ADV LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rules 6.3 and 7.1(c), the undersigned certifies that this memorandum of law complies with the word limit in Rule 6.3 because it contains 3,459 words, excluding the caption, table of contents, table of authorities, signature block, and this certificate. Undersigned relied on the word count of the word-processing program used to prepare this document.

s/ David N. Cinotti
David N. Cinotti

11